_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**GWYNNE A. WILCOX,**

*Plaintiff-Appellee,*

**v.**

**DONALD J. TRUMP, in his official capacity as President of the
United States; MARVIN E. KAPLAN, in his official capacity as
Chairman of the National Labor Relations Board,**

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia

**BRIEF FOR *AMICUS CURIAE* SEPARATION OF POWERS
CLINIC IN SUPPORT OF DEFENDANTS-APPELLANTS'
EMERGENCY MOTION FOR A STAY PENDING APPEAL**

DANIEL Z. EPSTEIN
AMERICA FIRST LEGAL
    FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003
202-964-3721
daniel.epstein@aflegal.org

R. TRENT MCCOTTER
    *Counsel of Record*
BOYDEN GRAY PLLC
800 Connecticut Ave. NW
Suite 900
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

*Counsel for Amicus Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 29, *Amicus* hereby submits this certificate.

## A. Parties and Amici

The parties and amici who have appeared before the Court are listed in Defendants-Appellants' D.C. Circuit Rule 28(a)(1) certificate.

## B. Rulings Under Review

The ruling under review is a summary-judgment order (Dkt. 34) and opinion (Dkt. 35) that the district court issued on March 6, 2025. The opinion and order are attached to Defendants-Appellants' motion.

## C. Related Cases

The related cases are listed in Defendants-Appellants' D.C. Circuit Rule 28(a)(1) certificate.

## DISCLOSURE STATEMENT

Per Federal Rules of Appellate Procedure 26.1 and 29(a), and D.C. Circuit Rule 26.1, *Amicus* states that it is not a corporation or similar entity, and no further Rule 26.1 disclosure statement is required.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ....................................................... ii

TABLE OF AUTHORITIES ..................................................... v

IDENTITY AND INTEREST OF *AMICUS CURIAE* ............................ 1

SUMMARY OF ARGUMENT ................................................... 2

ARGUMENT ...................................................................... 3

  I.  The Strong Default Rule Under Article II: The President Can Remove Principal Officers At Will ................................. 3

  II.  The *Humphrey's Executor* Exception Does Not Apply Where an Agency Exercises Substantial Executive Powers ........................... 6

  III.  The NLRB's Executive Powers Greatly Exceed Those the 1935 FTC Was Understood to Possess in *Humphrey's Executor* ............. 8

    A. The Supreme Court's Understanding of the FTC's Powers in *Humphrey's Executor* ................................................ 9

    B. The NLRB Possesses Significant Executive Powers Beyond Those Ascribed to the 1935 FTC ............................. 11

  IV.  *Humphrey's Executor* Must Be Interpreted in Light of Article II Principles ...................................................... 16

CONCLUSION ................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Buckley v. Valeo,
424 U.S. 1 (1976) ................................................................ 13

Collins v. Yellen,
594 U.S. 220 (2021) ........................................................ 6, 14

Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,
537 F.3d 667 (D.C. Cir. 2008) .......................................... 16

Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,
561 U.S. 477 (2010) .................................................. 4, 5, 17

*Humphrey's Executor v. United States,
295 U.S. 602 (1935) ........... 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17

Myers v. United States,
272 U.S. 52 (1926) ....................................................... 4, 5, 9

PHH Corp. v. CFPB,
881 F.3d 75 (D.C. Cir. 2018) ........................................ 5, 17

*Seila Law LLC v. CFPB,
591 U.S. 197 (2020) ......................... 4, 6, 7, 8, 11, 12, 13, 14, 15, 16, 17

Severino v. Biden,
71 F.4th 1038 (D.C. Cir. 2023) ........................................... 3

TransUnion LLC v. Ramirez,
594 U.S. 413 (2021) ............................................................ 13

Trump v. United States,
603 U.S. 593 (2024) ................................................... 2, 5, 18

**Constitution and Statutes**

U.S. Const. art. II, § 1, cl. 1 ............................................... 4, 8

