**[ORAL ARGUMENT HAS NOT BEEN SCHEDULED]**
**No. 25-5057**

# In the United States Court of Appeals for the District of Columbia Circuit

————————————

GWYNNE A. WILCOX,
*Plaintiff-Appellee,*

v.

DONALD J. TRUMP, in his official capacity as President
of the United States, et al.,
*Defendants-Appellants.*

————————————

On Appeal from the United States District Court
for the District of Columbia
Case No. 25-334 (The Hon. Beryl A. Howell)

————————————

**APPELLEE'S OPPOSITION TO APPELLANTS'
EMERGENCY MOTION FOR STAY**

————————————

JENNIFER D. BENNETT*
GUPTA WESSLER LLP
505 Montgomery Street
Suite 625
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*

*admission pending

DEEPAK GUPTA
MATTHEW W.H. WESSLER
GREGORY A. BECK
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*deepak@guptawessler.com*

March 11, 2025                    *Counsel for Plaintiff-Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**(A) Parties and Amici**

Gwynne A. Wilcox – Plaintiff-Appellee

**(B) Rulings Under Review**

03/06/2025 Order (Judge Beryl A. Howell) – Dkt. 34.

03/06/2025 Memorandum Opinion (Judge Beryl A. Howell) – Dkt. 35.

**(C) Related Cases**

Counsel for Plaintiff-Appellee Wilcox state that, to the best of their knowledge, this case was not previously before this or any other court, and there are not related cases of which counsel is aware.

# TABLE OF CONTENTS

Certificate as to parties, rulings, and related cases.....................................................i

Table of authorities.....................................................................................................iii

Introduction ..................................................................................................................1

Background ....................................................................................................................4

    A.    Statutory background........................................................................4

    B.    Factual background...........................................................................7

Argument .......................................................................................................................8

    I.    The government cannot show a strong likelihood of success on
the merits.................................................................................................8

        A.    The NLRA's unambiguous language and 90 years of
Supreme Court precedent establish the constitutionality
of the NLRB's for-cause removal protection .............................8

        B.    The government's claim that the district court lacked
power to issue an injunction also defies precedent ..................18

    II.    The remaining factors strongly cut against extraordinary relief.........19

Conclusion ..................................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Exceptional Child Center, Inc.*,
    575 U.S. 320 (2015) ............................................................................... 18

*Berry v. Reagan*,
    1983 WL 538 (D.D.C. 1983) ........................................................ 21, 22

*Browning-Ferris Industries of Caifornia., Inc. v. NLRB*,
    911 F.3d 1195 (D.C. Cir. 2018) ................................................. 14

*Chamber of Commerce of United States v. NLRB*,
    723 F. Supp. 3d 498 (E.D. Tex. 2024) .................................... 14

*Citizens for Responsibility & Ethics in Washington v.*
    *Federal Election Commission*,
    904 F.3d 1014 (D.C. Cir. 2018) ................................................. 19

*Collins v. Yellen*,
    594 U.S. 220 (2021) ...................................................................... 10, 16

*Consumers' Research v. Consumer Product Safety Commission*,
    91 F.4th 342 (5th Cir. 2024) .........................................................17

*Dellinger v. Bessent*,
    2025 WL 665041 (D.D.C. 2025) ..................................................... 3

*Federal Election Commissionn v. NRA Political Victory Fund*,
    6 F.3d 821 (D.C. Cir. 1993) ........................................................13, 14

*Free Enterprise Fund v. Public Company Accounting Oversight Board*,
    561 U.S. 477 (2010) ................................................................ 9, 10, 16

*Federal Tradde Commission v. Ken Roberts Co.*,
    276 F.3d 583 (D.C. Cir. 2001) ...................................................... 11

*Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776*,
    346 U.S. 485 (1953) .............................................................................5

*Harris v. Bessent*,
    2025 WL 521027 (D.D.C. 2025) ......................................... 11, 20, 21

*Humphrey's Executor v. United States,*
   295 U.S. 602 (1935) ..........................................................................1, 6, 9, 12

*Illumina, Inc. v. Federal Trad Commission,*
   88 F.4th 1036 (5th Cir. 2023) ...................................................................2

*Leachco, Inc. v. Consumer Product Safety Commission,*
   2025 WL 76435 (2025) ........................................................................12, 16

*Leachco, Inc. v. Consumer Product Safety Commission,*
   103 F.4th 748 (10th Cir. 2024)......................................................12, 15, 17

*Loper Bright Enterprises v. Raimondo,*
   603 U.S. 369 (2024) ..................................................................................14

*Mackie v. Bush,*
   809 F. Supp. 144 (D.D.C. 1993) ...............................................................22

