ORAL ARGUMENT NOT YET SCHEDULED
No. 25-5057

─────────────────

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

─────────────────

GWYNNE A. WILCOX,

*Plaintiff-Appellee*,

v.

DONALD J. TRUMP, in his official capacity as President of the
United States, et al.,

*Defendants-Appellants.*

─────────────────

Appeal from the United States District Court for the
District of Columbia, No. 25-cv-334
The Honorable Beryl A. Howell

─────────────────

**BRIEF OF THE AMERICAN FEDERATION OF LABOR AND
CONGRESS OF INDUSTRIAL ORGANIZATIONS (AFL-CIO) AS
AMICUS CURIAE IN OPPOSITION TO DEFENDANTS-
APPELLANTS' EMERGENCY MOTION FOR A STAY PENDING
APPEAL**

─────────────────

Matthew Ginsburg
Harold Craig Becker
Maneesh Sharma
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, DC 20006
(202) 637-5397
mginsburg@aflcio.org

*Counsel for Amicus Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

Except for the amici submitting this brief, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the Government's Emergency Motion for a Stay Pending Appeal ("the Stay Motion").

### B. Rulings Under Review

A reference to the ruling at issue appears in the Stay Motion.

### C. Related Cases

This case has not been before this Court. The Stay Motion mentions "other related cases" involving challenges to the President's removal powers.

Date: March 11, 2025

/s/ Matthew Ginsburg
Matthew Ginsburg
AFL-CIO
815 Black Lives Matter
Plaza, N.W.
Washington, DC 20006
(202) 637-5397
mginsburg@aflcio.org

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Page(s)

INTEREST OF AMICUS CURIAE..........................................................1

INTRODUCTION .....................................................................1

ARGUMENT ..............................................................................3

CONCLUSION……………………………………………...11

# TABLE OF AUTHORITIES

## Cases

*Ahearn v. Jackson Hosp. Corp.*,
  351 F.3d 226 (6th Cir. 2003) ............................................................ 10

*Frankl v. HTH Corp.*,
  650 F.3d 1334 (9th Cir. 2011) .......................................................... 10

*Franks Bros. Co. v. NLRB*,
  321 U.S. 702 (1944) ............................................................................ 8

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ............................................................................ 2

*Lineback v. Spurlino Materials, LLC*,
  546 F.3d 491 (7th Cir. 2008) .............................................................. 9

*New Process Steel, L.P. v. NLRB*,
  560 U.S. 674 (2010) ............................................................................ 3

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................................ 2

*NLRB v. Electro-Voice, Inc.*,
  83 F.3d 1559 (7th Cir. 1996) .............................................................. 9

*Pascarell v. Vibra Screw*,
  904 F.2d 87 (3d Cir. 1990)................................................................... 9

*Schaub v. West Michigan Plumbing & Heating, Inc.*,
  250 F.3d 962 (6th Cir. 2001) ............................................................ 10

*Wackenhut Corp. v. NLRB*,
  178 F.3d 543 (D.C. Cir. 1999)............................................................. 6

## Statutes

29 U.S.C. § 151 .................................................................................. 2, 8
29 U.S.C. § 153(b) .................................................................................. 3
29 U.S.C. § 157 ....................................................................................... 8
29 U.S.C. § 160(c) ................................................................................... 3
29 U.S.C. § 160(e) ................................................................................... 4

## Regulations

29 C.F.R § 102.45(a) ......................................................................4
29 C.F.R. § 102.48 ........................................................................3
29 C.F.R. § 102.67 ........................................................................3

## NLRB Administrative Decisions

*Aqua Dental*,
No. 16-CA-3551727, 2024 WL 3551727 (NLRB July 26, 2024)..............5
*Atlantic American Fire Prot. Co., Inc.*,
No. 13-CA-309518, 2024 WL 2111055 (NLRB May 9, 2024) ..................4
*Grow OP Farms*,
No. 19-CA-309512, 2024 WL 5006828 (NLRB Dec. 5, 2024)...................4

