# In the United States Court of Appeals for the District of Columbia Circuit

---

GWYNNE A. WILCOX,

*Plaintiff-Appellee*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, MARVIN E. KAPLAN, in his official capacity as Chairman of the National Labor Relations Board,

*Defendants-Appellants*.

---

On Appeal from the United States District Court for the District of Columbia

---

## BRIEF OF FORMER NATIONAL LABOR RELATIONS BOARD MEMBERS AS *AMICI CURIAE* IN OPPOSITION TO APPELLANTS' EMERGENCY MOTION FOR A STAY PENDING APPEAL

---

DENNIS FAN, *Director*
BENNETT M. LUNN, *Student*
MELANIE MIGNUCCI, *Student*
ALICE PARK, *Student*
APPELLATE LITIGATION CLINIC,
  COLUMBIA LAW SCHOOL
MORNINGSIDE HEIGHTS
  LEGAL SERVICES, INC.
435 West 116th St.
New York, NY 10027
(212) 854-4291
dfan@columbialawclinics.org

## A.      Parties and Amici

Except as listed below, all parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the government's emergency motion for a stay pending appeal. *Amici* submitting this brief in opposition to that motion are former Members of the National Labor Relations Board Lauren McFerran, Mark Gaston Pearce, Wilma Liebman, Nancy Schiffer, Sarah Fox, and Charles Cohen.

*Amicus* briefs have also been submitted by: (1) law professors John C. Coates, Jeffrey N. Gordon, Kathryn Judge, and Lev Menand; (2) the Constitutional Accountability Center; (3) Ariana Cortes and Logan Karam; (4) the Separation of Powers Clinic; (5) Tennessee; and (6) Florida, Alabama, Arkansas, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Oklahoma, South Carolina, South Dakota, Texas, Utah, West Virginia, and the Arizona Legislature.

## B.      Rulings Under Review

The rulings under review are the March 6, 2025 order of the district court (ECF No. 34) and the accompanying memorandum opinion (ECF No. 35).

## C.      Related Cases

This case has not previously been before this Court.

Dated:  March 11, 2025    <u>/s/ *Dennis Fan*   </u>
                Dennis Fan
                Counsel for *Amici Curiae*

## CERTIFICATE OF COUNSEL
## REGARDING AUTHORITY TO FILE

Pursuant to Federal Rule of Appellate Procedure 29(a)(2), all parties have consented to the filing of this brief. Pursuant to D.C. Circuit Rule 29(d), *amici* state that a separate *amicus* brief is necessary due to the unique experiences and perspectives of former Members of the National Labor Relations Board, as outlined in the section titled "Interests of *Amici Curiae*" and explained in this brief.

Dated:      March 11, 2025                    /s/ *Dennis Fan*
                                              Dennis Fan
                                              Counsel for *Amici Curiae*

# TABLE OF CONTENTS

INTERESTS OF *AMICI CURIAE* ........................................................1

INTRODUCTION AND
SUMMARY OF ARGUMENT ............................................................1

ARGUMENT ...................................................................................3

    A.    The Fair and Impartial Performance of the Board's
    Adjudicatory Functions Depends on Removal Protections .................3

    B.    The Court Should Permit Member Wilcox to Remain in
    Her Presidentially Appointed Role Pending Appeal ..........................12

        1.    A stay that renders the Board ineffective pending
        appeal lacks any grounding in the equities ...............................12

        2.    The government misapprehends the harms to the
        President's powers from reinstating Member Wilcox ...............14

CONCLUSION ................................................................................19

CERTIFICATE OF COMPLIANCE ..................................................20

# TABLE OF AUTHORITIES

| Cases | Pages(s) |
|---|---|

*Allentown Mack Sales & Serv., Inc. v. NLRB,*
522 U.S. 359 (1998) ..............................................................9

*Auciello Iron Works, Inc. v. NLRB,*
517 U.S. 781 (1996) ..............................................................9

*Berkshire Emps. Ass'n of Berkshire Knitting Mills v. NLRB,*
121 F.2d 235 (3d Cir. 1941) ..............................................11

*Brooks v. NLRB,*
348 U.S. 96 (1954) .................................................................4

*Caperton v. A.T. Massey Coal Co.,*
556 U.S. 868 (2009) ............................................................10

*Carey v. Piphus,*
435 U.S. 247 (1978) ............................................................11

*Chaplaincy of Full Gospel Churches v. England,*
454 F.3d 290 (D.C. Cir. 2006) ...........................................16

*Cinderella Career & Finishing Schs., Inc. v. Federal Trade Comm'n,*
425 F.2d 583 (D.C. Cir. 1970) ...........................................11

