ORAL ARGUMENT NOT YET SCHEDULED

**Case No. 25-5057**

═══════════════════════════════

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

─────────────

Gwynne Wilcox,

*Plaintiff-Appellee,*

*v.*

Donald Trump, in his official capacity as President of the United States, et al.,

*Defendants-Appellants.*

─────────────

**On appeal from the United States District Court for the District of Columbia, No. 1:25-cv-00334-BAH**

─────────────

**AMICUS BRIEF OF ARIANA CORTES AND LOGAN KARAM IN SUPPORT OF A STAY PENDING APPEAL AND IN SUPPORT OF APPELLANTS**

─────────────

Aaron Solem
Glenn M. Taubman
c/o National Right to Work Legal
  Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
abs@nrtw.org
gmt@nrtw.org

March 10, 2025

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**Parties and Amici:** At the time of this filing, all parties, intervenors, and amici appearing before the District Court and this Court are listed in Appellants' emergency stay motion, except for *amici curie* Ariana Cortes and Logan Karam.

**Related Cases:** *Cortes v. NLRB*, Nos. 24-5152 and 24-5166 (D.C. Cir.) is a related case within the meaning of Circuit Rule 28 (a)(1)(C) as it also involves a challenge to the constitutionality of Section 3(a) of the NLRA. 29 U.S.C. § 153(a).

# TABLE OF CONTENTS

Table of Contents ........................................................... i

Table of Authorities ....................................................... iii

Glossary of Abbreviations .................................................. v

Statement of Interest and Summary of Argument ............... 1

Argument ..................................................................... 2

  I.  *Humphrey's Executor* does not apply to the NLRB because
     it lacks expertise, is not balanced along partisan lines,
     and is neither a "quasi-judicial" or "quasi-legislative" agency ........ 2

    A.  The Board is not an expert agency. ........................................... 3

    B.  The Board is not balanced along partisan lines. ...................... 8

    C.  The Board is neither quasi-legislative nor quasi-judicial
       as described by *Humphrey's Executor* ....................................10

  II.  A stay is necessary because Ms. Wilcox's return to the
      Board will cause chaos ..................................................................12

Conclusion .......................................................................14

i

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Amazon.com Services LLC,*
373 NLRB No. 136 (Nov. 14, 2024) ...................................................... 7

*Babcock & Wilcox Co.,*
77 NLRB 577 (1948) ................................................................................. 7

*Boeing Co.,*
365 NLRB 1494 (2017) ............................................................................. 6

*Cemex Construction Materials Pacific, LLC,*
372 NLRB No. 130 (Aug. 25, 2023) ...................................................... 7

*Chamber of Commerce v. NLRB,*
723 F. Supp. 3d 498 (E.D. Tex. Mar. 18, 2024) ................................... 6

*\*Collins v. Yellen,*
594 U.S. 220 (2021) ...................................................................... 10, 12

*Free Enterprise Fund v. PCAOB,*
561 U.S. 477 (2010) ............................................................................... 16

*H.K. Porter Co., v. NLRB,*
397 U.S. 99 (1970) ................................................................................... 4

*Hosp. Menonita de Guayama, Inc. v. NLRB,*
94 F.4th 1 (D.C. Cir. 2024) .................................................................... 7

*Humphrey's Executor v. United States,*
295 U.S. 602 (1935) ................................................................ 2, 3, 8, 10

*Lutheran Heritage Village-Livonia,*
343 NLRB 646 (2004) .............................................................................. 6

*McLaren Macomb,*
372 NLRB No. 58 (Feb. 21, 2023) ......................................................... 6

*\*Seila Law v. CFPB,*
591 U.S. 197 (2020) ........................................................................... 2, 11

*Stericycle, Inc.,*
372 NLRB No. 113 (Aug. 2, 2023) ......................................................... 6

*Thryv, Inc.,*
372 NLRB No. 22 (Dec. 13, 2022) ......................................................... 6

*Authorities upon which we chiefly rely are marked with asterisks

## TABLE OF AUTHORITIES (CONT'D)

*UC Health v. NLRB,*
  803 F.3d 669 (D.C. Cir. 2015)...............................................13

*Valley Hosp. Med. Ctr., Inc. v. NLRB,*
  100 F.4th 994 (9th Cir. 2024) ............................................ 4

**Statutes**
15 U.S.C. § 47................................................................11
29 U.S.C. § 153(a) ......................................................... 1
29 U.S.C. § 154(a) ......................................................... 3
29 U.S.C. § 158............................................................. 4
29 U.S.C. § 158(d) ......................................................... 3
29 U.S.C. § 159............................................................. 4
Pub. L. 76-812, 54 Stat. 1037 (1940) ...................................... 3

