**[ORAL ARGUMENT SCHEDULED MARCH 18, 2025]**

No. 25-5057

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

GWYNNE A. WILCOX,
    Plaintiff-Appellee,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,
    Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY
PENDING APPEAL**

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
DANIEL AGUILAR
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ......................................................................................................... 2

I.     The Government Is Likely To Prevail On The Merits .......................... 2

    A.     The President may remove NLRB Members without restriction ................................................................................ 2

    B.     The district court lacked authority to issue its reinstatement order ................................................................ 9

II.     The Remaining Factors Support A Stay .............................................. 11

CONCLUSION .................................................................................................... 12

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

Wilcox's contention that the President lacks inherent constitutional authority to remove principal officers from the National Labor Relations Board depends on a misreading of *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), one that has been squarely repudiated by the Supreme Court. Her filing in this Court largely rehashes arguments rejected in *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), which definitively establishes that the President's power to remove executive officers is the default rule subject to limited exceptions not applicable here.

Wilcox also insists that the district court was empowered to restore her to office. But as this Court recently explained, requiring the President to "recognize and work with an agency head whom he has already removed," "impinges on the conclusive and preclusive power through which the President controls the Executive Branch that he is responsible for supervising." Opinion and Order at 6, *Dellinger v. Bessent*, No. 25-5052 (Mar. 10, 2025) (quotation marks omitted). Because the district court committed the same error that was recently corrected in *Dellinger*, a stay is equally warranted here.

# ARGUMENT

## I. The Government Is Likely To Prevail On The Merits

### A. The President may remove NLRB Members without restriction

The Supreme Court has repeatedly reaffirmed the "general rule" that "the President possesses 'the authority to remove those who assist him in carrying out his duties.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 215 (2020) (quoting *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 513-14 (2010). The President "is elected by the entire Nation" and is constitutionally "responsible for the actions of the Executive Branch." *Seila Law*, 591 U.S. at 224. The Heads of Executive Departments—not directly accountable to the People—must therefore be directly accountable to the President. Accordingly, "the President's power to remove 'executive officers of the United States whom he has appointed' may not be regulated by Congress or reviewed by the courts." *Trump v. United States*, 603 U.S. 593, 621 (2024) (quoting *Myers v. United States*, 272 U.S. 52, 106, 176 (1926)).

Wilcox turns that analysis on its head. She leans on *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), without grappling with the Supreme Court's more recent cases addressing the same principles. She begins from the premise that the limited *exceptions* to the President's removal power are the general rule and goes on to assert that those

- 2 -

exceptions obviously apply to the NLRB. In *Seila Law*, however, the Court recognized only two limited exceptions to the President's "unrestricted removal power." 591 U.S. at 204. One exception is for "inferior officers with limited duties and no policymaking or administrative authority," *id*. 218, but since Wilcox is a principal officer (an NLRB Member appointed by the President and confirmed by the Senate), this exception does not apply to her.

      Wilcox's argument, then, rests on the exception from *Humphrey's Executor* that "permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Congress, however, chose to endow NLRB with "significant executive power," *id.* at 220, it may use to "prevent any person from engaging in any unfair labor practice * * * affecting commerce," 29 U.S.C. § 160(a). Where the Board concludes that an unfair labor practice has occurred, it "shall issue * * * an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this Act." *Id.* § 160(c). The NLRB also has authority to make "such rules and regulations as may be

- 3 -

necessary to carry out the provisions" of the National Labor Relations Act. *Id.* § 156.

Wilcox insists that the *Humphrey's Executor* exception acknowledged in *Seila Law* must be read more broadly than its plain terms suggest, and that the characterization of the 1935 FTC as exercising "quasi-legislative and quasi-judicial" powers simply "'describe the circumstances'" of when Congress can restrict the President's removal power. Opp. 15 (quoting *Morrison v. Olson* 487 U.S. 654, 690-91 & n.30 (1988)). But *Seila Law* rejected that contention and declined to "ignore the reasoning of *Humphrey's Executor* and instead apply the decision only as part of a reimagined *Humphrey's*-through-*Morrison* framework." *Id.* at 219 n.4. *Humphrey's Executor* means what it said—and only what it said. Namely, removal protections are constitutionally tolerable for a multimember board that "occupies no place in the executive department and * * * exercises no part of the executive power vested by the Constitution in the President." 295 U.S. at 628; *see also Seila Law*, 591 U.S. at 219 n.4.