29 U.S.C. § 160(j) ................................................................. 15

Pub. L. No. 75-447, 52 Stat. 111 (1938) .............................. 11

Pub. L. No. 93-153, 87 Stat. 576 (1973) .............................. 11

Pub. L. No. 93-637, 88 Stat. 2183 (1975) ............................ 11

**Other Authorities**

*Powers and Duties of the Fed. Trade Comm'n in the Conduct of Investigations,*
  34 Op. Att'y Gen. 553 (1925) ............................................................. 10

# IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* is the Separation of Powers Clinic housed within the Separation of Powers Institute at The Catholic University of America's Columbus School of Law. The Institute and Clinic were established during the 2024–25 academic year for the purpose of studying, researching, and raising awareness of the proper application of the U.S. Constitution's separation of powers constraints on the exercise of federal government power. The Clinic provides students an opportunity to discuss, research, and write about separation of powers issues in ongoing litigation.

The Clinic previously was housed at Scalia Law School for several years and has submitted numerous briefs over the years in cases implicating separation of powers, including cases involving removal protections for executive officials. *See, e.g., Dellinger v. Bessent*, No. 25-5052 (D.C. Cir.).

---

[1] No person other than *amicus curiae* and its counsel assisted with or made a monetary contribution for preparing or submitting this brief. All parties have consented to the filing of this brief.

## SUMMARY OF ARGUMENT

The Supreme Court held last year that "the President's power to remove 'executive officers of the United States whom he has appointed' may not be regulated by Congress." *Trump v. United States*, 603 U.S. 593, 621 (2024). The district court here disagreed, bemoaning President Trump's termination of Plaintiff-Appellee as a "power grab" that "fundamentally misapprehends the role [of the President] under Article II of the U.S. Constitution." Slip Op. 4, 5. But a more appropriate description would be that President Trump seeks to vindicate Article II's mandate that the President be fully accountable for ensuring the laws be faithfully executed.

The Supreme Court has long recognized this constitutional imperative and thus has held that the President has the authority to remove Executive Branch principal officers at will, subject to a narrow exception recognized in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). The Supreme Court has cabined *Humphrey's Executor* to its facts as presented in the opinion, meaning *Humphrey's Executor* applies only to the Court's understanding of how the Federal Trade Commission operated in 1935, i.e., as exercising no part of the executive power,

regardless of how the FTC *actually* operated. Accordingly, the Supreme Court itself has indicated that "little to nothing is left of the *Humphrey*'s exception to the general rule that the President may freely remove his subordinates." *Severino v. Biden*, 71 F.4th 1038, 1050 (D.C. Cir. 2023) (Walker, J., concurring).

That narrow exception does not apply to members of the National Labor Relations Board because it exercises significant executive power, unlike how the Supreme Court has described the 1935 FTC. The district court thus should have applied the default presumption that Article II authorized the President to fire Gwynne Wilcox at will.

Defendants-Appellants accordingly have a strong likelihood of success on the merits. The Court should grant their emergency stay motion.

## ARGUMENT

### I. The Strong Default Rule Under Article II: The President Can Remove Principal Officers At Will.

There is no dispute that members of the NLRB are principal officers, nominated by the President and confirmed by the Senate. Gwynne Wilcox is therefore in the heartland of executive officials over whom Article II provides a strong presumption of removability at will by

the President to ensure that he retains accountability for the faithful execution of the laws under a clear chain of command.

"Our Constitution was adopted to enable the people to govern themselves" and "requires that a President chosen by the entire Nation oversee the execution of the laws." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 499 (2010). Article II does so by vesting the executive power in the President, who must "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* § 3. Thus, "the 'executive Power'—all of it—is 'vested in a President.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020).