*Meta Platforms, Inc. v. Federal Trade Commission,*
   723 F. Supp. 3d 64 (D.D.C. 2024)........................................................12, 16

*Morrison v. Olson,*
   487 U.S. 654 (1988) ..................................................................12, 14, 15, 16

*National Securities Archive v. CIA,*
   104 F.4th 267 (D.C. Cir. 2024) ..................................................................2

*Nken v. Holder,*
   556 U.S. 418 (2009) .....................................................................................8

*NLRB v. Fansteel Metallurgical Corp.,*
   306 U.S. 240 (1939)....................................................................................4

*NLRB v. United Food & Commerical Workers Union,*
   *Local 23, AFL-CIO,*
   484 U.S. 112 (1987) .....................................................................................5

*Sampson v. Murray,*
   415 U.S. 61 (1974).................................................................................19, 20

*SEC v. Blinder, Robinson, & Co.,*
   855 F.2d 677 (10th Cir. 1988)....................................................................12

*Seila Law LLC v. Consumer Financial Protection Bureau,*
    591 U.S. 197 (2020) ................................................................. 9, 10, 11, 16

*Severino v. Biden,*
    71 F.4th 1038 (D.C. Cir. 2023) .............................................................2, 18

*Shalala v. Guernsey Memorial Hospital,*
    514 U.S. 87 (1995) ................................................................................ 13

*Swan v. Clinton,*
    100 F.3d 973 (D.C. Cir. 1996)............................................................... 18

*United States v. Hatter,*
    532 U.S. 557 (2001) ............................................................................. 16

*Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,*
    559 F.2d 841 (D.C. Cir. 1977) ................................................................ 8

## Statutes

29 U.S.C. § 153..............................................................................1, 5, 7, 9, 11

29 U.S.C. § 156 ...................................................................................... 13

29 U.S.C. § 157 .........................................................................................5

29 U.S.C. § 158 .........................................................................................5

29 U.S.C. § 159 .........................................................................................5

9 U.S.C. § 160 ...........................................................................................5

## Other Authorities

Arnold Ordman,
    *Fifty Years of the NLRA: An Overview,* 88 W. Va. L. Rev. 15 (1985) ......................... 4

Executive Order Number 14,215,
    90 Fed. Reg. 10447 (Feb. 18, 2025) ......................................................17

Federal Trade Commission Act,
    Pub. L. No. 63-203, ch. 311, § 5, 38 Stat. 717 (1914) ................................12

Interstate Commerce Act,
  Pub. L. No. 49-41, ch. 104, § 11, 24 Stat. 379 (1887)................................... 6

J. Warren Madden, *Origin and Early Years of the National Labor Relations Act*, 18
  Hastings L.J. 571 (1967) ......................................................................... 4

Kirti Datla & Richard L. Revesz,
  *Deconstructing Independent Agencies (and Executive Agencies)*, 98 Cornell L.
  Rev. 769 (2013).....................................................................................6, 9

NLRB,
  1 *Legislative History of the National Labor Relations Act* (1949) ..................... 6

# INTRODUCTION

The government's stay motion asks this Court for emergency relief to allow it to enforce "a blatant violation of the law." Mem. Op. at 5, ECF 35 (No. 25-334). The government admits that the President removed plaintiff Gwynne Wilcox without identifying any "neglect of duty or malfeasance in office," and without providing "notice and a hearing," as the National Labor Relations Act requires. 29 U.S.C. § 153(a). Notwithstanding the government's spurious representation (at 1) that Ms. Wilcox was "lawfully fired," it has thus rightly "conceded [] that the President's termination … was unlawful, in violation of the [NLRA]." ECF 41 at 1; *see* Hr'g Tr. at 51.

The government attempts to justify this admitted violation of an unambiguous statute with an aggressive new interpretation of Article II, under which the President "has authority to fire whomever he wants within the Executive branch, overriding any congressionally mandated law in his way." ECF 35 at 4. But this argument, as the district court recognized, is directly "contrary to Supreme Court precedent and over a century of practice." *Id.* at 10. The government admits that *Humphrey's Executor v. United States*, 295 U.S. 602 (1935)—which upheld a virtually identical limit on the President's removal power—remains "good law" and is "binding" on the lower courts. Hr'g Tr. at 51-52. Indeed, Congress created the NLRB just months after *Humphrey's Executor* and modeled it closely on the provisions upheld there—just as it

has done for dozens of agencies responsible for many of the government's critical functions. And the government's argument that the district court lacked authority to enforce the law is likewise foreclosed by precedent. As this Court has held, a district court has the power to "enjoin subordinate executive officials to reinstate a wrongly terminated official." *Severino v. Biden*, 71 F.4th 1038, 1042-1043 (D.C. Cir. 2023).