## NLRB Case Dockets

*Portillo's Hot Dogs, LLC*, No. 13-CA-354045, *available at*
     https://www.nlrb.gov/case/13-CA-354045 ...............................................6
*Rhode Island CVS Pharmacy, L.L.C.*, No. 01-RC-339980, *available at*
     https://www.nlrb.gov/case/01-RC-339980 ...............................................7
*Transdev Servs., Inc.*, No. 05-CA-352917, *available at*
     https://www.nlrb.gov/case/05-CA-352917) ...............................................6
*Whole Foods Mkt. Grp., Inc.*, No. 04-RC-355267, *available a*t
https://www.nlrb.gov/case/04-RC-355267...................................................7

## INTEREST OF *AMICUS CURIAE*

The American Federation of Labor and Congress of Industrial Organizations (AFL-CIO) is the nation's labor federation, composed of 63 affiliate unions representing 15 million working people. As a federation of labor unions who depend on the National Labor Relations Board (NLRB) to decide representation and unfair labor practice cases, the AFL-CIO has an extremely strong interest in the NLRB's ability to complete its congressionally-delegated responsibilities.[1]

## INTRODUCTION

The AFL-CIO files this brief in support of Appellee Gwynne A. Wilcox's opposition to Appellants' motion for a stay pending appeal. The AFL-CIO strongly agrees with Member Wilcox's arguments with regard to the merits and to irreparable harm. The AFL-CIO files this brief solely to demonstrate that both remaining factors – "whether issuance of the stay will substantially injure the other parties

---

[1] No counsel for a party authored this brief in whole or in part, no party or counsel for a party contributed money that was intended to fund preparing or submitting this brief, and no person other than amicus or their counsel contributed money that was intended to fund the preparation or submission of this brief. As noted in the motion filed in conjunction with this brief, all parties have consented to the filing of this amicus brief.

interested in the proceeding; and [] where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)) – also strongly favor denial of a stay.

Specifically, if the district court's judgment is stayed, the NLRB will be deprived of a quorum and the employees, employers, and unions who rely on the NLRB to adjudicate their cases will be substantially injured.

A stay would also be strongly contrary to the public interest expressed by Congress that it is "the policy of the United States" to "protect[] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment." 29 U.S.C. § 151.

Indeed, in the short period that Member Wilcox was prevented from lawfully exercising her functions, the NLRB has not *only* been disabled from deciding serious unfair labor practice charges of great significance to workers. The agency has been impeded in fulfilling even its core ministerial functions—with several employers arguing that the agency's regional offices lacked authority to hold elections where

workers' voices in favor or against unionization might be heard. This state of affairs seriously frustrates the public policy that favors workers' "full freedom of association," contrary to the public interest defined by Congress.

## ARGUMENT

1. Granting of a stay in this case would deprive the National Labor Relations Board of the three-member quorum it requires to function.  29 U.S.C. § 153(b); *New Process Steel, L.P. v. NLRB*, 560 U.S. 674 (2010).  Without a quorum, the Board cannot issue final orders in unfair labor practice cases, *see* 29 U.S.C. § 160(c), 29 C.F.R. § 102.48, and cannot rule on requests for review of regional director decisions in representation cases, *see* 29 U.S.C. § 153(b), 29 C.F.R. § 102.67. Granting a stay would thus significantly delay the resolution of cases before the Board, substantially injuring the employees, employers, and unions who depend on the Board to promptly decide such matters.