*Collins v. Yellen,*
594 U.S. 220 (2021) ..........................................3, 7, 17, 18

*Exela Enter. Sols., Inc. v. NLRB,*
32 F.4th 436 (5th Cir. 2022)......................................5, 7, 15

*Fall River Dyeing & Finishing Corp. v. NLRB,*
482 U.S. 27 (1987) ..........................................................3, 9

*Humphrey's Executor v. United States,*
295 U.S. 602 (1935) ..................................1, 4, 20, 24

*In re Murchison,*
349 U.S. 133 (1955) ...........................................................10

**Cases**                                                                 **Pages(s)**

*Lucia v. Sec. & Exch. Comm'n,*
   585 U.S. 237 (2018) ...............................................................3, 17

*Marshall v. Jericho, Inc.,*
   "446 U.S. 238 (1980) ...............................................................11

*New Process Steel, L.P. v. NLRB,*
   560 U.S. 674 (2010) ...........................................................12, 16

*Nken v. Holder,*
   556 U.S. 418 (2009) ...............................................................12

*NLRB v. Aakash, Inc.,*
   58 F.4th 1099 (9th Cir. 2023)...................................................5

*NLRB v. Federal Lab. Rels. Auth.,*
   613 F.3d 275 (D.C. Cir. 2010) ................................................4

*NLRB v. J.H. Rutter-Rex Mfg. Co.,*
   396 U.S. 258 (1969) ...............................................................13

*NLRB v. Jones & Laughlin Steel Corp.,*
   301 U.S. 1 (1937) .....................................................................4

*NLRB v. Sears, Roebuck & Co.,*
   421 U.S. 132 (1975) .................................................................6

*NLRB v. SW General, Inc.,*
   580 U.S. 288  (2017) ............................................................5, 7

*NLRB v. United Food & Com. Workers Union, Loc. 23, AFL-CIO,*
   484 U.S. 112 (1987) .............................................................4, 5

*Pillsbury v. Federal Trade Comm'n,*
   354 F.2d 952 (1966) ...............................................................11

*Ryder v. United States,*
   515 U.S. 177 (1995) ...........................................................3, 17

| Cases | Pages(s) |
|---|---|

*Schweiker v. McClure*,
456 U.S. 188 (1982) ........................................................10

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020) ..............................................5, 6, 16, 17

*Starbucks Corp. v. McKinney*,
602 U.S. 339 (2024) ........................................................6

*Trans World Airlines, Inc. v. Civil Aeronautics Bd.*,
254 F.2d 90 (D.C. Cir. 1958) ........................................11

*Trump v. Mazars USA, LLP*,
591 U.S. 848 (2020) ......................................................16

*Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*,
259 F.2d 921 (D.C. Cir. 1958) ......................................17

*Ward v. Village of Monroeville*,
409 U.S. 57 (1972) ........................................................11

*Wisconsin Gas Co. v. Federal Energy Reg. Comm'n*,
758 F.2d 669 (D.C. Cir. 1985) ......................................16

*Withrow v. Larkin*,
421 U.S. 35 (1975) ........................................................11

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) ........................................................9

| Statutes | Pages(s) |
|---|---|

National Labor Relations Act, Pub. L. No. 74-198, 49 Stat. 449 (1935) .................3

29 U.S.C. § 151 ........................................................4, 14

29 U.S.C. § 153 ..................................................5, 6, 7, 9

**Statutes**                                                    **Pages(s)**

29 U.S.C. § 156 ...................................................................6

29 U.S.C. § 157 ...................................................................4

29 U.S.C. § 158 ...................................................................6

29 U.S.C. § 159 ...................................................................8

29 U.S.C. § 160 ...........................................................6, 8, 13


**Regulations**                                                 **Pages(s)**

29 C.F.R § 101.10 ...............................................................8

29 C.F.R § 101.11 ...............................................................8

29 C.F.R § 101.12 ...............................................................8

29 C.F.R § 101.182 ...........................................................14

29 C.F.R § 102.48 ...............................................................8

Exec. Order 14,215, *Ensuring Accountability for All Agencies*,
   90 Fed. Reg. 10,447 (Feb. 18, 2025) ...................................10


**Other Authorities**                                           **Pages(s)**

*ExxonMobil Rsch & Eng'g Co. & Independent Lab'y Emps. Union, Inc.*,
   No. 22-CA-223073 (NLRB 2022) ........................................23

Fred B. Jacob & Anne Marie Lofaso, *Beyond* Loper Bright*:
Iterative Construction at the National Labor Relations Board*,
   77 U.C.L.J. (forthcoming 2025) ...........................................9