**Other Authorities**
Amy Semet, Political Decision-Making at the National Labor
  Relations Board: An Empirical Examination of the Board's
  Unfair Labor Practice Decisions through the Clinton and Bush II
  Years,
  37 Berkeley J. Emp. & Lab. L. 223 (2016) ....................................4, 8, 9

Powers & Duties of the Fed. Trade Comm'n in the
  Conduct of Investigation,
  34 Op. Att'y Gen. 553 (1925) ...............................................12

William B. Gould IV, Politics and the Effect on the
  National Labor Relations Board's Adjudicative and
  Rulemaking Process,
  64 Emory L.J. 1501 (2015) ................................................ 7

**Regulations**
Joint Employer Status Under the National Labor Relations Act,
  85 Fed. Reg. 11184 (Feb. 26, 2020) ...................................... 5

Representation—Case Procedures,
  79 Fed. Reg. 74308 (Dec. 15, 2014) ...................................... 5

## TABLE OF AUTHORITIES (CONT'D)

Representation—Case Procedures: Election Bars; Proof of
  Majority Support in Construction Industry
  Collective-Bargaining Relationships,
  89 Fed. Reg. 62952 (Aug. 1, 2024)......................................................5, 6

Representation—Case Procedures: Election Bars; Proof of
  Majority Support in Construction-Industry
  Collective-Bargaining Relationships,
  85 Fed. Reg. 18366 (April 1, 2020)...................................................... 5

Standard for Determining Joint Employer Status,
  88 Fed. Reg. 73946 (Oct. 27, 2023)...................................................... 5

# GLOSSARY OF ABBREVIATIONS

Administrative Law Judge                        (ALJ)

Federal Trade Commission                        (FTC)

National Labor Relations Act                    (NLRA or Act)

National Labor Relations Board                  (NLRB or Board)

National Labor Relations Board Member           (Board Member)

v

**STATEMENT OF INTEREST AND SUMMARY OF ARGUMENT[1]**

Ariana Cortes and Logan Karam are Starbucks baristas at separate locations around Buffalo, New York. They currently have election appeals pending before the NLRB. They also filed a federal lawsuit challenging the NLRA's restrictions on removing Board Members. *Cortes v. NLRB*, Case No. 23-cv-2954-JEB (D.D.C. filed Oct. 3, 2023). They seek a declaration that NLRA Section 3(a), 29 U.S.C. § 153(a), which prohibits the President from removing Board Members except for neglect of duty or malfeasance in office, violates Article II of the U.S. Constitution. The District Court dismissed their case. Cortes and Karam appealed that decision to this Court. *See Cortes v. NLRB*, Nos. 24-5152 and 24-5166 (D.C. Cir.).

Cortes and Karam have a vital interest in the outcome of this case, and not only because it concerns the constitutionality of NLRA Section 3(a). Cortes and Karam do not want an individual the President properly

---

[1] No counsel for a party authored this brief in whole or in part, no party or counsel for a party contributed money that was intended to fund preparing or submitting this brief, and no person other than amici or their counsel contributed money that was intended to fund the preparation or submission of this brief. All parties have consented to the filing of this amicus brief.

removed from the Board because of her unsound rulings—Gwynne Wilcox—to decide their pending NLRB cases.

Cortes and Karam will not rehash all the arguments for why NLRA Section 3(a) is unconstitutional, but will instead focus on why the NLRB is distinguishable from the 1935 Federal Trade Commission at issue in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). They will also explain why temporarily reinstating Ms. Wilcox to the Board will cause more problems that it will solve.

## ARGUMENT

### I. *Humphrey's Executor* does not apply to the NLRB because it lacks expertise, is not balanced along partisan lines, and is neither a "quasi-judicial" or "quasi-legislative" agency.

*Humphrey's Executor* "permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law v. CFPB*, 591 U.S. 197, 216 (2020). Other than its multimember structure, the NLRB fails every part of this test because it is: (1) not an "expert" agency; (2) not balanced along partisan lines; and (3) not "quasi-legislative" or "quasi-judicial" as meant by *Humphrey's Executor*.