Wilcox insists that because the NLRB resembles the FTC as it existed at the time of *Humphrey's Executor*, the reasoning of that decision must extend to NLRB. But *Seila Law* forecloses this argument, explaining that "what matters is the set of powers the [*Humphrey's Executor*] Court

considered as the basis for its decision, not any latent powers that the agency may have had not alluded to by the Court." 591 U.S. at 219 n.4. It is thus beside the point that the 1935 FTC likely exercised "'executive' [power], at least to some degree." *Id.* at 216 n.2. Wilcox's argument merely reprises points from the *Seila Law* dissent that failed to persuade the Court's majority. *See id.* at 286 n.10 (Kagan, J., dissenting) (arguing that *Humphrey's Executor* must be read more broadly because the FTC in 1935 was authorized to "'prevent persons' or businesses 'from using unfair methods of competition in commerce,'" "could and did run investigations, bring administrative charges, and conduct adjudications," "always had statutory rulemaking authority," and "could seek its enforcement in federal court").

    Accordingly, the crucial fact is that *Humphrey's Executor* regarded the 1935 FTC as "'an administrative body'" that performed only "'specified duties as a legislative or as a judicial aid.'" *Seila Law*, 591 U.S. at 215 (quoting *Humphrey's Executor*, 295 U.S. at 628). The 1935 FTC "acted as a legislative agency in making investigations and reports to Congress and as an agency of the judiciary in making recommendations to courts as a master in chancery." *Id.* (quotation marks omitted). Thus, *Humphrey's Executor* assumed that the FTC did not exercise "executive power in the

constitutional sense," but rather merely discharged ancillary "executive function[s]" in aid of its "quasi-legislative or quasi-judicial powers." *Id.* at 216 (quotation marks and emphases omitted).

This description is inapplicable to the NLRB, which clearly exercises executive power when it "prevent[s] any person from engaging in any unfair labor practice" and orders concomitant affirmative relief. 29 U.S.C. § 160(a), (c). Likewise, unlike the FTC as discussed in *Humphrey's Executor*, the NLRB is endowed with significant rulemaking authority—to issue "such rules and regulations as may be necessary to carry out the provisions of this [Act]." *Id.* § 156.

Wilcox does not seriously grapple with the NLRB's rulemaking authority, instead noting that the agency "hardly engages in rulemaking." Opp. 13 (quoting Dkt. No. 35 at 16-17). But, as explained in the stay motion (at 15), choosing not to exercise this grant of executive power does not render it nonexistent. Wilcox also downplays the breadth of the NLRB's rulemaking authority (Opp. 13), but the Supreme Court has cautioned that courts should not "weigh the relative importance of the regulatory and enforcement authority of disparate agencies." *Collins v. Yellen*, 594 U.S. 220, 253 (2021).

That the Board also performs adjudicative functions does not place the Board outside of the President's removal authority. "[S]ince the beginning of the Republic," Congress has assigned adjudicatory tasks to Executive Officers, but those adjudications "are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'" *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013). As noted in the government's stay motion (at 15), the Supreme Court has recognized that NLRB may elect to carry out executive functions by choosing between rulemaking or adjudication for the formulation of agency policies. *See NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 294 (1974) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 765-66 (1969)). Choosing to use adjudication as the "vehicle" for the exercise of executive power does not fundamentally alter the regulatory power vested in Board members. In all events, in light of the Board's rulemaking authority and its involvement in authorizing enforcement actions, *see* 29 U.S.C. § 160(j), there is no need for the Court here to address the status of executive tribunals that perform purely adjudicatory functions. *Cf. Wiener v. United States*, 357 U.S. 349 (1958).

Finally, Wilcox claims that granting a stay here would improperly call into doubt the removal restrictions for the Federal Reserve Board of

Governors. Opp. 17. That is incorrect, as Supreme Court Justices and court of appeals Judges have observed. The Federal Reserve is "a unique institution with a unique historical background." *CFPB v. Community Financial Services Association of America*, 601 U.S. 416, 467 n.16 (2024) (Alito, J., dissenting); *accord Consumers' Research v. CPSC*, 98 F.4th 646, 657 (5th Cir. 2024) (Oldham, J., dissenting). The Federal Reserve's predecessors, the First and Second Banks of the United States, were not subject to plenary presidential control, and those historical pedigrees may illuminate the constitutional analysis. *Community Financial*, 601 U.S. at 432-34 (looking to legislative enactments at the Founding to inform constitutional principles).

"Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take care that the Laws be faithfully executed.'" *Seila Law*, 591 U.S. at 203 (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). Wilcox's exercise of that power—unencumbered by the President's determination that she should be removed—"heightens the concern that" the Executive Branch "may slip from the Executive's control, and thus from that of the people." *Free Enterprise*, 561 U.S. at 499.

- 8 -

### B. The district court lacked authority to issue its reinstatement order

The President removed Wilcox from her office on January 27, 2025. Dkt. 35 at 8 (district court opinion). Over a month later, the district court declared that Wilcox "remains a member" of the NLRB until her term expires unless removed for cause, and enjoined the Chair of the NLRB and his subordinates from removing her from office, treating her as removed, "impeding in any way her ability to fulfill her duties as a member of the NLRB," or "denying or obstructing her authority or access to any benefits or resources of her office." Dkt. No. 34 at 2 (district court order).

The real-world effect of that declaratory and injunctive relief is to countermand the President's removal of an Executive principal officer and to reinstate her to office. But the well-settled rule is that "a court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Nor is mandamus appropriate, as that writ "will issue 'only where the duty to be performed is ministerial'" and the right "clear and indisputable." *13th Regional Corp. v. U.S. Department of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980). The President's determination of who should be entrusted with the authorities of a principal executive officer is anything but ministerial, and Wilcox's entitlement to a restriction on the President's authority is neither clear nor indisputable.

- 9 -

Wilcox quibbles at the edges of the relevant arguments. She points to *Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023) and *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996), cases that considered the hypothetical possibility of reinstatement to determine whether there was an Article III case or controversy—but which did not order reinstatement. Those cases do not speak to the heart of the weighty concerns here. The relief that Wilcox sought and the district court granted is a *de facto* "injunction restricting the President's exercise of his 'conclusive and preclusive constitutional authority' to remove officers." Order at 23, *Dellinger v. Bessent*, No. 25-5028 (Katsas, J., dissenting) (quoting *Trump*, 603 U.S. at 608-09). Given that the President's "exclusive power of removal in executive agencies" "disabl[es] the Congress from acting upon the subject," *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637-38 & n.4 (1952) (Jackson, J., concurring), principles of equity could not properly supplant that constitutional structure and permit the Judicial Branch to reinstate an executive officer removed by the President.

That is precisely why the Supreme Court's precedents on contested presidential removals in *Humphrey's Executor* and *Wiener* have concerned "the traditional remedy" of backpay. Order and Op. at 6, *Dellinger v. Bessent*, No. 25-5052 (D.C. Cir. Mar. 10, 2025) (*Dellinger Stay Op.*). The

constitutional analysis as to that remedy is far more placid than a direct separation-of-powers confrontation that results from a court using its equitable authority to reverse the democratically-elected President's exercise of core constitutional powers to remove a principal executive officer. Finally, that the district court wrongly thought mandamus would otherwise be available does not support the issuance of an injunction, and if anything, supports the government's argument that other legal remedies are the appropriate remedy for challenges to removals.

## II. The Remaining Factors Support A Stay

The remaining factors support a stay, and this Court examined materially identical considerations when it stayed a district court order reinstating the Special Counsel. *Dellinger Stay Op.* at 6-8. The Executive Branch will suffer irreparable injury absent a stay because "it is impossible to unwind the days during which a President is directed to recognize and work with a" principal officer "whom he has already removed." *Id*. at 6 (quotation marks and alterations omitted). The "relative importance" of the NLRB's functions "go[] to the extent—and not the character—of the President's injury." *Id*. By contrast, Wilcox "would likely be entitled to backpay if [she] were to prevail on appeal," *id.*, which would address her claim for "wages and benefits," Dkt. 1 at 15. At most, a stay would place

Wilcox "out of office for a short period of time," and that effectuation of the President's removal "does not mean" that her "injury is irreparable and weighs in [her] favor." *Dellinger Stay Op.* 7. And the public interest—at a minimum—"does not weigh in [Wilcox's] favor" when "it is not clear how" the Court can balance her "asserted public interest against the public interest asserted by the rest of the executive branch." *Id.* Because "the first three * * * factors weigh in favor of a stay" and no factors counsel against it, the government has "met its burden." *Id.* at 8.

## CONCLUSION

This Court should stay the district court's order pending appeal and should issue an immediate administrative stay.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
DANIEL AGUILAR
/s/ Laura E. Myron
LAURA E. MYRON
  *Attorneys, Appellate Staff
  Civil Division, Room 7228
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-1754*

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,451 words. This reply also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ Laura E. Myron*
Laura E. Myron