These provisions "grant[] to the President" the "general administrative control of those executing the laws, including the power of appointment *and removal* of executive officers." *Myers v. United States*, 272 U.S. 52, 163–64 (1926) (emphasis added). "[I]f any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Free Enter.*, 561 U.S. at 492. Because the President cannot conduct all executive business alone, he must rely on "executive officers" to assist with that duty. *Id.* at 483. And "[s]ince 1789, the Constitution has been understood to empower the

President to keep these officers accountable—by removing them from office, if necessary." *Id.*

"Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514. Wielding executive power without full accountability to the President would "pose a significant threat to individual liberty and to the constitutional system of separation of powers and checks and balances." *PHH Corp. v. CFPB*, 881 F.3d 75, 165 (D.C. Cir. 2018) (Kavanaugh, J., dissenting).

Thus, "[i]f there is any point in which the separation of the legislative and executive powers ought to be maintained with great caution, it is that which relates to officers and offices." *Myers*, 272 U.S. at 116. As the Supreme Court summarized just last year, "the President's power to remove 'executive officers of the United States whom he has appointed' may not be regulated by Congress." *Trump*, 603 U.S. at 621.

If anything, that principle applies even more strongly at the beginning of a new Administration. "New Presidents *always* inherit thousands of Executive Branch officials whom they did not select. It is the power to supervise—and, if need be, remove—subordinate officials

that allows a new President to shape his administration and respond to the electoral will that propelled him to office." *Collins v. Yellen*, 594 U.S. 220, 277–78 (2021) (Gorsuch, J., concurring in part). Otherwise, there would be "wholly unaccountable government agent[s]" who "assert[] the power to make decisions affecting individual lives, liberty, and property," yet are not accountable to "those who govern." *Id.* at 278.

This establishes the strong default rule: the President can remove principal officers at will, pursuant to Article II of the Constitution. As explained next, the Supreme Court has recognized an extraordinarily narrow exception, but it does not apply here.

## II. The *Humphrey's Executor* Exception Does Not Apply Where an Agency Exercises Substantial Executive Powers.

In *Humphrey's Executor*, the Supreme Court established a narrow exception to the President's removal power over principal officers for those who serve on "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power," a descriptor the Supreme Court applied to the Federal Trade Commission as it was understood to operate in 1935 when *Humphrey's Executor* was issued. *Seila Law*, 591 U.S. at 216.

The only fair reading of *Seila Law* is that an agency must satisfy each requirement to fall within *Humphrey's Executor*. If an agency is not headed by a multi-member panel of experts, or is not balanced along partisan lines, or does not perform legislative and judicial functions, or—as most critical here—*does* exercise executive power, then it is ineligible for the *Humphrey's Executor* exception.

In its order granting summary judgment, the district court concluded NLRB members fall within *Humphrey's Executor* because it is "a multimember group of experts who lead an independent federal officer." Slip Op. at 10; *see also id.* at 12 ("independent, multimember boards"), 15 ("multimember boards or commissions"), 20 ("multimember boards or commissions").

This overwhelming focus on the structure of the NLRB was misplaced. If an agency's multimember structure alone permits for-cause removal, then it makes no sense that the *Humphrey's Executor* rule *also* requires that multi-member agencies not exercise executive power. If the 1935 FTC's multi-member and balanced structure were alone sufficient, there would have been no need to discuss executive power at all in

*Humphrey's Executor*, let alone issue a holding that the agency must not possess such power.

Further, it makes little sense to focus on the structure of an agency at the expense of its executive power, given that the *Humphrey's Executor* line of cases is focused on how removal protections interfere with the President's Article II powers to oversee the Executive Branch in the execution of federal laws. *See* U.S. Const. art. II, § 1, cl. 1; *id.* § 3; *Seila Law*, 591 U.S. at 202–04, 213–14, 217–18. Of all the requirements needed to invoke *Humphrey's Executor*, the most important is that the agency *not* possess executive power.

But, as explained next, the NLRB's executive powers far exceed those the FTC has been described as possessing at the time of *Humphrey's Executor*. Accordingly, the NLRB falls outside the narrow exception for agencies whose heads can retain protection from at-will removal by the President.