Because the President's action was plainly illegal under existing law, the government's only path to victory is to persuade the Supreme Court to overrule *Humphrey's Executor* and to adopt a more expansive view of presidential power—one that would effectively abolish independent agencies like the Federal Reserve and the NLRB by subjecting their essential functions to the unchecked authority of the President. But the Supreme Court, far from having adopted such an aggressive vision of Presidential power, has instead "expressly declined to overrule" *Humphrey's Executor. Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023). Any such decision— which would create chaos in the federal government by upending ninety years of established precedent on which Congress structured dozens of federal agencies— must come, if at all, from the Supreme Court. This Court "is charged with following case law that directly controls a particular issue, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Nat'l Sec. Archive v. CIA*, 104 F.4th 267, 272 n.1 (D.C. Cir. 2024). This Court's grant of a stay in *Dellinger v. Bessent* does not affect this conclusion. Because the Office of Special Counsel is a rare single-head agency,

the Court in *Dellinger* did not rely on *Humphrey's Executor* to sustain the removal limit at issue there. 2025 WL 665041, at *18 n.16 (D.D.C. 2025).

The government also fails to meet its burden to show irreparable injury. In stark contrast to its conduct in *Dellinger*, the government did not immediately seek a stay of the district court's order here, instead taking affirmative steps to preserve the status quo by reassigning staff to Ms. Wilcox and allowing her to resume her work. The government nevertheless argues (at 1) that the district court's decision is "unprecedented" and "undermines the President's ability to exercise his executive authority." Despite the government's hyperbolic attempt to create the appearance of a crisis, the decision below does nothing more than restore the NLRB to the independent status it has enjoyed for nearly a century. It is the President's unlawful action, not the decision below, that is unprecedented. "In the ninety years since the NLRB's founding, the President has never removed a member of the Board." ECF 35 at 10. There is no "emergency" requiring that this Court upend decades of tradition and precedent to allow the President to do so for the first time now—before the Supreme Court has even had the opportunity to reconsider its longstanding precedent.

Finally, aside from its formalistic claim (at 1) that the district court's order "undermines the President's ability to exercise his authority under the Constitution"—an authority that the Supreme Court has rejected—the government

nowhere explains how a stay pending appeal would serve the public interest. Nor could it. President Trump's removal of Ms. Wilcox not only unlawfully deprives her of her job; it also deprives the NLRB of a quorum, disrupting protections essential to workers, employers, and the broader public. Employers have already seized on the NLRB's lack of a quorum to argue that the agency lacks authority to recognize unions even when a majority of workers voted to unionize. To prevent further needless disruption in the agency's critical work, this Court should deny the government's motion.

## BACKGROUND

### A.    Statutory background.

Ninety years ago, Congress established the National Labor Relations Board "in response to a long and violent struggle for workers' rights." ECF 35 at 5; *see generally*, J. Warren Madden, *Origin and Early Years of the National Labor Relations Act*, 18 Hastings L.J. 571 (1967); Arnold Ordman, *Fifty Years of the NLRA: An Overview*, 88 W. Va. L. Rev. 15, 15-16 (1985).[1] For "the promotion of industrial peace," *NLRB v. Fansteel Metallurgical Corp.*, 306 U.S. 240, 257 (1939), Congress gave the NLRB exclusive jurisdiction to protect employees from unfair labor practices and to adjudicate labor disputes. *See id.* §§ 157-60.

---

[1] Unless otherwise noted, all internal quotation marks, citations, alterations, brackets, and ellipses have been omitted from quotations throughout this brief.

As the district court explained, Congress designed the NLRB as a "bifurcated agency" that separates the agency's prosecutorial and adjudicatory functions. ECF 35 at 6; *see NLRB v. United Food & Com. Workers Union, Local 23, AFL-CIO*, 484 U.S. 112, 117-18 (1987). On one side, Congress created an independent, quasi-judicial Board charged with adjudicating appeals of labor disputes from administrative law judges. ECF 35 at 6. The Board consists of five members appointed by the President "with the advice and consent of the Senate" for staggered five-year terms. 29 U.S.C. § 153(a). One member, designated by the President, serves as the Board's Chair. *Id.* On the other side of the split is the General Counsel, who is charged with prosecuting unfair labor practices and enforcing labor law. ECF 35 at 6; *see* 29 U.S.C. § 153(d). The General Counsel is appointed by the President and is "independent of the Board's control." ECF 35 at 6.