There are many unfair labor practice cases currently pending where depriving the NLRB of a quorum would result in substantial injury to the party awaiting a Board decision if the District Court's

order is stayed.[2]  Many of these cases involve the discharge of union supporters in retaliation for forming a union.  For instance, one employer refused to appear for a single bargaining session with a recently-certified union and instead terminated *every single pro-union employee* after employees supported the union in an NLRB-supervised election by a vote of 10-to-1.  *See Atlantic American Fire Prot. Co., Inc.*, No. 13-CA-309518, 2024 WL 2111055 (NLRB May 9, 2024) (ALJ decision noting that company president testified that he fired employees because it was "[his] job as the president to quell that insurrection and put that rebellion down" and told employees that he could ignore the NLRA because "this is America – I can do whatever the [expletive] I want"); *Grow OP Farms*, No. 19-CA-309512, 2024 WL 5006828 (NLRB Dec. 5, 2024) (ALJ decision finding employer unlawfully terminated two

_____

[2] All the decisions cited below were issued by the NLRB's administrative law judges ("ALJs"). Such decisions contain "findings of fact, conclusions of law, and the reasons or grounds for the findings and conclusions, and recommendations for the proper disposition of the case," 29 C.F.R. § 102.45(a), but are not binding on the parties.  Only the Board may render a final decision—enforceable by means of a petition to a Court of Appeals, see 29 U.S.C. § 160(e)—that seeks to remedy violations of the NLRA.

union supporters in lead-up to election, coupled with threats of reprisal and unlawful interrogation aimed at entire bargaining unit).

Without prompt decisions from the NLRB, these fired workers will suffer substantial injury and their coworkers will be chilled in the exercise of their NLRA rights as they lose faith in the Board's ability to protect their right to organize and engage in collective bargaining without retaliation.[3]

This concern is also acute in so-called "technical refusal-to-bargain" unfair labor practice cases where the Board's role is ministerial but requires a quorum. There is no right to direct judicial review of NLRB representation decisions. So an employer who wishes to challenge such a decision "must refuse to bargain with the union, suffer an unfair labor practice charge, and in challenging the charge rely on the objections and corresponding evidence raised in the

---

[3] While we focus on cases involving union members in light of the NLRA's central focus on collective bargaining, it bears noting that individual workers who have been terminated in retaliation for engaging in protected concerted activity also rely on the Board as their only avenue of redress for unfair labor practices. *See, e.g., Aqua Dental*, No. 16-CA-3551727, 2024 WL 3551727 (NLRB July 26, 2024) (worker unlawfully terminated for asking questions about working conditions and bonuses in a group setting).

representation proceeding." *Wackenhut Corp. v. NLRB*, 178 F.3d 543, 548 (D.C. Cir. 1999). Because the refusal to bargain is uncontested, the role of the Board in such cases is ministerial; rather than proceeding to a fact-finding hearing before an Administrative Law Judge, the NLRB General Counsel files a motion for summary judgment directly with the Board. In this way, the employer secures the "technical refusal-to-bargain" unfair labor practice order it needs in order to petition for review of the underlying representation case in the court of appeals.

Without a quorum, the NLRB cannot perform even this routine function and, as a result, employers can avoid their bargaining obligation indefinitely depriving employees of their statutory right to a representative of their own choosing and frustrating their desire to be represented with the inevitable result of chilling the exercise of their right to act collectively by support union representation. Several technical refusal-to-bargain cases are already pending before the Board. *See, e.g., Portillo's Hot Dogs, LLC*, No. 13-CA-354045, *available at* https://www.nlrb.gov/case/13-CA-354045 (pending since Dec. 20, 2024); *Transdev Servs., Inc.*, No. 05-CA-352917, *available at* https://www.nlrb.gov/case/05-CA-352917 (pending since Jan. 14, 2025).

Other employers are sure to follow suit if the Board is deprived of a

quorum.  And, during the period when Member Wilcox was prevented

from occupying her office, several employers filed objections claiming

that NLRB regional offices lacked authority to even hold elections due

to the Board's lack of quorum.  *Whole Foods Mkt. Grp., Inc.*, No. 04-RC-

355267, docket *available at* https://www.nlrb.gov/case/04-RC-355267;

*Rhode Island CVS Pharmacy, L.L.C.*, No. 01-RC-339980, Request for

Review of RDs Decision and Order, *available at*

https://www.nlrb.gov/case/01-RC-339980.