Memorandum from Theodore B. Olson, Ass't Att'y Gen.,
   Off. of Legal Counsel, U.S. Dep't of Justice, to Att'y Gen.
   (Feb. 10, 1982), https://knightcolumbia.org/documents/jwhwzdt11o ..............10

**Other Authorities**                                                    **Pages(s)**

NLRB, *Administrative Law Judge Decisions* (visited Mar. 11, 2025),
   https://www.nlrb.gov/cases-decisions/decisions/administrative-law-judge-
   decisions .................................................................................................................12

NLRB, *Guide to Board Procedures* (July 2020) .............................................................18

NLRB, *President Trump Appoints William B. Cowen Acting General Counsel*
   *of the National Labor Relations Board* (Feb. 3, 2025),
   https://www.nlrb.gov/news-outreach/news-story/president-
   trump-appoints-william-b-cowen-acting-general-counsel-of-the) ....................2, 15

*President Donald J. Trump Announces Intent to Nominate and Appoint Individuals*
   *to Key Administration Posts* (Mar. 20, 2020), https://trumpwhitehouse.archives.gov/
   presidential-actions/president-donald-j-trump-announces-intent-nominate-
   appoint-individuals-key-administration-posts-32 ...................................................7

Robert Iafolla, *Labor Board Back in Business After Fired Member's Reinstatement*,
   Bloomberg Law (Mar. 8, 2025), https://www.bloomberglaw.com/
   bloomberglawnews/daily-labor-report/X3 B0E8FS000000..............................13

Robert Iafolla, *Whole Foods Bid to Repel Union Swipes at Hobbled Labor Board*,
   Bloomberg Law (Feb. 11, 2025), https://news.bloomberglaw.com/daily-
   labor-report/whole-foods-bid-to-repel-union-swipes-at-hobbled-labor-board....14

## INTERESTS OF *AMICI CURIAE*[1]

*Amici curiae* are former Members of the National Labor Relations Board who served across Republican and Democratic presidential administrations. Collectively, *amici* took part in thousands of Board decisions issued between 1994 and 2024. *Amici* are therefore well positioned to explain how the Board's statutory for-cause removal protections in practical terms foster the independence and neutrality central to the Board's adjudicatory functions. Based on their experience, *amici* also have a unique understanding of the importance of fairly and impartially adjudicating labor disputes to the Nation's economy and to interstate commerce. *Amici* are the following individuals:

**Lauren McFerran** was appointed by President Barack Obama and served as a Board Member from December 2014 to December 2019. She was reappointed by defendant President Donald Trump and served as a Board Member from July 2020 to January 2021, when she was designated as Chairman by President Joe Biden and after which she served as Chairman until December 2024.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4), counsel for *amici curiae* represent that they authored this brief in its entirety and that none of the parties or their counsel, nor any other person or entity other than *amici* or their counsel, made a monetary contribution intended to fund preparing or submitting this brief.

**Mark Gaston Pearce** was appointed by President Obama and served as a Board Member from April 2010 to August 2018, including serving as Chairman from August 2011 to January 2017.

**Wilma Liebman** was appointed by President Bill Clinton and served as a Board Member starting in November 1997. She was reappointed in 2002 by President George W. Bush and served as Chairman from January 2009 to August 2011.

**Nancy Schiffer** was appointed by President Obama and served as a Board Member from August 2013 to December 2014.

**Sarah Fox** was appointed by President Clinton and served as a Board Member from February 1996 to December 2000.

**Charles Cohen** was appointed by President Clinton and served as a Board Member from March 1994 to August 1996.

## INTRODUCTION AND
## SUMMARY OF ARGUMENT

For the past ninety years, the National Labor Relations Board has safeguarded the Nation's labor peace and industrial stability. Congress designed the agency as a bifurcated entity: its General Counsel is charged with investigating and prosecuting unfair labor practices, while the five-Member Board is charged with adjudicating these labor disputes. Congress gave the President control and unfettered removal powers over the General Counsel, while implementing for-cause removal protections for Board Members to ensure their fair and impartial adjudications of labor disputes. That design ensures that the President can influence the enforcement direction and agenda of the Board, while safeguarding the critical independence and neutrality that Board Members need to adjudicate disputes.

*Amici curiae* agree with plaintiff Member Gwynne Wilcox's argument (Opp. at 8–17) that the Board's removal protections are constitutional under the agency model that the Supreme Court endorsed in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), which was handed down a mere forty days before Congress established the Board. As former Members of the Board, *amici* also stress the need for independence in the Board Members' adjudicative responsibilities, to ensure constitutionally fair and impartial agency decisionmaking.