2

**A. The Board is not an expert agency.**

When upholding restrictions for removing FTC members, the *Humphrey's* Court noted that its members exercise technical expertise. 295 U.S. at 624 The Court explained that the "exacting and difficult character" of the FTC's mission required "expertness in dealing with these special questions concerning industry." *Id.* This observation was well founded because the FTC engages in economic analysis that informs both its enforcement decisions and lawmakers.[2]

The same is not true of Board Members. In 1940, Congress banned the NLRB from employing any person for "economic analysis." See Pub. L. 76-812, 54 Stat. 1037 (1940). And the 1947 Taft-Hartley Amendments codified that ban in the NLRA. *See* 29 U.S.C. § 154(a).

Congress also banned the Board from requiring employers or unions to agree to any specific terms or conditions of employment in collective bargaining. *See* 29 U.S.C. § 158(d); *H.K. Porter Co., v. NLRB*, 397 U.S. 99, 105–06 (1970). The most the Board can do is require the parties to bargain in good faith. *Id.* The Board is not a technocratic economic-

---

[2] *See* FTC, Bureau of Economics, https://www.ftc.gov/about-ftc/bureaus-offices/bureau-economics.

planning agency or a government human-relations manager. It does not set or even recommend wages, benefits, or other employment conditions, much less have any expertise in such matters.

Rather, the Board enforces the NLRA, which mainly involves deciding unfair labor practice allegations, conducting elections, and issuing regulations to implement the Act. *See* 29 U.S.C. §§ 158, 159. Not surprisingly, Board Members are seldom (if ever) experts in science, economics, or some other technical matter. Rather, they are almost always labor lawyers who make decisions based on their interpretations of the NLRA and their preferred policy outcomes.

Because the Board's decisions reflect the Members' own view of policy and statutory interpretation, it is viewed as an agency that "veers violently left and right, a windsock in political gusts." *Valley Hosp. Med. Ctr., Inc. v. NLRB*, 100 F.4th 994, 1004 (9th Cir. 2024) (O'Scannlain, concurring). *See also* Amy Semet, *Political Decision-Making at the National Labor Relations Board: An Empirical Examination of the Board's Unfair Labor Practice Decisions through the Clinton and Bush II Years*, 37 Berkeley J. Emp. & Lab. L. 223, 226 (2016).

Consider the Board's so-called "blocking charge" policy. For years, the Board adhered to a policy of refusing to conduct decertification elections while an unfair labor practice charge was pending. In 2014, the Board issued a rule finally codifying this policy. *Representation—Case Procedures*, 79 Fed. Reg. 74308 (Dec. 15, 2014). But in 2020, the Board largely eliminated it. *Representation—Case Procedures: Election Bars; Proof of Majority Support in Construction-Industry Collective-Bargaining Relationships*, 85 Fed. Reg. 18366 (April 1, 2020). Then in 2024, the Board reinstated the blocking charge policy. *Representation—Case Procedures: Election Bars; Proof of Majority Support in Construction Industry Collective-Bargaining Relationships*, 89 Fed. Reg. 62952 (Aug. 1, 2024). No one should act surprised when the next Board again modifies the policy.[3]

---

[3] This example refutes the District Court's claim that the "NLRB hardly engages in rulemaking (other than to establish its own procedures)" and uses adjudication for "setting or precedential guidance." ECF Doc. 35 at 16–17. While the District Court may be correct in describing the NLRB of yore, in recent years the NLRB has issued major rules governing substantive issues affecting millions of Americans. This includes promulgating conflicting rules establishing "joint employer" standards. *Joint Employer Status Under the National Labor Relations Act*, 85 Fed. Reg. 11184 (Feb. 26, 2020); *Standard for Determining Joint Employer Status*, 88 Fed. Reg. 73946 (Oct. 27, 2023). And successive Boards issued

This is hardly the only area of extreme policy oscillation at the Board. The Board has flip-flopped its "joint employer" standard four times in ten years, *see Chamber of Commerce v. NLRB*, 723 F. Supp. 3d 498, 506–510 (E.D. Tex. Mar. 18, 2024) and modified its rules governing employee handbooks three times in twenty years. *Stericycle, Inc.*, 372 NLRB No. 113 (Aug. 2, 2023); *Boeing Co.*, 365 NLRB 1494 (2017); *Lutheran Heritage Village-Livonia*, 343 NLRB 646 (2004). And the Board has radically changed its view of labor laws in other ways over the past two years. *See, e.g., Thryv, Inc.*, 372 NLRB No. 22 (Dec. 13, 2022) (holding Board can award expansive monetary compensation indistinguishable from compensatory damages); *McLaren Macomb*, 372 NLRB No. 58 (Feb. 21, 2023) (non-disparagement and confidentiality provisions in settlement agreements violate the Act); *Cemex Construction Materials Pacific, LLC*, 372 NLRB No. 130 (Aug. 25, 2023) (employer legally required to recognize a union or file for a representation election based solely on a union's recognition demand); *Amazon.com Services LLC*, 373 NLRB No. 136 (Nov. 14, 2024) (overturning *Babcock & Wilcox Co.*, 77 NLRB 577 (1948),