## III. The NLRB's Executive Powers Greatly Exceed Those the 1935 FTC Was Understood to Possess in *Humphrey's Executor*.

The district court considered the nature of the NLRB's powers almost as an afterthought. Slip Op. at 16. The court rattled off numerous

core executive powers the NLRB undoubtedly possesses—but the court either denied those powers are indeed executive or claimed the powers match those the 1935 FTC possessed. But that is wrong. The NLRB's powers greatly exceed those that the Supreme Court has been willing to ascribe to the 1935 FTC in *Humphrey's Executor*.

### A. The Supreme Court's Understanding of the FTC's Powers in *Humphrey's Executor*.

In issuing its 1935 decision in *Humphrey's Executor*, the Supreme Court described the FTC as largely an advisory body preparing reports and conducting investigations for the benefit of Congress. *See* 295 U.S. at 628. The brief of Samuel F. Rathbun, who was Humphrey's executor, cited statistics showing that nearly half of the FTC's entire expenditures over the prior eight years had been on "investigations undertaken as such an agent of Congress in aid of legislation." Br. for Samuel F. Rathbun, Ex'r at 46 & n.21, *Humphrey's Executor*, 295 U.S. 602 (Mar. 19, 1935) ($4,036,470 spent on such legislative work, out of $9,627,407 total). And the brief of the United States, while arguing that *Myers* should control, still acknowledged the FTC's primary actions were investigating and issuing "[r]eports to Congress on special topics." Br. for United States at 24, *Humphrey's Executor*, 295 U.S. 602 (Apr. 6, 1935).

The Department of Justice had long held the view that the early FTC was more akin to a legislative committee than an executive agency. A 1925 Attorney General Opinion had stated, "A main purpose of the Federal Trade Commission Act was to enable Congress, through Trade Commission, to obtain full information concerning conditions in industry to aid it in its duty of enacting legislation," to the point that "the Commission was sometimes likened to a Committee of Congress." *Powers and Duties of the Fed. Trade Comm'n in the Conduct of Investigations*, 34 Op. Att'y Gen. 553, 557–58 (1925).

The government's brief in *Humphrey's Executor* further acknowledged that the 1935 FTC could not even directly "execute its orders," Br. for United States at 25, *Humphrey's Executor*, and the Executor's brief noted that the FTC sometimes served as a chancery master appointed by a federal court, Br. for Rathbun at 43, *Humphrey's Executor*.

In ultimately holding that the FTC did not wield executive power, the Court's opinion in *Humphrey's Executor* relied on the same characteristics of the FTC that the parties had emphasized, i.e., its legislative and judicial functions. *See* 295 U.S. at 628. And this Court

later held in *Seila Law* that the holding in *Humphrey's Executor* was directly premised on the fact that "the Court viewed the FTC (as it existed in 1935) as exercising '*no part of the executive power.*'" *Seila Law*, 591 U.S. at 215 (emphasis added).

It was not until later—in 1938—that Congress first enacted legislation to provide the FTC with a limited right to sue in federal court, and those suits were limited to seeking preliminary injunctions against certain practices pending agency adjudication. *See* Pub. L. No. 75-447, § 4, 52 Stat. 111, 115 (1938). In the 1970s, Congress first provided the FTC with the significant litigation powers it now possesses. *See* Pub. L. No. 93-637, §§ 205–06, 88 Stat. 2183, 2200–02 (1975); Pub. L. No. 93-153, § 408(f), 87 Stat. 576, 592 (1973).

The modern FTC itself would not satisfy the *Humphrey's Executor* exception. As demonstrated next, the NLRB's executive powers far exceed those the 1935 FTC was deemed to possess in *Humphrey's Executor*.

## B. The NLRB Possesses Significant Executive Powers Beyond Those Ascribed to the 1935 FTC.

Under a correct reading of *Seila Law* and *Humphrey's Executor*, the NLRB's removal protections are constitutional only if the agency does not

wield executive power. But even the district court here listed core executive power after core executive power—while nonetheless declining to recognize the NLRB wields significant executive powers and therefore does not fall within the narrow *Humphrey's Executor* exception.