Both the Board and the General Counsel are appointed by the President with the "advice and consent" of the Senate. 29 U.S.C. § 153(a), (d). Unlike the General Counsel, however, members of the Board are protected from removal at-will by the President, who is authorized to remove a Board member "upon notice and hearing, for neglect of duty or malfeasance in office, *but for no other cause*." *Id.* § 153(a) (emphasis added). Congress designed these protections to ensure the NLRB's status as an independent and impartial adjudicative body "acting in the public interest." *Garner v. Teamsters, Chauffeurs & Helpers Loc. Union No. 776*, 346 U.S. 485, 493-94 (1953). The

independence of Board members, Congress concluded, was critical to protect them "from being subject to immediate political reactions at elections." NLRB, 1 *Legislative History of the National Labor Relations Act*, at 1467 (1949). The Act's sponsor, Senator Robert Wagner, explained that only an autonomous tribunal—"detached from any particular administration that happens to be in power"—could fairly adjudicate disputes between employers and employees. *Id.* at 1428; *see* Kirti Datla & Richard L. Revesz, *Deconstructing Independent Agencies (and Executive Agencies)*, 98 Cornell L. Rev. 769, 770-71 (2013) (describing the NLRB as a classic example of an agency designed to be independent).

Congress's decision to structure the NLRB as an independent agency follows directly in a well-established tradition, beginning nearly 150 years ago with the Interstate Commerce Commission. *See* Interstate Commerce Act, Pub. L. No. 49-41, ch. 104, § 11, 24 Stat. 379, 383 (1887). Since then, Congress has created and fine-tuned the structures for dozens of additional agencies, including the Federal Reserve Board, whose leaders are removable only for cause. In *Humphrey's Executor*, the Supreme Court upheld the constitutionality of such statutory protections, holding that the President lacked authority to remove Commissioners of the Federal Trade Commission for reasons other than those specified by Congress. 295 U.S. 602. Congress has relied on that precedent for ninety years in structuring independent

agencies, including the NLRB—which was established just months after *Humphrey's Executor* upheld the structure of the FTC.

## B.    Factual background

The Senate confirmed Ms. Wilcox as a member of the NLRB on September 6, 2023, for a second term of five years. ECF 10-1 ¶ 2. In open disregard of the NLRA's for-cause removal provision, a letter sent by email to Ms. Wilcox on behalf of the President on January 27, 2025, informed her that she was "hereby removed from the office of Member[] of the National Labor Relations Board"—more than three years before her term was to expire. *Id.* ¶ 3. By reducing the NLRB to just two remaining members, the President's removal of Ms. Wilcox eliminated a quorum—effectively paralyzing the agency's operations. *See* 29 U.S.C. § 153(b) (providing that the Board requires at least three members for a quorum).

The President's decision to remove Ms. Wilcox is unprecedented. In the 90 years since passage of the NLRA in 1935, no President has previously attempted to remove a member of the Board. ECF 35 at 10. The President has not identified any neglect of duty or malfeasance by Ms. Wilcox to justify such an extreme action. ECF 10-1 ¶ 4. Nor has he provided her with notice or a hearing. *Id.* ¶ 5. Instead, while acknowledging that "the National Labor Relations Act purports to limit removal of Board members to 'neglect of duty or malfeasance in office,'" his letter asserts that

7

"this limitation is inconsistent with the vesting of the executive Power in the President." ECF 10-4 Ex. A, at 1 n.1.

## ARGUMENT

The government also fails to satisfy any of the traditional criteria for a stay pending appeal. To show its entitlement to a stay, the government must make "a strong showing" (1) that it is "likely to succeed on the merits"; (2) that it "will be irreparably injured absent a stay"; (3) that the balance of equities favor a stay; and (4) that a stay is in the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). As explained below, the government satisfies none of those requirements.

## I.    The government cannot show a strong likelihood of success on the merits.

### A.    The NLRA's unambiguous language and 90 years of Supreme Court precedent establish the constitutionality of the NLRB's for-cause removal protection.

The district court's carefully reasoned opinion makes clear why the government cannot make the required "strong showing" that it is likely to succeed on the merits. To meet that standard, "[i]t is not enough that the chance of success" is "better than negligible." *Id.* The likelihood must be "substantial[.]" *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). Far from showing a substantial likelihood of success, the "President's interpretation of the scope of his constitutional power—or, more aptly, his *aspiration*—is flat wrong" under binding Supreme Court precedent. Mem. Op. at 5, ECF 35 (No. 25-3404).

**1.** Beginning with *Humphrey's Executor* in 1935, the Supreme Court has consistently "held that Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will but only for good cause." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010). In the ninety years since *Humphrey's Executor* was decided, the Court has repeatedly applied it to uphold for-cause removal limits on a range of "traditional" "multimember board[s] or commission[s]," *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 207 (2020), that exercise "predominantly quasi judicial and quasi legislative" functions, *Humphrey's Executor*, 295 U.S. at 624.