2. The certainty of such injuries and chilling effects if the NLRB is

deprived of a quorum demonstrates that the public interest is served by

the denial of a stay.  Congress provided unions, employers, and

employees with rights under the NLRA and vested sole responsibility

for enforcing those rights with the NLRB.  A court order preventing the

Board from exercising its delegated authority to enforce these rights

would clearly be contrary to the public interest as defined by Congress.[4]

---

[4] Appellants' contention that the public interest lies in its favor because
"the public would be better served" if the NLRB were to regain its
quorum by "appointment by the President, with consent of the Senate,
of other individuals to fill the Board's vacancies," App. Br. 23, is not
well taken.  First, this statement acknowledges that the President can

In enacting the NLRA, Congress declared "the policy of the United States" to be "encouraging the practice and procedure of collective bargaining and . . . protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C. § 151. *See also* NLRA § 7, 29 U.S.C. § 157 (setting forth the substantive rights of employees). Yet, Congress did not provide a private right of action, instead requiring any party whose rights are violated to seek a remedy exclusively through the administrative process.

Delay in the vindication of these rights due to the NLRB's loss of quorum is no small matter. "[U]nlawful refusal of an employer to bargain collectively with its employees' chosen representatives disrupts the employees' morale, deters their organizational activities, and discourages their membership in unions." *Franks Bros. Co. v. NLRB*,

---

achieve an NLRB majority that "holds the President's confidence," *id.* at 24, without unlawfully removing Wilcox. Second, the public interest is not served by rewarding the President for his own dilatory behavior, *i.e.*, not nominating members to the two vacant seats that could provide him with a majority.

321 U.S. 702, 704 (1944).  Courts of appeals have long-recognized that, if Board remedies are unduly delayed, "the chilling effect of management retaliation" against the exercise of NLRA rights may not be erased by "the curative effects of any remedial action the Board might take[.]" *Pascarell v. Vibra Screw*, 904 F.2d 874, 878-79 (3d Cir. 1990) (cleaned up).  "As time passes, the benefits of unionization are lost and the spark to organize is extinguished.  The deprivation to employees from the delay in bargaining and the diminution of union support is immeasurable." *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1573 (7th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997).

Even if the NLRB eventually regains its quorum, therefore, the deprivations that result from delayed justice will not be easily remedied.  When an employer is allowed to "proceed in its quest to defeat the Union before it becomes established . . . then merely requiring the company to pay its employees damages after the fact will not remedy the adverse impact to the Union and the employees in the interim period." *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 501 (7th Cir. 2008).  That is because actions such as discharging union supporters "have an inherently chilling effect on other employees" that

cannot be remedied long after the fact. *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 239 (6th Cir. 2003); *see also Frankl v. HTH Corp.*, 650 F.3d 1334, 1363 (9th Cir. 2011) ("[T]he discharge of active and open union supporters risks a serious adverse impact on employee interest in unionization and can create irreparable harm to the collective bargaining process."); *Schaub v. West Michigan Plumbing & Heating, Inc.*, 250 F.3d 962, 971 (6th Cir. 2001) ("the absence of the only union organizer at the company for an extended period of time could irreparably harm the union's chances of organizing the employees" (cleaned up)).

Given the often time-sensitive need for parties to vindicate their NLRA rights and the fact that the NLRB administrative procedure is the exclusive means to do so, a stay that deprives the Board of the quorum it needs to exercise its congressionally-delegated responsibility to enforce the law is clearly contrary to the public interest.

## CONCLUSION

The Court should deny Appellants' motion.

Dated: March 11, 2025

/s/ Matthew Ginsburg
Matthew Ginsburg
Harold Craig Becker
Maneesh Sharma
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, DC 20006
(202) 637-5397
mginsburg@aflcio.org

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 2,005 words.


2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

/s/ Matthew Ginsburg

*Counsel for Amicus Curiae*

Date: March 11, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system.

I further certify that the foregoing document was served on all parties or their counsel of record through the appellate CM/ECF system, as they are registered users.

s/ Matthew Ginsburg

*Counsel for Amicus Curiae*

Date: March 11, 2025