These adjudicative responsibilities underscore that Member Wilcox should remain on the Board pending appeal. Her absence from the Board following her

improper removal impaired the agency's ability to perform even the most ministerial of tasks due to the lack of a quorum of three Members—such as adopting orders that neither an employer nor an employee opposed.

Member Wilcox's continued absence would also result in unnecessary delays and uncertainty. To the extent that the Board remains without a quorum during the appeal due to her absence, currently pending labor disputes would remain in limbo for months on end. This causes harm both to workers whose rights were violated or who are being denied the union representation they seek and to employers who remain in legal limbo potentially accruing significant backpay and other remedial obligations. Those harms cannot be remediated. Even if the President were to nominate and the Senate were to confirm a new Board Member and fill the seat that Member Wilcox would rightfully hold but for her unlawful removal, any subsequent Board action that lacked her participation would be potentially invalid.

The government's asserted abstract harms to the President's powers, meanwhile, are neither serious nor irreparable. The President maintains significant levers of control over the Board's direction through the power he has already exercised to designate the Board's Chairman (*see* Mot. at 6) and to appoint an Acting General Counsel (*see* NLRB, *President Trump Appoints William B. Cowen Acting General Counsel of the National Labor Relations Board* (Feb. 3, 2025), https://www.nlrb.gov/news-outreach/news-story/president-trump-appoints-william-b-cowen-acting-general-coun-

sel-of-the)—as well as through the power he has yet to exercise to nominate Board Members to the two currently vacant seats. Even if Member Wilcox's mere presence means some loss of control, that loss can be mended. The Supreme Court has made clear in case after case that the default constitutional remedy here (assuming the removal were later to be deemed proper) is for challengers to object to any decisions involving Member Wilcox and obtain relief that vacates the decisions. *See, e.g.*, *Collins v. Yellen*, 594 U.S. 220 (2021); *Lucia v. Securities & Exch. Comm'n*, 585 U.S. 237 (2018); *Ryder v. United States*, 515 U.S. 177 (1995).

The solution is not for the President to ignore almost a century of precedent to render the Board ineffective while the appeal remains pending. This Court must act with the presumption that the Board is constitutional, and that presumption is strengthened by the Supreme Court's decision in *Humphrey's Executor*, which is binding on this Court. This Court should accordingly deny the government's motion for a stay pending appeal.

## ARGUMENT

### A. The Fair and Impartial Performance of the Board's Adjudicatory Functions Depends on Removal Protections

**1.** Congress established the National Labor Relations Board in 1935 amid decades of strife between management and labor. *See* National Labor Relations Act, Pub. L. No. 74-198, 49 Stat. 449 (1935). The Board implements Congress's "over-

riding policy" of securing "'industrial peace.'" *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 38 (1987) (quoting *Brooks v. NLRB*, 348 U.S. 96, 103 (1954)). The Supreme Court has, in turn, upheld the Board's powers ever since its inception. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937).

The Board acts as an arbiter of labor disputes. The Board safeguards the ability of employees to collectively bargain through their union with their employers, and its role is thus not to take an ideological or political side. *See* 29 U.S.C. § 157. The fundamental theory behind the Board is that an "*equality* of bargaining power between employers and employees" advances the free flow of commerce and the Nation's economy. *Id.* § 151 (emphasis added). In doing so, the Board also protects workers' ability to choose freely whether or not they want union representation, "protecting the exercise by workers of full freedom of association, self-organization, and designation of the representatives of their own choosing." *Id.*

The Board's role is undergirded by a bifurcated statutory structure that separates prosecutorial roles and adjudicative roles, and provides broad presidential control over the agency's prosecutor (the General Counsel). *See NLRB v. United Food & Com. Workers Union, Loc. 23, AFL-CIO*, 484 U.S. 112, 117–18 (1987); *NLRB v. Federal Lab. Rels. Auth.*, 613 F.3d 275, 278 (D.C. Cir. 2010). The government barely mentions this bifurcated structure (Mot. at 16), and how the President's prosecutorial control—wielded without *any* statutory removal protections for the General Counsel—is in fact

maintained. The government instead focuses on the statutory removal protections afforded to Board Members, but those protections are critical to the agency's fair and impartial adjudications. *See* 29 U.S.C. § 153(a).

**2.** The Board, on one side of its operations, has a General Counsel who is vested with "quintessentially prosecutorial function[s]," such as setting the agency's enforcement priorities, initiating investigations, and prosecuting complaints in labor disputes. *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022). Since her position is "core to the executive function," *id.* at 444, the General Counsel is treated as a principal officer who is subject to the President's appointment and control, *see* 29 U.S.C. § 153(d); *see also NLRB v. SW Gen., Inc.*, 580 U.S. 288, 315 (2017) (Thomas, J., concurring). Courts have found that the General Counsel is removable by the President at will. *See Exela*, 32 F.4th at 441; *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1106 (9th Cir. 2023).