---

the aforementioned rules to modify "blocking charges," the "voluntary recognition bar," and representation elections in the construction industry. *See* 89 Fed. Reg. 62952 (Aug. 1, 2024).

to hold mandatory meetings where an employer expresses its views on unionization violate the Act); *see also Hosp. Menonita de Guayama, Inc. v. NLRB*, 94 F.4th 1, 37 (D.C. Cir. 2024) (Katsas, J., concurring) (noting the Board's five-decade "shifting positions" on the successor bar).

The Board made these and other decisions not by relying on neutral experts, impartial studies, scientific analysis, or cold statistics. Board Members decided these cases based on their interpretation of the NLRA, which is generally informed by their political leanings.

It should be no surprise that the Board operates this way: its Members are picked precisely for their ideological *bona fides*. *See* William B. Gould IV, *Politics and the Effect on the National Labor Relations Board's Adjudicative and Rulemaking Process*, 64 Emory L.J. 1501, 1508–23 (2015). President Biden announced that he would be the "strongest labor president you've ever had"[4] and nominated Ms. Wilcox—a vocal union advocate—to fulfill that promise because of her ideological views, not because she possessed any technical "expertise."

---

[4] Andrew Solender, Biden Vows To Be 'Strongest Labor President You've Ever Had' At Union Event, Forbes.com, bit.ly/3Dy0sCl (Sept, 7, 2020).

The District Court misses the mark when claiming the Board's ostensible "expertise" produces "stability, reliability, and moderation" while avoiding unexpected "whipsaw[s]." ECF Doc. 35 at 2; *id*. at 34 n.23. While that may be true for other agencies, it is not true of the NLRB. The Board is a partisan, policymaking body whose decisions constantly whipsaw between different views of the NLRA. *See* Semet, supra, at 292. This is not the type of expertise imagined by *Humphrey's Executor*.

## B. The Board is not balanced along partisan lines.

In *Humphrey's Executor*, the Supreme Court explained the Federal Trade Commission Act provides: "Not more than three of the commissioners shall be members of the same political party." *Humphrey's Executor*, 295 U.S. at 619–20. The Supreme Court relied on this provision to justify upholding the 1935 FTC's removal restrictions, finding "[t]he commission is to be nonpartisan; and it must, from the very nature of its duties, act with entire impartiality." *Id.* at 624.

The NLRA does not have a similar requirement of non-partisanship or even bi-partisanship. The statute is silent on this issue. Consequently, the President may appoint Board Members regardless of their party affiliation.

The District Court waved away this distinction by claiming the Board is "partisan-balanced based on longstanding norms." ECF Doc. 35 at 8. To the extent such "norms" exist, they are often breached. President Truman appointed a fourth Democrat to the Board in 1950 and President Eisenhower appointed a fourth Republican to the Board in 1955 and 1956. And it is now commonplace for Presidents to not fill purported "minority party" seats on the Board. Democrats possessed a 3-1 majority at the Board from December 2022 to December 2024. During President Trump's first term the Board was 3-1 Republican from August 2018 to December 2019, 3-0 Republican from December 2019 to August 2020, and 3-1 Republican from August 2020 to August 2021 (eight months into President Biden's term). President Obama left a "Republican" seat vacant from August 2015, through the end of his term in January 2017.

The Board's history of policy oscillations based on its makeup further demonstrate it is not, and has never been, an impartial, nonpartisan agency. Semet, supra, at 257 (finding almost a 50% swing in average outcome depending on the partisan makeup of a Board panel).

It matters that the Board lacks the statutorily-mandated "partisan balance" of the 1935 FTC. *Humphrey's Executor*, 295 U.S. at 624. Absent

such mandated balance, a prior President can control or hamstring the policies of the current President by saddling him or her with holdover officials who cannot be controlled or removed for several years. This case illustrates the point. If Ms. Wilcox remained on the Board, the Board majority—which would be composed of Democrats Wilcox and David Prouty—would be pursuing *President Biden's* labor policies. The dead hand of someone who is no longer in office would remain on the tiller of executive policy.

This outcome is intolerable under Article II of the Constitution. The President must be able to remove Board members "who come from a competing political party who is dead set against [the President's] agenda." *Collins v. Yellen*, 594 U.S. 220, 256 (2021) (cleaned up).