The district court acknowledged the NLRB may:

- "[S]eek temporary injunctive relief in federal district court while [a labor] dispute is pending at the NLRB." Slip Op. at 6.

- Issue "a cease-and-desist order to halt unfair labor practices or an order requiring reinstatement of terminated employees," including with backpay. *Id.* at 7.

- "[S]eek enforcement in a federal court of appeals." *Id.*

- "[P]romulgate rules and regulations to carry out its statutory duties." *Id.*

Each of these represents a core executive power that exceeds whatever comparable authority (if any) the *Humphrey's Executor* Court ascribed to the 1935 FTC.

Start with filing lawsuits in court: *Seila Law* held that pursuing actions "against private parties on behalf of the United States in federal

court" is a "quintessentially executive power" that was "not considered in *Humphrey's Executor*" because the FTC lacked that power at the time. 591 U.S. at 219. The district court here apparently disagreed about whether the 1935 FTC possessed similar litigation powers, Slip Op. at 16, but the Supreme Court has already held that the 1935 FTC can be recognized *only* as having the very narrow litigation power to "mak[e] recommendations to courts as a master in chancery." *Seila Law*, 591 U.S. at 215. "A lawsuit is the ultimate remedy for a breach of the law, and it is to the President … that the Constitution entrusts th[is] responsibility[.]" *Buckley v. Valeo*, 424 U.S. 1, 138 (1976); *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021) ("[T]he choice of how to prioritize and how aggressively to pursue legal actions against defendants who violate the law falls within the discretion of the Executive Branch."). Accordingly, the NLRB's authority to initiate lawsuits is an executive power and exceeds whatever analogous powers the Supreme Court has been willing to ascribe to the 1935 FTC.

Turning next to finding violations of the law and ordering relief like reinstatement and back pay: again, *Seila Law* held that agency enforcement actions for violations of regulations "are exercises of—

indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'" *Seila Law*, 591 U.S. at 216 n.2 (emphasis in original); *see id.* at 219 (carrying out "administrative adjudications" that "award[] legal and equitable relief" is an "executive power"). That is all the more true when that action affects a "major segment of the U.S. economy," *id.* at 208, such as labor relations. The district court acknowledged the 1935 FTC could merely issue cease-and-desist orders, but apparently without authority to impose monetary remedies like the NLRB can. Slip Op. at 16. Again, that makes the NLRB more executive than the 1935 FTC.

Moving to the NLRB's rulemaking power: the Supreme Court has held that an agency "empowered to issue a 'regulation or order' … clearly exercises executive power." *Collins*, 594 U.S. at 254. By contrast, the 1935 FTC as recognized in *Humphrey's Executor* could only "mak[e] reports and recommendations to Congress," not "promulgate binding rules." *Seila Law*, 591 U.S. at 218. The district court below appears to believe the 1935 FTC possessed more rulemaking powers than were mentioned in *Humphrey's Executor* itself (as confirmed by the district court's citation to a statute, rather than to the opinion in *Humphrey's Executor* itself, Slip Op. at 16), but that is irrelevant because the Supreme Court has

instructed lower courts not to consider any such unstated powers: "Perhaps the FTC possessed broader rulemaking, enforcement, and adjudicatory powers than the *Humphrey's* Court appreciated. Perhaps not. Either way, what matters is the set of powers the Court considered as the basis for its decision, not any latent powers that the agency may have had not alluded to by the Court." *Seila Law*, 591 U.S. at 219 n.4.

In sum, the NLRB's most potent powers are undoubtedly executive in nature and exceed any similar powers the 1935 FTC was recognized to possess in *Humphrey's Executor*. That means the narrow exception against at-will removal does not apply to NLRB members.