The NLRB "is a paradigmatic example of a multimember group of experts who lead an independent federal office." ECF 35 at 10-11. "[M]uch like many other multimember entities, the Board was designed to be an independent panel of experts that could impartially adjudicate disputes." *Id.* at 7; *see* 29 U.S.C. § 153(a); Datla & Revesz, *Deconstructing Independent Agencies*, 98 Cornell L. Rev. at 770-71 (2013). Because the Board's members serve staggered terms, every president has the "opportunity to shape its leadership and thereby influence its activities." *Seila Law*, 591 U.S. at 225. Thus, "*Humphrey's Executor* and its progeny control the outcome of this case and require that plaintiff be permitted to continue her role as Board member." ECF 35 at 36.

The two cases on which the government relies, by contrast, struck down removal limits involving "novel" agencies created in the wake of the 2008 financial crisis, both of which were headed by a single director with significant executive powers. *Seila Law*, 591 U.S. at 204; *Collins v. Yellen*, 594 U.S. 220, 220, 253 (2021). In *Seila Law*, the Court invalidated removal limits for the director of the Consumer Financial Protection Bureau, which the Court described as an "almost wholly unprecedented" single-director agency "with no foothold in history or tradition." 591 U.S. at 220-22. Similarly, the Court's decision in *Collins*, which concerned the Federal Housing Finance Agency, was just a "straightforward application of" the Court's "reasoning in *Seila Law*" that Congress cannot limit removal for "an agency led by a single Director." 594 U.S. at 251; *see also Free Enter. Fund*, 561 U.S. at 496 (noting the agency's "novel structure"). In contrast, the merits analysis in this case is more straightforward. Because the NLRB is a traditional multi-member board, *Humphrey's Executor* controls and dictates that Ms. Wilcox is entitled to prevail on the merits. *See Seila Law*, 591 U.S. at 207.

The government nevertheless argues (at 12) that *Humphrey's Executor* does not apply to the NLRB because the agency wields "substantial executive power." The government points to the agency's authority to investigate and adjudicate disputes over unfair labor practices, to order remedies in those cases, and to enforce compliance with its orders. That argument disregards the fact that the agency's

prosecutorial power is vested in the General Counsel, who is appointed by the President and removable at will. ECF 35 at 13-14; *see* 29 U.S.C. § 153(a), (d). The government responds (at 16) that "the Board is not hermetically sealed from the General Counsel's enforcement functions." But the general counsel's core decisions whether to prosecute and how to do so *are* "hermetically sealed" from the Board. *See* 29 U.S.C. § 153(d) (providing that the general counsel has "final authority … in respect of the investigation of charges and issuance of complaints …, and in respect of the prosecution of such complaints"). Regardless, hermetic sealing has never been the test. What matters is that the NLRB does not wield the kind of "substantial executive power" that raises a profound constitutional concern. *Seila Law*, 591 U.S. at 218.

In any case, none of the agency powers that the government identifies distinguish this case from *Humphrey's Executor* or other Supreme Court cases upholding removal protections for independent agencies. As the D.C. Circuit has explained, Congress gave the FTC "ample authority to investigate and, if deceptive practices are uncovered, to regulate [the parties'] … practices." *FTC v. Ken Roberts Co.*, 276 F.3d 583, 587 (D.C. Cir. 2001); *see Seila Law*, 591 U.S. at 286 n.10 (Kagan, J., concurring in part and dissenting in part) (describing the FTC's authority in 1935 as including the power to "run investigations, bring administrative charges, and conduct adjudications"); *see also, e.g.*, *Harris v. Bessent*, 2025 WL 521027, at *3 (D.D.C.

2025) (rejecting the government's argument "that *Humphrey's Executor* does not apply" to the Merit Systems Protection Board because "it may issue orders to federal employees, adjudicate and take final action, and litigate on its own behalf").

At the time *Humphrey's Executor* was decided, the FTC had broad authority "to prevent persons, partnerships, or corporations … from using unfair methods of competition." *Humphrey's Executor*, 295 U.S. at 620. In furtherance of that authority, Congress gave the agency "wide powers of investigation," *id.* at 621, including "various legal tools such as subpoenas, 15 U.S.C. § 49, and 'civil investigative demands,' *id.* § 57b-1(b)." *Meta Platforms, Inc. v. Fed. Trade Comm'n*, 723 F. Supp. 3d 64, 72-73 (D.D.C. 2024); *see also, e.g.*, *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 762 (10th Cir. 2024), *cert. denied*, 2025 WL 76435 (2025) (upholding removal protections for the Consumer Product Safety Commission, which "has investigatory powers, as well as civil and criminal enforcement powers"). Congress likewise authorized the FTC to charge private parties with statutory violations, adjudicate those charges in administrative hearings, issue cease-and-desist orders, and enforce those orders in court. *See Humphrey's Executor*, 295 U.S. at 871; Federal Trade Commission Act, Pub. L. No. 63-203, ch. 311, § 5, 38 Stat. 717, 719-20 (1914); *see also, e.g.*, *Morrison v. Olson*, 487 U.S. 654, 692 & n.31 (1988) (noting that the FTC and other independent agencies "exercise civil enforcement powers"); *SEC v. Blinder, Robinson, & Co.*, 855 F.2d 677, 682 (10th Cir. 1988) (noting that *Humphrey's Executor* "stands