It is quite significant that the General Counsel's authority is understood to be "subject to the ongoing supervision and control of the elected President." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 224 (2020). The General Counsel is the "final authority" for the agency's prosecutorial functions. 29 U.S.C. § 153(d). The President's control over those functions, moreover, is not mediated by the Board. Instead, the General Counsel acts "independent of the Board's supervision and review" in her principal functions, *United Food*, 484 U.S. at 118, and seemingly

"answers to no officer inferior to the President," *SW Gen.*, 580 U.S. at 316 (Thomas, J., concurring).

Far from a middling form of presidential control, the President's removal authority over the General Counsel empowers him to directly "shape [the Board's] leadership and thereby influence its activities." *Seila Law*, 591 U.S. at 225. Those activities in effect set the enforcement direction and agenda for the agency. The General Counsel is principally responsible for investigating and prosecuting claims of unfair labor practices before the Board. *See* 29 U.S.C. §§ 153(d), 158, 160. The General Counsel thus manages regional offices that examine charges made by private parties that an employer or union has engaged in an unfair labor practice and issues administrative complaints against the charged parties. *See Starbucks Corp. v. McKinney*, 602 U.S. 339, 342–43 (2024) (citing 29 C.F.R. §§ 101.4, 101.8).

**3.** The Board itself, on the other hand, is principally an adjudicatory body that takes action based on what cases the General Counsel (with the supervision of the President) decides to pursue. That is, the Board primarily adjudicates administrative complaints of unfair labor practices. *See* 29 U.S.C. § 160(a).[2] But "the Board may adjudicate only upon the filing of a 'complaint'; and Congress has delegated to the Office of General Counsel on 'behalf of the Board' the unreviewable authority to

---

[2] The Board also has "the authority from time to time to" issue "rules and regulations as may be necessary to carry out" its statutory powers. 29 U.S.C. § 156.

determine whether a complaint shall be filed." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138 (1975). It is thus the General Counsel, who is appointed by and serves "at the President's pleasure," who largely sets the agenda for the Board. *Collins v. Yellen*, 594 U.S. 220, 248 (2021).

What Board Members instead engage in is a series of adjudicative functions, for which constitutional due process requires independence and neutrality. Congress has provided that the five Members of the Board serve staggered terms of five years—longer than a single presidential administration. *See* 29 U.S.C. § 153(a) The Board's deliberative process benefits from a variety of perspectives, and the Board has thus, by tradition and practice, maintained a bipartisan balance. Indeed, defendant President Trump has himself acknowledged the importance of that feature in the past, nominating both a Republican (defendant Chairman Marvin Kaplan) and a Democrat (*amicus* former Chairman McFerran) to preserve the Board's bipartisan balance. *See President Donald J. Trump Announces Intent to Nominate and Appoint Individuals to Key Administration Posts* (Mar. 20, 2020), https://trumpwhitehouse.archives.gov/presidential-actions/president-donald-j-trump-announces-intent-nominate-appoint-individuals-key-administration-posts-32/.

To advance Congress's adjudicative vision, Board Members may therefore be removed by the President only "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). That protection,

though significant, does not mean that Board Members are free of any and all presidential control. Presidents will invariably be able to appoint multiple new Members of the Board, given the term lengths, and to remove Members in appropriate circumstances.

It is easy to see why Congress put in place for-cause removal protections as to Board Members. Once the General Counsel issues a complaint, Administrative Law Judges with authority delegated by the Board conduct adjudicatory proceedings and then issue proposed reports and recommended orders to the Board for its adoption. 29 U.S.C. § 160(b)–(c); *see* 29 C.F.R. §§ 101.10–.11. When parties do not appeal by filing exceptions to the Administrative Law Judge's determination, the recommended order "become[s] the order of the Board." 29 U.S.C. § 160(c); *see* 29 C.F.R. §§ 102.12(b), 102.48(a). But when parties do appeal and file exceptions, the Board will engage in further adjudicatory functions—it will assess the report and recommendation, take further testimony if necessary, and issue a decision. 29 U.S.C. § 160(c); *see* 29 C.F.R. § 101.12(a).

Other adjudicatory functions of the Board also plainly require independence. For instance, in addition to resolving complaints of unfair labor practices, the Board is responsible for the neutral administration of union elections. The Board thus oversees the election process (through powers that are delegated to the agency's Regional

Directors), and reviews and adjudicates challenges to the conduct of union-representation elections. 29 U.S.C. § 159.