## C. The Board is neither quasi-legislative nor quasi-judicial as described by *Humphrey's Executor*.

The District Court claims the NLRB is predominately "quasi-legislative and quasi-judicial" because its "primary responsibility" is "reviewing decisions by ALJs." ECF Doc. 35 at 13. The lower court found the Board's rulemaking and adjudicatory authority "closely resembles the FTC" so it "is squarely at the heart of the rule adopted in *Humphrey's Executor*." *Id.* at 14.

But the Supreme Court rejected this view of *Humphrey's Executor*, explaining that "what matters is the set of powers the Court considered as the basis for its decision, not any latent powers that the agency may have had not alluded to by the Court." *Seila Law*, 591 U.S. at 219 n.4. The *Humphrey's Executor* Court saw the FTC as a limited, circumscribed agency. *Id.* at 215. It believed the FTC was a "quasi-legislative" agency because it made reports to Congress. *Humphrey's Executor*, 295 U.S. at 628. It described the FTC as "quasi-judicial" because district courts could refer antitrust cases to the FTC to sit as a "master in chancery." *Id.*; *see* 15 U.S.C. § 47.

This limited view of the FTC's powers was common at the time. A 1925 Attorney General Opinion stated the main purpose of the FTC "was to enable Congress . . . to obtain full information concerning conditions in industry to aid it in its duty of enacting legislation," such that it was "likened to a Committee of Congress." *Powers & Duties of the FTC in the Conduct of Investigation*, 34 Op. Att'y Gen. 553, 557–58 (1925).

This view of FTC's authorities formed the basis for the Supreme Court's decision in *Humphrey's Executor*. The Court later said as much in *Seila Law*, explaining that *Humphrey's Executor* only reached agencies

that exercise "powers" comparable to those "considered" in *Humphrey's Executor*. 591 U.S. at 216, 219 n.4. Because the Board's powers exceed the "quasi-legislative" and "quasi-judicial" functions considered in *Humphrey's Executor*, its members must be politically accountable to the President.

## II. A stay is necessary because Ms. Wilcox's return to the Board will cause chaos.

A stay is necessary to protect the interests of parties with cases pending at the Board, like Cortes and Karam. If Ms. Wilcox is temporarily reinstated to the Board, all Board decisions that she participates in will be voidable if her removal is later deemed constitutional. *Collins*, 594 U.S. at 259. Litigants harmed by Ms. Wilcox's *ultra vires* decisions will have to seek judicial review of those decisions, which will flood the courts and require the Board to redo its work.

On the other side of the ledger, the District Court overstates the impact on the NLRB caused by the lack of a quorum. It baldly claims unfair labor practices will "go unchallenged" and "union elections go unrecognized." ECF Doc. 35, at 34. Both claims are wrong.

*First*, unfair labor practices will not go unchallenged because the NLRB's General Counsel—an independent office—is still reviewing

unfair labor practice claims, issuing complaints, and prosecuting cases before administrative law judges. *See* Information for the Public on NLRB Office of the General Counsel Authority for Continuing Operations, Representation Case Processing, and Court Litigation, NLRB.gov, https://www.nlrb.gov/news-outreach/news-story/information-for-the-public-on-nlrb-office-of-the-general-counsel-authority (Feb. 1, 2025). *Second*, NLRB Regional Directors are still issuing election certifications as Board regulations delegate this authority to the Board's Regional Directors. 29 CFR 102.182. This Court has held this delegation survives the lack of a valid quorum. *UC Health v. NLRB*, 803 F.3d 669, 675 (D.C. Cir. 2015).

Without Ms. Wilcox, it is business as usual at the NLRB, except the Board cannot issue final decisions in unfair labor cases or decide appeals in election cases. But, this is a good thing given that any decision in which Ms. Wilcox participates while this case is pending is suspect.

# CONCLUSION

A stay should be granted.

By: /s/ Aaron B. Solem
Aaron B. Solem
Glenn M. Taubman
c/o National Right to Work Legal
 Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
abs@nrtw.org
gmt@nrtw.org

Counsel for Amici Cortes and Karam

Date: March 10, 2025

14

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system.

I further certify that the foregoing document was served on all parties or their counsel of record through the appellate CM/ECF system, as they are registered users.

By: /s/ Aaron Solem
Aaron Solem
c/o National Right to Work Legal
  Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
abs@nrtw.org

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 2,576 words in accordance with

the MS Word count and is typed in 14-point Century Schoolbook typeface.

By: /s/ Aaron Solem
Aaron Solem
c/o National Right to Work Legal
  Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
abs@nrtw.org

Date: March 10, 2025