The district court appears to have discounted the NLRB's executive powers by claiming they are overseen by the NLRB General Counsel. Slip Op. at 17. But in *Seila Law*, the Court repeatedly emphasized "[t]he FTC's duties," rather than those of the individual FTC Commissioners. *Seila Law*, 591 U.S. at 215–16. Moreover, the board members exercise control over the General Counsel; for example, he cannot bring an action in court seeking to enjoin an unfair labor action unless the board provides the necessary authorization. *See* 29 U.S.C. § 160(j). In any event, several of the powers that even the district court acknowledged reside with

NLRB board members are still core executive powers not analogous to the 1935 FTC as described in *Humphrey's Executor*, such as rulemaking and adjudications that involve monetary relief, as explained above.

Accordingly, even on the district court's own findings, *Humphrey's Executor* does not apply here.

IV. ***Humphrey's Executor* Must Be Interpreted in Light of Article II Principles.**

A final note about how to interpret *Humphrey's Executor*. As mentioned above, the Supreme Court itself has limited that opinion to its facts in the most literal way, instructing lower courts to disregard any powers the 1935 FTC possessed that were not expressly listed in the opinion itself. *Seila Law*, 591 U.S. at 219 n.4.

There is another reason to read *Humphrey's Executor* narrowly: this Court has a duty to interpret that opinion in light of the strong default rule of removability of principal officers. "We should resolve questions about the scope of [Supreme Court] precedents in light of and in the direction of the constitutional text and constitutional history." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 537 F.3d 667, 698 (D.C. Cir. 2008) (Kavanaugh, J., dissenting). That is significant here because *Humphrey's Executor* is "inconsistent with the text of the Constitution,

with the understanding of the text that largely prevailed from 1789 through 1935, and with prior precedents," *id.* at 696, and its foundations and rationale have been "repudiated [in] almost every aspect," *Seila Law*, 591 U.S. at 239 (Thomas, J., concurring in part and dissenting in part). Accordingly, "the foundation for *Humphrey's Executor* is not just shaky. It is nonexistent." *Id.* at 248. This militates strongly in favor of declining to apply that opinion at all beyond its narrow facts.

This is no academic dispute. By allowing the executive power to be wielded by someone not fully accountable to the elected Commander in Chief, "*Humphrey's Executor* poses a direct threat to our constitutional structure and, as a result, the liberty of the American people." *Id.* at 239. It means the President "could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Free Enter.*, 561 U.S. at 514. For that reason, so-called independent agencies "pose a significant threat to individual liberty and to the constitutional system of separation of powers and checks and balances." *PHH Corp.*, 881 F.3d at 165 (Kavanaugh, J., dissenting).

Accordingly, although this Court is bound by *Humphrey's Executor*, it is simply inapplicable here. The default rule applies: "As we have

explained, the President's power to remove 'executive officers of the United States whom he has appointed' may not be regulated by Congress." *Trump*, 603 U.S. at 621.

* * *

Defendant-Appellants are likely to prevail on the merits, and the Court should grant a stay of the district court's order.

## CONCLUSION

The Court should grant Defendants-Appellants' emergency motion.

March 11, 2025                    Respectfully submitted,

/s/ R. Trent McCotter
R. TRENT MCCOTTER
BOYDEN GRAY PLLC
800 Connecticut Ave. NW, Suite 900
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

DANIEL Z. EPSTEIN
AMERICA FIRST LEGAL
  FOUNDATION
611 Pennsylvania Ave. SE #231
Washington, DC 20003
202-964-3721
daniel.epstein@aflegal.org

*Counsel for Amicus Curiae Separation of Powers Clinic*

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14- point font. There is no word limitation that specifically applies to an amicus brief at the emergency-motion stage. This brief contains 3,234 words, excluding the exempt portions. Leave of Court has been sought to file this brief.

*/s/ R. Trent McCotter*
R. Trent McCotter

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will serve all parties automatically.

*/s/ R. Trent McCotter*
R. Trent McCotter