generally for the proposition that Congress can, without violating Article II, authorize an independent agency to bring civil law enforcement actions where the President's removal power was restricted"); *Fed. Election Comm'n v. NRA Pol. Victory Fund*, 6 F.3d 821, 826 (D.C. Cir. 1993) (upholding the constitutionality of the Federal Election Commission's enforcement authority and power to order retrospective remedies).

The government also points (at 11) to the NLRB's "power to promulgate rules governing employer-employee relations." But the agency's rulemaking authority is narrowly limited to "such rules and regulations as may be necessary to carry out the provisions of this [Act]." 29 U.S.C. § 156. As the district court observed, the NLRB thus "hardly engages in rulemaking" beyond establishing procedures for bringing and adjudicating cases. ECF 35 at 16-17. The government does not dispute this, instead pointing out that the agency can also develop the law through adjudication. But so can Article III courts, and that does not make them executive agencies.

Although the agency has sometimes issued advisory rules stating its interpretation of parts of the NLRA, such rules—which just "advise the public of the agency's construction of the statutes and rules which it administers," *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995)—are not binding and are subject to de novo judicial review. Courts, for example, have reviewed de novo, and declined to follow, the agency's "joint employer" rule cited by the government and by the

President in the letter purporting to remove Ms. Wilcox. *See Browning-Ferris Indus. of Cal., Inc. v. NLRB*, 911 F.3d 1195 (D.C. Cir. 2018); *Chamber of Com. of U.S. v. NLRB*, 723 F. Supp. 3d 498, 507 (E.D. Tex. 2024). As the Supreme Court has since made clear, the "interpretation of the meaning of statutes, as applied to justiciable controversies," is "exclusively a judicial function." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 387 (2024).

In any event, the NLRB's rulemaking power again fails to distinguish this case from *Humphrey's Executor*. The Supreme Court has consistently upheld removal protections "for so-called 'independent regulatory agencies,' such as the Federal Trade Commission, the Interstate Commerce Commission, and the Consumer Product Safety Commission, which engage substantially in what has been called the 'quasi-legislative activity' of rulemaking." *Morrison*, 487 U.S. at 724-25. In *Federal Election Commission v. NRA Political Victory Fund*, for example, the D.C. Circuit relied on *Humphrey's Executor* and *Morrison* to uphold the constitutionality of the Federal Election Commission, which is "patterned on the classic independent regulatory agency" and can both make rules and order retrospective remedies. 6 F.3d at 826.

**2.** With no reasonable basis for distinguishing *Humphrey's Executor*, the government attempts to undermine its holding. Agencies that *Humphrey's Executor* characterized as "quasi-legislative" and "quasi-judicial," it explains (at 14), are today "considered 'executive,' at least to some degree." *Id.* (quoting *Morrison*, 487 U.S. at

689 n.28). On the government's view, *all* federal agencies—even the FTC, whose removal statute the Supreme Court upheld in *Humphrey's Executor*—exercise at least "some degree" of executive power and are thus subject to the President's unrestricted removal authority. *See id.*

The Supreme Court in *Morrison*, however, rejected this precise argument, holding that *Humphrey's Executor* remained good law even though "the powers of the FTC … would at the present time be considered 'executive.'" 487 U.S. at 689 & n.28. As the Court explained, the terms "quasi-judicial" and "quasi-legislative" as used in *Humphrey's Executor* did not "define rigid categories of those officials who may or may not be removed at will by the President," but merely "describe the circumstances in which Congress might be more inclined" to grant an agency "a degree of independence from the Executive." *Id.* at 689, 691 n.30. The modern understanding of those terms thus has no bearing on the constitutionality of removal provisions. *See*, *e.g.*, *Leachco*, 103 F.4th at 762 (holding that "the exercise of some arguably 'executive' functions does not undermine the constitutionality of tenure protections for officers of an expert, non-partisan agency"). Indeed, far from being undermined, *Humphrey's Executor* has been reinforced by subsequent precedent like *Seila Law*—which not only limited *Humphrey's Executor*'s holding to the "new situation" of a single independent officer wielding power "alone," but stressed that Congress could cure the

constitutional defect by "converting the CFPB into a multimember agency." 591 U.S. at 238.