The Board thus acts "rather like a common-law court," hearing complaints of unfair labor practices and other disputes and resolving them based on factfinding. *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 393 (1998) (Breyer, J., concurring); *accord* Fred B. Jacob & Anne Marie Lofaso, *Beyond* Loper Bright*: Iterative Construction at the National Labor Relations Board*, 77 U.C.L.J. (forthcoming 2025). And once Board Members issue their decisions in the matters before them—as with other court systems—those same decisions become precedent for the agency that controls future cases, until and unless such precedent is specifically overturned. *See, e.g.*, *Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 786 (1996). That steady accumulation of precedent works to produce the "stability" that Congress envisioned. *Fall River*, 482 U.S. at 38 (citation omitted).

**4.** While Congress vested the General Counsel (under the President's control) with the responsibility to set the Board's enforcement direction and agenda, it is of paramount importance that actual adjudications are not subject to political winds. The independence of Board Members is crucial for ensuring that parties appearing before the Board receive a fair hearing and have complaints resolved by impartial arbiters. It is anathema to the "scheme of government" to have these labor disputes

resolved at the whims of the President. *Cf. Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 613 (1952) (Frankfurter, J., concurring).

Were Board decisions subject to the predilections of an elected President, it is difficult to see how the agency could ever afford parties the due process needed for proper adjudications. The President is "expected to reflect and advance both policy views and partisan instincts." Memorandum from Theodore B. Olson, Ass't Att'y Gen., Off. of Legal Counsel, U.S. Dep't of Justice, to Att'y Gen. 3 (Feb. 10, 1982), https://knightcolumbia.org/documents/jwhwzdt11o. Indeed, recent actions reflect how the President's authority can be wielded for political purposes, even in the context of an independent agency. *See* Exec. Order 14,215, *Ensuring Accountability for All Agencies*, 90 Fed. Reg. 10,447 (Feb. 18, 2025).

By contrast, the Board is designed to be an impartial tribunal, and political control by the President would undermine the core of fair and impartial Board adjudications. The Supreme Court has repeatedly recognized that "due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). "It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). Fair and impartial adjudications of disputes bar "partisan" decisionmakers. *Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972).

These principles apply with equal force to administrative agencies that perform adjudicatory functions. *See Withrow v. Larkin*, 421 U.S. 35, 46–47 (1975); *Trans World Airlines, Inc. v. Civil Aeronautics Bd.*, 254 F.2d 90, 91 (D.C. Cir. 1958). "This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process." *Marshall v. Jericho, Inc.*, 446 U.S. 238, 242 (1980) (citing *Carey v. Piphus*, 435 U.S. 247, 259–62, 266–67 (1978)). Board Members, who perform adjudicatory functions, require the independence to adhere to these "rigid requirements" of fair and impartial decisionmaking. *Id*. at 248. Indeed, adjudicative agencies like the Board have, with the support of the Supreme Court and federal courts of appeals, often vacated decisions where adjudicators were found to have been influenced or potentially influenced by either personal interests, *e.g.*, *Cinderella Career & Finishing Schs., Inc. v. Federal Trade Comm'n*, 425 F.2d 583 (D.C. Cir. 1970); *Berkshire Emps. Ass'n of Berkshire Knitting Mills v. NLRB*, 121 F.2d 235 (3d Cir. 1941), or political factors, *e.g.*, *Pillsbury Co. v. Federal Trade Comm'n*, 354 F.2d 952 (5th Cir. 1966).

## B. The Court Should Permit Member Wilcox to Remain in Her Presidentially Appointed Role Pending Appeal

### 1. A stay that renders the Board ineffective pending appeal lacks any grounding in the equities

A stay pending appeal here would be maximally disruptive to the functioning of the Board, and not just to Member Wilcox. Usually, a stay seeks to maintain the status quo, *see Nken v. Holder*, 556 U.S. 418, 429 (2009), but the government's request would in effect shut down the Board by depriving it of a quorum of three Members. The distinct interests of the public and Member Wilcox thus militate against a stay.

The Board would suffer serious harm from the Court again removing Member Wilcox. The absence of a quorum prevents the Board from performing its most basic adjudicatory functions. *See New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 680 (2010). Hundreds of determinations from Administrative Law Judges are pending before the Board, and none of these rulings can be resolved without three Members. *See* NLRB, *Administrative Law Judge Decisions* (visited Mar. 11, 2025), https://www.nlrb.gov/cases-decisions/decisions/administrative-law-judge-decisions.