If the government were correct that "changes in judicial doctrine had significantly undermined" *Humphrey's Executor*, the Supreme Court "itself would have overruled the case." *U.S. v. Hatter*, 532 U.S. 557, 567 (2001). But the Court has never done so. To the contrary, in the ninety years since *Humphrey's Executor* the Court has repeatedly applied it—and repeatedly declined to overrule its holding. *See, e.g.*, *Collins*, 594 U.S. at 251 (noting that *Seila Law* declined to "revisit" *Humphrey's Executor*); *Morrison*, 487 U.S. at 688 & n.25 (recognizing that *Humphrey's Executor* is still good law); *Free Enter. Fund*, 561 U.S. at 483 (declining to "reexamine" *Humphrey's Executor*); *Seila Law*, 591 U.S. at 198 (leaving *Humphrey's Executor*'s rule "in place"). Indeed, the Supreme Court recently denied certiorari in a challenge to *Humphrey's Executor* involving the Consumer Product Safety Commission's removal provision—a provision identical to the one at issue here. *See Leachco*, 2025 WL 76435. "To give existing precedent anything less than its full due based on speculation about what the Supreme Court might someday hold would exceed the authority of this Court, would inject grave uncertainty in the legal landscape, and would undermine the rule of law." *Meta Platforms*, 723 F. Supp. 3d at 71-72.

Other circuits have recognized as much. Recently, the Fifth Circuit in *Consumers' Research* rejected the same argument that the government raises here. The

plaintiffs there argued, like the government here, that *Seila Law* "upended" the rule of *Humphrey's Executor* by holding "that for-cause removal *always* creates a separation-of-powers violation—at least if the agency at issue exercises substantial executive power (which nearly all agencies do)." 91 F.4th at 345-46. The Fifth Circuit, however, declined to "read *Seila Law* so broadly." *Id.* Even if one believes that the "logic of *Humphrey's* may have been overtaken," that court observed, "the decision has not been overruled—at least not yet." *Id.* "Until that happens, *Humphrey's* controls." *Id.*; *see also Leachco*, 103 F.4th at 762.

To adopt the government's sweeping argument in this case would thus mean invalidating for-cause removal protections for *every* independent agency, with potentially catastrophic consequences to the structure of the federal government. Not even the current administration seems comfortable with that result. In a recently issued executive order, the President adopted the same argument that the government advances here—that all executive branch personnel must be subject to "the President's ongoing supervision and control." Exec. Order No. 14,215, 90 Fed. Reg. 10447 (Feb. 18, 2025). But without any explanation, the order carved out exceptions for "the Board of Governors of the Federal Reserve System" and "the Federal Open Market Committee in its conduct of monetary policy," *id.*—a tacit recognition of the danger that the government's legal position poses to the nation's economic stability.

**B.    The government's claim that the district court lacked power to issue an injunction also defies precedent.**

Binding precedent also disposes of the government's argument that the federal judiciary lacks authority to provide an effective remedy to the President's concededly unlawful removal. This Court recently reaffirmed its longstanding case law holding that courts may "enjoin 'subordinate executive officials' to reinstate a wrongly terminated official." *Severino*, 71 F.4th at 1042-1043 (quoting *Swan v. Clinton*, 100 F.3d 973, 980 (D.C. Cir. 1996)). This remedy "is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015); *see* ECF 35 at 33 n.22 (surveying cases).

The government argues (at 19) that the district court lacked power to "enjoin the President" or to order Ms. Wilcox's "reappoint[ment]." But the court's injunction does neither of those things. All it does is order Chairman Kaplan to provide her "with access to the necessary government facilities and equipment" and to refrain from "impeding in any way her ability to fulfill her duties." ECF 34 at 2. That's the same form of relief that this Court expressly approved in *Swan*, 100 F.3d at 978-80 (noting that, "in most cases" courts can issue such relief "against subordinate officials," obviating the need for relief against the President).

The government's contrary argument, as the district court recognized, "boils down to a technical distinction" between the kinds of relief historically available in

courts of law and courts of equity. ECF 35 at 33 n,.22. Much "water has flowed over the dam" since then. *Sampson v. Murray*, 415 U.S. 61, 71, 92 n.68 (1974). "After the merger of law and equity in the federal courts over eighty years ago," the distinction that the government draws "makes no difference." ECF 35 at 33 n.22. And even if "injunctive relief were not available here because of adherence to the historical dividing lines of law and equity, a writ of mandamus would likely be available, and the effective relief provided to plaintiff would be the same." *Id.*

## II.    The remaining factors strongly cut against extraordinary relief.

The government's failure to show a substantial likelihood of success is itself "an arguably fatal flaw for a stay application." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam). But, as the district court's opinion makes clear, the government also fails to meet any of the other stay factors.