The Board's inability to issue decisions not only harms the charging parties in these cases, whose lives and livelihoods have been affected by unfair labor practices, but it also inflicts harms upon the businesses whose cases are pending. *See New Process Steel*, 560 U.S. at 688 (noting "costs that delay imposes on the litigants"). For example, if an Administrative Law Judge has found that an employer fired a worker unlawfully,

and the employer wants to challenge that determination, that challenge will remain pending as long as the Board is unable to act. If the Board eventually regains a quorum and upholds the Administrative Law Judge's determination, the employer will be subject to a backpay order that encompasses the entire period when the Board was without a quorum, potentially creating significantly higher financial costs to the employer. *See NLRB v. J.H. Rutter-Rex Mfg. Co.*, 396 U.S. 258 (1969).

During the month Member Wilcox was removed from her position, the Board was also crippled in its ability to perform even routine actions. Though unappealed and thus uncontested determinations of Administrative Law Judges usually "become the order of the Board," automatically by operation of law, 29 U.S.C. § 160(c), the Board ceased performing even the ministerial act of adopting those determinations in Member Wilcox's absence, *see* Robert Iafolla, *Labor Board Back in Business After Fired Member's Reinstatement*, Bloomberg Law (Mar. 8, 2025), https://www.bloomberglaw.com/bloomberglawnews/daily-labor-report/X3B0E8FS000000. With the Board's quorum restored since the district court's decision, the Board returned to that task and has already issued four of these unpublished "auto-adopt" decisions, providing finality to the parties involved in these cases without the direct involvement of Member Wilcox in the adjudication. *Id.*

While Board regulations provide for some delegation of functions to other agency officials in the absence of a quorum, the effectiveness of this delegation in

providing for continuity of agency operations has been compromised by legal challenges due to Member Wilcox's removal. For example, the regulations provide that, in the absence of a Board quorum, Regional Directors continue to be empowered to conduct union elections and certify union-election results. *See* 29 C.F.R. § 102.182. But in recent weeks, employers have challenged the certifications, arguing that the Regional Directors lack the statutory authority to certify the results of an election when the Board lacks a quorum. *See, e.g.*, Robert Iafolla, *Whole Foods Bid to Repel Union Swipes at Hobbled Labor Board*, BLOOMBERG LAW (Feb. 11, 2025), https://news.bloomb erglaw.com/daily-labor-report/whole-foods-bid-to-repel-union-swipes-at-hobbled-labor-board. While these challenges may be of dubious legal merit, there is no one to adjudicate them in the absence of a functioning Board, and the election process is effectively halted. A stay would risk further undermining the Board's performance of this critical statutory function, denying workers the benefits of the representation they have duly selected and defeating Congress's stated policy of avoiding "industrial strife and unrest." 29 U.S.C. § 151.

### 2. The government misapprehends the harms to the President's powers from reinstating Member Wilcox

On the other side of the ledger, the government misapprehends (Mot. at 22–23) the supposed harms to the President's power from keeping Member Wilcox in her role. Not only does the President retain significant control over the priorities of

the Board, but also the Supreme Court has recognized that any harm to that power can be undone.

**a.** It is difficult to see, in any practical sense, how the President's powers are hindered by Member Wilcox's presence. As mentioned (*supra* at 5–9), the Board's prosecutorial functions are channeled through the General Counsel, who sets the agency's enforcement direction and agenda and who the President controls through his removal power. *See Exela*, 32 F.4th at 441. The President has already exercised his power to remove the prior General Counsel (*see* Compl., Ex.. A, ECF No. 1-1) and then to appoint an Acting General Counsel of his choosing (NLRB, *President Trump Appoints William B. Cowen*, *supra*). The President has also designated a new Board Chairman (Mot. at 6) and could opt at any time to nominate people of his choosing for the two Board seats that are currently vacant, which would give the President a majority of three Board Members (including defendant Chairman Kaplan) who were appointed by him.

Even if there were a potential harm to having a single Member present who was not of the President's liking, that harm is not a "certain and great" threat to the President's ability to carry out his agenda. *Wisconsin Gas Co. v. Federal Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985). The very nature of multimember boards established in response to *Humphrey's Executor* is that the agency structure reduces any harm to the President's prerogatives. The government has not identified any concrete

way that Member Wilcox could act unilaterally to thwart the President's agenda, in light of the President's significant control. *See Seila Law*, 591 U.S. at 216.

The government contends (Mot. at 4, 9, 22) that the President is still inhibited from wielding "all of" the office's executive power. But this Court does not deal in abstractions when it comes to assertions of harm. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 298 (D.C. Cir. 2006). Instead, the Court must be "careful to assess the burdens imposed on the President," rather than base its decision on some incorporeal wound to the presidency. *Trump v. Mazars USA, LLP*, 591 U.S. 848, 871 (2020). The government has identified no such burdens on the President's agenda.