**A.** To demonstrate irreparable harm, the government cites (at 23) damage "to the separation of powers." All that the district court's decision does, however, is restore the NLRB to the norms established by ninety years of precedent and historical practice. The President cannot claim to be irreparably injured by his inability to violate a statute whose constitutionality is "dictated by binding precedent." ECF 35 at 35. Moreover, as the district court observed, the President has ample opportunity to exercise executive authority over the agency. *Id.* at 21. He has

already appointed the General Counsel, who controls the NLRB's prosecutorial functions, and designated Mr. Kaplan as Chair of the Board. And he could easily establish a majority on the Board by appointing members to fill its two vacant positions.

The government relies (at 23) on *Sampson v. Murray* for the proposition that loss of employment and salary "ordinarily do not amount to irreparable injury." *Sampson*, however, rested on the principle that "the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" 415 U.S. 61 at 83. That principle is inapplicable, however, "in the context of an action," like this one, that "appears to be nakedly illegal." *Harris*, 2025 WL 521027, at \*6. The President's blatant violation of an independent agency's statutory removal limits is just the sort of "genuinely extraordinary situation" that *Samson* held "merit[s] injunctive relief for a discharged Government employee." *Id.*

Unlike the probationary employee in *Sampson*, Ms. Wilcox was appointed and confirmed by the Senate to a leadership role in an independent federal agency. *See id.* And her removal was made in violation of removal protections "made plain by federal statute and supported by ninety years of Supreme Court precedent." *Id*. In similar circumstances, the court in *Berry v. Reagan* found irreparable harm where, given statutory removal protections, it was "not clear that the President [had] the power to remove Commissioners at his discretion" or "should be given the widest

latitude to exercise this authority." 1983 WL 538, at *5 (D.D.C. 1983). This kind of blatantly illegal removal "represent[s] far more than grievances over backpay and routine personnel issues." *Harris*, 2025 WL 521027, at *7.

Ms. Wilcox has also suffered irreparable harm here because the President's illegal removal "prevents her from carrying out the duties Congress has assigned to her." *Id.* at *8; *see also Berry*, 1983 WL 538, at *5 (finding irreparable harm from deprivation of the "statutory right to function" as a member of an independent agency). And because Ms. Wilcox's removal eliminated a quorum, it has the "obviously disruptive effect" of bringing an immediate and indefinite halt to the NLRB's critical work of adjudicating labor-relations disputes. *Berry*, 1983 WL 538, at *5. That injury, too, is irreparable. *See id.*

**B.** The government nowhere explains how a stay pending appeal would serve the public interest. On the contrary, a stay would again paralyze the NLRB by leaving it without a quorum. "Without a functioning NLRB," the district court explained, "unfair labor practices go unchallenged, union elections go unrecognized, and pending labor disputes go unreviewed." ECF 35 at 34. Those effects are now playing out in real time, as evidenced by recent arguments by employers that the NLRB's lack of a quorum renders it unable to certify union election results, despite a majority of workers voting in favor of union representation. *See id.*

The longer Ms. Wilcox is wrongfully kept from her position, the worse the situation will become for workers, employers, and the broader public who depend on the agency's important congressionally mandated work. The worsening situation would be "irrevocably disruptive of the Board's function and [Ms. Wilcox's] legal responsibility for carrying it out, all to the damage of the public interest." *Mackie v. Bush*, 809 F. Supp. 144, 146 (D.D.C. 1993). This severe public harm "strongly favors" an injunction in this case. *Berry*, 1983 WL 538, at *6.

## CONCLUSION

This Court should deny the government's emergency motion for a stay pending appeal.

Respectfully submitted,

*/s/ Deepak Gupta*
DEEPAK GUPTA
MATTHEW W.H. WESSLER
GREGORY A. BECK
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*deepak@guptawessler.com*

JENNIFER D. BENNETT*
GUPTA WESSLER LLP
505 Montgomery Street
Suite 625
San Francisco, CA 94111
(415) 573-0336
*jennifer@guptawessler.com*

*admission pending

March 11, 2025                              *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g)(1)

I hereby certify that my word processing program, Microsoft Word, counted 5,190 words in the foregoing brief, exclusive of the portions excluded by Rule 32(f). The document also complies with the typeface requirements of Fed. R. App. P. 32(a)(6) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in proportionally spaced typeface in 14-point Baskerville font.

*/s/ Deepak Gupta*
Deepak Gupta

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2025, I electronically filed the foregoing document with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Deepak Gupta*
Deepak Gupta