**b.** Any harm to the President, moreover, is far from irreparable. The Board principally engages in adjudications of unfair labor practices and other labor disputes, and Member Wilcox's actions in those adjudications can be remedied if it turns out her removal protections were unconstitutional.

This is because the Supreme Court has in case after case affirmed that adjudicative decisions by unconstitutionally structured officers can be undone after the fact. That is, if Member Wilcox should have been removed and instead issued a decision with the Board, then a party challenging that decision may obtain vacatur of that decision and a new administrative hearing as a constitutional remedy. *See, e.g., Lucia v. Securities & Exch. Comm'n*, 585 U.S. 237, 251 (2018); *Ryder v. United States*, 515 U.S. 177, 188–89 (1995); *see also Seila Law*, 591 U.S. at 232.

The Supreme Court's decision in *Collins v. Yellen* is instructive. 594 U.S. 220, 260 (2021). The Court pointed out that if "the President had attempted to remove a [principal officer] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal," then a challenger to that officer's decision would be entitled to have that decision "completely undone." *Id.* at 259–60. Yet the fact that any given action of Member Wilcox can be later undone, albeit with some "time and energy" expended, altogether precludes a stay. *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). That is because, if there is any harm at all to the President, that harm is temporary.

**c.** Critically, having Board decisions potentially revisited if Member Wilcox remains in place but her removal is upheld is far superior to the government's alternative of removing her now. It merits emphasis that serious disruption would occur if the Board were to obtain a quorum and adjudicate cases in her absence, and if she were later found to have been improperly removed. Any Board Member ordinarily has the opportunity to participate in any case pending before the Board, *see* NLRB, *Guide to Board Procedures* 12 (July 2020), and the deliberative process at an agency like the Board is such that every Member is potentially influenced by another Member's participation, *see ExxonMobil Rsch. & Eng'g Co. & Indep. Lab'y Emps. Union, Inc.*, 371 NLRB No. 128, slip op. at 3 n.17 (2022). Because of that reality, any case that is adjudicated during the pendency of this appeal would be impacted by

Member Wilcox's absence and thus subject to potential readjudication once she is properly returned to office.

At least with Member Wilcox staying in office during the pendency of this litigation, the Board could safely—and without the risk of future disruption—engage in its ministerial functions described above (such as auto-adoption of unchallenged Administrative Law Judge determinations and Regional Director certifications of election results) in which Member Wilcox would have no direct role. Allowing these functions to continue would provide finality to parties that are already satisfied with the outcome of their cases (in the case of auto-adopts) or allow proceedings to continue as normal until the point where the Board would ordinarily become involved (in the case of challenges to the Regional Director's election-certification authority). And the Board orders in that set of cases where nothing is contested would likely be preserved even if Member Wilcox is removed later. No challenger would have a right to a constitutional remedy of vacatur as they would be unable to show that Member Wilcox's presence "altered [the Board's] behavior." *Collins*, 594 U.S. at 260.

Rather than prevent the Board from doing its work on an ongoing basis, this Court should permit Member Wilcox to remain on the Board pending appeal. Any actual harm that arises from Member Wilcox exercising her adjudicatory responsibilities can properly be undone if the government prevails. But neither the Board nor Member Wilcox nor the public that is relying on the Board to perform its statu-

tory duties should suffer from the government's attempt here to overrule *Humphrey's Executor*, which has been on the books for almost a century.

## CONCLUSION

For the foregoing reasons, this Court should deny the government's emergency motion for a stay pending appeal.

Dated:      New York, NY
              March 11, 2025

                                      Respectfully submitted,

                                      */s/ Dennis Fan*_____
                                      Dennis Fan, *Director*
                                      BENNETT M. LUNN, *Student*
                                      MELANIE MIGNUCCI, *Student*
                                      ALICE PARK, *Student*
                                      APPELLATE LITIGATION CLINIC,
                                        COLUMBIA LAW SCHOOL
                                      MORNINGSIDE HEIGHTS
                                      LEGAL SERVICES, INC.
                                      435 West 116th St.
                                      New York, NY 10027
                                      (212) 854-4291
                                      dfan@columbialawclinics.org

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), this document complies with the type-volume limit of Rule 32(a)(7)(B) because, excluding the parts exempted by Rule 32(f) and D.C. Circuit Rule 32(e)(1), it contains 6,018 words. This document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Baskerville, 14-point font.

Dated:    March 11, 2025                  /s/ *Dennis Fan*
                                          Dennis Fan
                                          Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the Court's CM/ECF system on March 11, 2025, which will send notice of such filing to all counsel who are CM/ECF registered users.

Dated:      March 11, 2025                     /s/ *Dennis Fan*
                                                Dennis Fan
                                                Counsel for *Amici Curiae*