**ORAL ARGUMENT NOT YET SCHEDULED**

**Case No. 25-5057**

---

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**GWYNNE WILCOX,**

*Plaintiff-Appellee*,

v.

**DONALD TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF
THE UNITED STATES,** *et al.*,

*Defendant-Appellants.*

---

On appeal from the United States District Court for the District
of Columbia, No. 1:25-cv-00334-BAH

---

**BRIEF OF AMICUS CURIAE PROFESSOR JED H.
SHUGERMAN IN OPPOSITION TO A STAY PENDING
APPEAL AND IN SUPPORT OF APPELLEE**

---

Richard F. Griffin
Faaris Akremi
**BREDHOFF & KAISER, P.L.L.C.**
805 Fifteenth Street NW, Suite 1000
Washington, DC 20005
Phone: (202) 842-2600
Fax: (202) 842-1888
rgriffin@bredhoff.com
fakremi@bredhoff.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**(A) Parties and Amici**

Except for the following, all parties, intervenors, and amici appearing before the district court and in this Court are listed in Defendants-Appellants' Emergency Motion for a Stay Pending Appeal: Professors John Coates, Jeffrey N. Gordon, Kathryn Judge, and Lev Menand; Ariana Cortes and Logan Karam; the Separation of Powers Clinic; the American Federation of Labor and Congress of Industrial Organizations; Former NLRB Board Members Lauren McFerran, Mark Gaston Pearce, Wilma Liebman, Nancy Schiffer, Sarah Fox, and Charles Cohen; the State of Washington; and the States of Kentucky, Utah, and the Arizona Legislature.

**(B) Rulings Under Review**

March 6, 2025 Order (Judge Beryl A. Howell) – Dkt. 34.

March 6, 2025 Memorandum Opinion (Judge Beryl A. Howell) – Dkt. 35.

**(C) Related Cases**

Counsel for Amicus state that, to the best of their knowledge, this case was not previously before this or any other court, and there are not related cases of which counsel is aware.

# TABLE OF CONTENTS

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ....... i**

**TABLE OF CONTENTS** ................................................................................ ii

**TABLE OF AUTHORITIES** ....................................................................... iii

**INTERESTS OF AMICUS CURIAE** ...................................................... 1

**SUMMARY OF ARGUMENT** .................................................................. 2

**I.   NEW EVIDENCE DEMONSTRATES THAT ARTICLE II DID NOT IMPLY UNCONDITIONAL PRESIDENTIAL REMOVAL.** .................... 3

  A.  The Unitary Executive Theory's Three Pillars Are No Longer Standing ....... 3

   1.  The Executive Vesting Clause Did Not Imply Presidential Removal. ........ 4
   2.  The "Take Care" Clause Did Not Imply Presidential Removal .................. 5
   3.  New Research Shows that "the Decision of 1789" Is a Myth and that the First Congress Repeatedly Rejected Unconditional Presidential Removal Power. ........................................................... 6

  B.  New Research Confirms that the Constitution's Text and Ratification Debates Undercut the Unitary Theory. .......................................... 6

   1.  The Opinion Clause and the *Federalist Papers* Remain Stronger Counterevidence than Anything the Unitary Theorists Have Offered ........ 6
   2.  The Anti-Federalists Were Remarkably Silent on Removal. ...................... 7

**II.  RECENT RESPONSES FROM UNITARY EXECUTIVE THEORISTS CONFIRM THE WEAKNESS OF THE ORIGINALIST CASE.** .............. 8

  A.  *The Executive Power of Removal* Backfired, Exposing the Unitary Theory's Lack of Evidence and Repeated Misuse of Sources. ...................................... 8

  B.  Historians Have Raised Serious Questions About Other Leading Unitary Theorists' Advocacy and Scholarship. ........................................................... 11

**III. RED FLAGS ABOUT THE UNITARY SCHOLARSHIP AND A YELLOW FLAG OF CAUTION AGAINST EXTENDING PRECEDENTS.** ........................................................................... 12

**CONCLUSION** ............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Dellinger v. Bessent*,
No. 25-5025, 2025 WL 561425 (D.C. Cir. Feb. 12, 2025) ...............................13

*Dellinger v. Bessent*,
No. 25-5052, slip op. (D.C. Cir. Mar. 10, 2025) (per curiam) ..........................13

*Free Enterprise Fund v. PCAOB*,
561 U.S. 477 (2010) ........................................................................................2

*Morrison v. Olson*,
487 U.S. 654 (1988) ........................................................................................6

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2023) ............................................................................................7

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) ........................................................................................2

## Constitutional and Statutory Provisions

5 U.S.C. § 1211(b) ...............................................................................................13

U.S. Const. art. II § 1 ............................................................................................4

U.S. Const. art. II, § 2, cl. 1 .................................................................................11

U.S. Const. art. II, § 3 ............................................................................................5

## Scholarly Publications

Aditya Bamzai & Saikrishna Bangalore Prakash, *The Executive
Power of Removal*, 136 Harv. L. Rev. 1756 (2023) ...................................4, 8, 10

Aditya Bamzai and Saikrishna Bangalore Prakash, *How to Think
About the Removal Power*, 110 Va. L. Rev. Online 159 (2024) ..................9, 10

Andrea Scoseria Katz & Noah A. Rosenblum, *Removal Rehashed*,
136 Harv. L. Rev. F. 404 (2023) .........................................................................8

Andrew Kent, Ethan J. Leib, & Jed H. Shugerman, *Faithful Execution and Article II*, 132 Harv. L. Rev. 2111 (2019) ...................................1, 5

Christine Kexel Chabot, *Interring the Unitary Executive*, 98 Notre Dame L. Rev. 129 (2022) ................................................................6, 8

Christine Kexel Chabot, *Is the Federal Reserve Constitutional? An Originalist Argument for Independent Agencies*, 96 Notre Dame L. Rev. 1 (2020) ................................................................................6

Christine Kexel Chabot, *Rejecting the Unitary Executive*, Utah L. Rev. (forthcoming 2025)........................................................................9

Christopher S. Havasy, Joshua C. Macey & Brian Richardson, *Against Political Theory in Constitutional Interpretation*, 76 Vand. L. Rev. 899 (2023)........................................................................................5

Daniel D. Birk, *Interrogating the Historical Basis for a Unitary Executive*, 73 Stan. L. Rev. 175 (2021) ...........................................4, 7

Ilan Wurman, *The Original Presidency: A Conception of Administrative Control*, 16 J. L. Analysis 26 (2024)....................................11, 12

Jane Manners & Lev Menand, *Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1 (2021) ..........................................................4, 7, 12

Jed H. Shugerman, *The Indecisions of 1789: Appendices on the Misuse of Historical Sources in Unitary Executive Theory* (Feb. 27, 2023) (unpublished appendix) ................................................8, 12

Jed H. Shugerman, *The Indecisions of 1789: Inconstant Originalism and Strategic Ambiguity*, 171 Univ. Penn. L. Rev. 753 (2023)..............1, 6, 7, 12

Jed H. Shugerman, *The Misuse of Ratification-Era Sources by Unitary Executive Theorists*, Mich. J. L. Reform (forthcoming 2025)..............2, 9, 11, 12

Jed H. Shugerman, *Movement on Removal: An Emerging Consensus and the First Congress*, 63 Am. J. Legal Hist. 258 (2023) ..............................1, 8

Jed H. Shugerman, *Presidential Removal: The Marbury Problem and the Madison Solutions*, 89 Fordham L. Rev. 2085 (2021) .........................1, 5, 12

iv

Jed H. Shugerman, *Removal of Context: Blackstone, Limited Monarchy, and the Limits of Unitary Originalism*, 33 Yale J. L. & Humanities 125 (2022) ................................................................1, 11

Jed H. Shugerman, *Venality: A Strangely Practical History of Unremovable Offices and Limited Executive Power*, 100 Notre Dame L. Rev. 213 (2024) ...........................................................*passim*

Jed H. Shugerman, *Vesting*, 74 Stan. L. Rev. 1479 (2022) ..............................1, 6, 7

Jonathan Gienapp, *Removal and the Changing Debate over Executive Power at the Founding*, 63 Am. J. Legal Hist. 229 (2023) ..................................8

Jonathan Gienapp, *The Second Creation: Fixing the Constitution* (2018) .................................................................................................7

Joshua C. Macey & Brian M. Richardson, *Checks, Not Balances*, 101 Tex. L. Rev. 89 (2022) ..........................................................................5

Michael McConnell, *The President Who Would Not Be King* (2020) ......................5

Peter M. Shane, *The Originalist Myth of the Unitary Executive*, 19 J. Const. L. 323 (2016) .................................................................6

## Other Authorities

Adam Liptak, *Lonely Scholar with Unusual Ideas Defends Trump, Igniting Legal Storm*, N.Y. Times (Sept. 25, 2017) ............................................2

Brief of Amicus Curiae Professor Ilan Wurman, *SEC v. Jarkesy*, 603 U.S. 109 (2024) (No. 22-859).....................................................11, 12

Brief of Amicus Curiae Professor Jed. H. Shugerman in Support of Petitioner, *SEC v. Jarkesy*, 603 U.S. 109 (2024) (No. 22-859)...............9, 11, 12

Ilan Wurman, *Some Thoughts on My Seila Law Brief*, Notice & Comment: Yale J. Reg. (Dec. 1, 2021)..................................................11

*Jed Shugerman Apologizes to Tillman and Blackman*, Originalism Blog (Sept. 25, 2017) ...............................................................2

## INTERESTS OF AMICUS CURIAE[1]

*Amicus Curiae* Jed Handelsman Shugerman is a Professor of Law at Boston University. He holds a JD and a PhD in History. Shugerman subscribes to the interpretation of the Constitution based on original public meaning (i.e., originalism) but has found many errors and misunderstandings in originalism-in-practice in the unitary executive theory. This brief offers new evidence about the original public meaning of Article II and critiques new claims by unitary theorists. A more comprehensive account of Shugerman's findings and analysis are contained in recent academic articles[2] and are part of a forthcoming book, *A Faithful President*. Shugerman has been fact-checking and raising questions about the use of historical

---

[1] No counsel for any party authored this brief in whole or in part, and no person other than Amicus and his counsel made a monetary contribution intended to fund the preparation or submission of this brief.

[2] *See Venality: A Strangely Practical History of Unremovable Offices and Limited Executive Power*, 100 Notre Dame L. Rev. 213 (2024) [hereinafter *Venality*]; *Movement on Removal: An Emerging Consensus and the First Congress*, 63 Am. J. Legal Hist. 258 (2023) [hereinafter *Movement on Removal*]; *The Indecisions of 1789: Inconstant Originalism and Strategic Ambiguity*, 171 Univ. Penn. L. Rev. 753 (2023) [hereinafter *Indecisions*]; *Vesting*, 74 Stan. L. Rev. 1479 (2022); *Removal of Context: Blackstone, Limited Monarchy, and the Limits of Unitary Originalism*, 33 Yale J. L. & Humanities 125 (2022) [hereinafter *Removal of Context*]; *Presidential Removal: The Marbury Problem and the Madison Solutions*, 89 Fordham L. Rev. 2085 (2021) [hereinafter *Marbury Problem*]; Andrew Kent, Ethan J. Leib, & Jed H. Shugerman, *Faithful Execution and Article II*, 132 Harv. L. Rev. 2111 (2019) [hereinafter *Faithful Execution*].

1

sources in the unitary executive scholarship for at least five years.[3] He acknowledges that every scholar has biases and makes mistakes. Indeed, this Amicus lives in a glass house.[4] But in an Amicus role, serving as a friend to the Court, this brief is a defense of originalism against unitary theorists' ahistorical errors.

## SUMMARY OF ARGUMENT

Judge Howell correctly relied on *Humphrey's Executor* as good law and controlling precedent. Appellants cite *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), and *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), in arguing to the contrary. Those cases' holdings were explicitly narrow, however, leaving the *Humphrey's Executor* rule for independent regulatory commissions in place.

As courts ask whether *Seila Law* and *Free Enterprise* call into question independent officers or agencies, it is important to confront the historical claims underlying the government's effort to expand those decisions. Since the Supreme

---

[3] *E.g.*, Jed H. Shugerman, *The Misuse of Ratification-Era Sources by Unitary Executive Theorists*, Mich. J. L. Reform (forthcoming 2025) (manuscript at Appendix 30-43) [hereinafter *Misuse*],
https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5070241.

[4] Adam Liptak, *Lonely Scholar with Unusual Ideas Defends Trump, Igniting Legal Storm*, N.Y. Times (Sept. 25, 2017),
https://www.nytimes.com/2017/09/25/us/politics/trump-emoluments-clause-alexander-hamilton.html; *Jed Shugerman Apologizes to Tillman and Blackman*, Originalism Blog (Sept. 25, 2017), https://originalismblog.typepad.com/the-originalism-blog/2017/09/jed-shugerman-apologizes-to-tillman-and-blackmanmichael-ramsey.html.

Court decided *Seila Law*, a wave of new historical research has shown that the Founding generation did not understand Article II to grant the President an indefeasible removal power over executive officials. *See infra* Part I. In response, pro-unitary executive scholars have tried to offer new historical support. That evidence has not withstood scrutiny. For example, unitary theorists have been unable to address core critiques of their interpretations of sources from the First Congress much less identify a single sentence from the voluminous Ratification Debates suggesting Article II "executive power" implied removal. *See infra* Part II.

This short brief cannot litigate the historical case on the merits. It merely identifies new positive evidence about the original public meaning of Article II and the unitary scholars' repeated errors. In short, the evidence of original public meaning is so unclear and mixed that the Supreme Court would not have a sufficient originalist basis to overturn *Humphrey's* and longstanding statutory removal protections like those for the National Labor Relations Board. That counsels caution from this Court.

## I. NEW EVIDENCE DEMONSTRATES THAT ARTICLE II DID NOT IMPLY UNCONDITIONAL PRESIDENTIAL REMOVAL.

### A. The Unitary Executive Theory's Three Pillars Are No Longer Standing.

The unitary executive theory has long rested on three key historical assertions. Recently excavated evidence rebuts each.

3

### 1.  The Executive Vesting Clause Did Not Imply Presidential Removal.

Article II, Section 1 provides: "The executive Power shall be vested in a President of the United States of America." Unitary executive theorists suggest that "executive power" implied removal.[5] Historians and legal scholars, however, have dug into Anglo-American history to show that "executive power" did not imply a removal power.[6]

For example, Blackstone and many other sources described offices as "freehold" property interests, and Parliament's legislative power included the power to protect offices.[7] Many powerful executive officers in England, including cabinet members and even department heads and high treasury officials, were unremovable.[8] When an office was to be held for a term of years with no specification about the terms of its tenure, the default rule was that it was not held "at pleasure."[9] That default rule explains why Chief Justice Marshall in *Marbury v. Madison* observed three times that Marbury was "not removable" from his office with a five-year term,

---

[5] *E.g.*, Aditya Bamzai & Saikrishna Bangalore Prakash, *The Executive Power of Removal*, 136 Harv. L. Rev. 1756, 1760, 1766-70 (2023) [hereinafter *Executive Power of Removal*].

[6] *See* Jane Manners & Lev Menand*, Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1, 20-21 (2021) [hereinafter *Three Permissions*]; *Venality*.

[7] Daniel D. Birk, *Interrogating the Historical Basis for a Unitary Executive*, 73 Stan. L. Rev. 175 (2021) [hereinafter *Interrogating the Historical Basis*].

[8] *Venality* at 258-65.

[9] *See generally Three Permissions*.

even though his office was not an Article III judgeship.[10] Nor did "vesting" imply indefeasible powers in the eighteenth century, as recent historical scholarship shows the separation of powers was more a flexible structural concept than a formal doctrine.[11]

### 2. The "Take Care" Clause Did Not Imply Presidential Removal.

Article II, Section 3 provides: The President "shall take Care that the Laws be faithfully executed." Unitary executive theorists claim that the duty to "take care" implied a power to remove.[12]

The Take Care Clause, along with the Presidential Oath imposes a duty of faithful execution, and it would be incongruous for a duty-imposing clause to imply a power beyond that duty. "Faithful execution" was proto-fiduciary legal language from centuries of English law that limited the discretion of executive officials, not an expansion of their power.[13] There is simply no historical evidence that the Take Care Clause or the structure of separation of powers implied "indefeasible"

---

[10] *Id.* at 22-25; *accord Venality* at 248 n.177, 282; *Marbury Problem* at 2088-91.

[11] *Vesting* at 1486, 1503-04, 1519-21*; Venality* at 231, 234-35; Joshua C. Macey & Brian M. Richardson, *Checks, Not Balances*, 101 Tex. L. Rev. 89 (2022); Christopher S. Havasy, Joshua C. Macey & Brian Richardson, *Against Political Theory in Constitutional Interpretation*, 76 Vand. L. Rev. 899 (2023).

[12] *E.g.*, Michael McConnell, *The President Who Would Not Be King*, 166, 258-62 (2020).

[13] *See Faithful Execution* at 2118-19, 2128, 2180-81.

unconditional presidential power.[14] Indeed, this new research supports Chief Justice Rehnquist's interpretation and holding in his 7-1 majority in *Morrison v. Olson*, 487 U.S. 654, 692-93 (1988), and provides an originalist basis for *Humphrey's Executor*.

### 3. New Research Shows that "the Decision of 1789" Is a Myth and that the First Congress Repeatedly Rejected Unconditional Presidential Removal Power.

Unitary executive theorists have also revived an older historical claim that the debates from the First Congress demonstrated that the Founding generation interpreted Article II to imply a presidential removal power. Not so. New research confirms that the First Congress actually rejected the interpretation that Article II implied presidential removal[15] and passed a series of statutes that contradicted the unitary executive theory of removal.[16]

### B. New Research Confirms that the Constitution's Text and Ratification Debates Undercut the Unitary Theory.

### 1. The Opinion Clause and the *Federalist Papers* Remain Stronger Counterevidence than Anything the Unitary Theorists Have Offered.

Recent scholarship on historical understandings of the text and structure of

---

[14] Unitary theorists have provided no originalist evidence that the Take Care Clause or the structure of separation of powers implied "indefeasible" unconditional presidential removal power. *Vesting* at 1517-21; Peter M. Shane, *The Originalist Myth of the Unitary Executive*, 19 J. Const. L. 323, 334-44 (2016).

[15] *Indecisions* at 774-818, 834-45, 864-67.

[16] Christine Kexel Chabot, *Interring the Unitary Executive*, 98 Notre Dame L. Rev. 129 (2022); Christine Kexel Chabot, *Is the Federal Reserve Constitutional? An Originalist Argument for Independent Agencies*, 96 Notre Dame L. Rev. 1 (2020); *Indecisions* at 844-46, 850; *Venality* at 282-85.

the Constitution and the Ratification Debates have weakened the unitary executive theory. Key subjects of that recent scholarship include the Opinion Clause;[17] *Federalist* No. 39 (Madison);[18] and *Federalist* No. 77 (Hamilton).[19] Since *Seila Law*, moreover, the Supreme Court has emphasized that Ratification evidence is due more weight than post-Ratification evidence, *see N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 35 (2023), undermining certain of the unitary theorists' central interpretations.

### 2.  The Anti-Federalists Were Remarkably Silent on Removal.

Recent research also explores the Anti-Federalists' accounts of the Ratification debates, which were silent about whether Article II "executive power" or the Take Care Clause implied a presidential removal power. That silence throughout six volumes of Herbert Storing's *The Complete Anti-Federalist* speaks loudly. The Anti-Federalists—especially the opponents of a strong presidency—had

---

[17] *Venality* at 280-82.

[18] *Interrogating the Historical Basis* at 186-87, 229; *Three Permissions* at 20-21; *Indecisions* at 773, 776-79, 803 & n.264, 824-44; *Vesting* at 1501 n.113; *Venality* at 242-43.

[19] Jonathan Gienapp, *The Second Creation: Fixing the Constitution*, 154-55 (2018); *Indecisions* at 778.

7

the strongest incentive to warn about implied presidential powers and even exaggerate them, yet they did not offer such an interpretation of removal.[20]

## II. RECENT RESPONSES FROM UNITARY EXECUTIVE THEORISTS CONFIRM THE WEAKNESS OF THE ORIGINALIST CASE.

Efforts of leading unitary executive theorists to respond to recent evidence only backfire. Indeed, each demonstrates that the theorists have so little real evidence to support their claims about Article II and presidential removal at pleasure that they have to resort to obvious misreadings of the historical record.

### A. *The Executive Power of Removal* Backfired, Exposing the Unitary Theory's Lack of Evidence and Repeated Misuse of Sources.

In 2023 and 2024, Aditya Bamzai and Saikrishna Prakash attempted to rescue presidential removal. First came their error-ridden article, *The Executive Power of Removal*, 136 Harv. L. Rev. 1756 (2023). Scholars have offered a variety of critiques, including:

- Andrea Scoseria Katz & Noah A. Rosenblum, *Removal Rehashed*, 136 Harv. L. Rev. F. 404 (2023)

- Christine Kexel Chabot, *Interring the Unitary Executive*, 98 Notre Dame L. Rev. 129 (2022)

- *The Indecisions of 1789: Appendices on the Misuse of Historical Sources in Unitary Executive Theory* (Feb. 27, 2023) (unpublished appendix)

---

[20] *Venality* at 278-79; Jonathan Gienapp, *Removal and the Changing Debate over Executive Power at the Founding*, 63 Am. J. Legal Hist. 229, 248-50 (2023); *Movement on Removal* at 258-79.

[hereinafter *Indecisions Appendix II*], https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4359596.

- Brief of Amicus Curiae Professor Jed. H. Shugerman in Support of Petitioner, *SEC v. Jarkesy*, 603 U.S. 109 (2024) (No. 22-859) [hereinafter Shugerman *Jarkesy* Br.], https://scholarship.law.bu.edu/cgi/viewcontent.cgi?article=4584&context=faculty_scholarship.

- *Venality* at 227-229, 248 n.177, 279 n.442.

Bamzai and Prakash responded in *How to Think About the Removal Power*, 110 Va. L. Rev. Online 159 (2024). Detailed critiques raising serious concerns about a new round of repeated errors are forthcoming, including:

- *Misuse* (forthcoming 2025), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5070241.

- Christine Kexel Chabot, *Rejecting the Unitary Executive*, Utah L. Rev. (forthcoming 2025), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4968775.

- Andrea Scoseria Katz, Noah Rosenblum & Jane Manners, *Disagreement and Historical Argument: Or How Not to Think About Removal*, Mich. J. L. Reform (forthcoming 2025).

- Shugerman, *Executive Power Without Removal at Pleasure* (forthcoming).

All told, Bamzai and Prakash have, since 2023, published almost 140 pages in response. But if their two recent articles are considered the most thorough and up-to-date argument for Article II presidential removal power, they are perhaps the clearest evidence against it. That is because they have failed to address serious questions about cherry-picking and misreading sources, provide new evidence that withstands basic scrutiny, or address critics' core arguments. For example, they have

9

so far ignored the "strategic ambiguity" thesis of my response, *Indecisions of 1789: Inconstant Originalism and Strategic Ambiguity*.

What little evidence Bamzai and Prakash do offer contradicts their conclusions. For instance, they pluck Luther Martin's limited reference to removal during the Ratification debates out of context.[21] However*,* Martin mentioned only the removal of *military officers* under the Commander-in-Chief Clause, not *civil officers* subject to other parts of Article II. That lone speech suggests that neither the Constitution's proponents nor its opponents imagined that the Executive Vesting Clause or the Take Care Clause implied a removal power.[22] When Bamzai and Prakash defended their reliance on Martin, they repeated the same errors, even claiming "Martin did not tie his point about removal to any particular clause."[23] To the contrary, Martin referred to a removal power only in reference to military officers—"the army and navy" and "the militia"[24]—soon after citing the Commander-in-Chief Clause.[25]

---

[21] *Executive Power of Removal* at 1772 & nn.10-11.

[22] *Venality* at 278-79.

[23] *How to Think About the Removal Power* at 172 n.54.

[24] *Venality* at 279.

[25] U.S. Const. art. II, § 2, cl. 1 ("The President shall be Commander in Chief of the *Army* and *Navy* of the United States, and of the *Militia* of the several States, when called into the actual Service of the United States…") (emphasis added).

Bamzai and Prakash also fallaciously interpret Hamilton's *Federalist* No. 66 in a failed attempt to parry his senatorial No. 77.[26] Their attempt to answer new evidence about *Marbury* is full of contradictory, multiplying explanations—inconsistent with originalist methods. *See* Shugerman *Jarkesy* Br. 26-27.

## B. Historians Have Raised Serious Questions About Other Leading Unitary Theorists' Advocacy and Scholarship.

In *Seila Law*, leading unitary theorists submitted an amicus brief riddled with misinterpretations and errors. To his credit, the lead author, Ilan Wurman, acknowledged one error. Unfortunately, the brief and companion articles made many more.[27] Especially troubling is Wurman's misquotation of Blackstone.[28] Wurman engaged in a new round of misinterpretations in his *Jarkesy* amicus brief and in a recent article,[29] without addressing several glaring questions raised in the meantime, including about his contradictory use of Latin maxims.[30] Wurman also relied on

---

[26] Katz & Rosenblum, *supra* p.8, at 422; *Misuse* at 9-14.

[27] *See Removal of Context* at 160-72.

[28] *See id.* at 162-64. For Wurman's incomplete reply, *see* Ilan Wurman, *Some Thoughts on My Seila Law Brief*, Notice & Comment: Yale J. Reg. (Dec. 1, 2021), https://www.yalejreg.com/nc/some-thoughts-on-my-seila-law-brief-by-ilan-wurman.

[29] Brief of Amicus Curiae Professor Ilan Wurman at 17-19, *SEC v. Jarkesy*, 603 U.S. 109 (2024) (No. 22-859) (citing *Indecisions* at 820) [hereinafter Wurman *Jarkesy* Br.]; Ilan Wurman, *The Original Presidency: A Conception of Administrative Control*, 16 J. L. Analysis 26, 35-38 (2024) [hereinafter *Original Presidency*].

[30] Shugerman *Jarkesy* Br. 27-29; *see also Three Permissions* at 5, 18-27; *Venality* at 247-48, 255, 282; *Marbury Problem* at 2085-90, 2103-13.

Bamzai and Prakash's erroneous categorization of John Laurance as a "presidentialist,"[31] a characterization Amicus rebutted four years ago.[32] Wurman likewise takes a single treatise by outlier Giles Jacob out of context in several crucial ways.[33]

Leading unitary executive theorists' recent efforts to defend their removal theories have backfired, exposing the tenuousness of their grasp on the historical record. Their evidence withers under scrutiny. Thus, it is unlikely that an analysis focused on original public meaning would result in an expansion of the Supreme Court's removal precedents.

## III. RED FLAGS ABOUT THE UNITARY SCHOLARSHIP AND A YELLOW FLAG OF CAUTION AGAINST EXTENDING PRECEDENTS.

On February 12, 2025, the D.C. Circuit dismissed the government's appeal challenging an order delaying Hampton Dellinger's removal from the Office of the Special Counsel, which Congress had protected with the traditional requirement of

---

[31] Wurman *Jarkesy* Br. 19; *Original Presidency* at 37 (citing *Executive Power of Removal* at 1775). On the terms "presidentialists," "senatorialists," and "congressionalists," see *Indecisions* at 759, 863, 865.

[32] *Indecisions* at 791-92, 829-830, 843, 847, 865; *Indecisions Appendix II* at 8-10, 34; Letter to Separation of Powers Scholars (Oct. 13, 2021) (reprinted in *Misuse* at 30-43).

[33] *See* Wurman *Jarkesy* Br. 16-17; *Original Presidency* at 35-36; Shugerman *Jarkesy* Br. 29-30 (canvassing sources available on the Founders' Bookshelf); *Venality* at 277 n.436.

"inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1211(b). In concurrence, Judge Katsas observed:

> [I]t would be difficult for Dellinger to show a likelihood of success in light of *Collins v. Yellen*, 594 U.S. 220 (2021), and *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), which held that Article II of the Constitution prevents Congress from restricting the President's ability to remove officers who serve as the sole heads of agencies that wield significant executive power.

*Dellinger v. Bessent*, No. 25-5025, 2025 WL 561425, at *1 (D.C. Cir. Feb. 12, 2025) (Katsas, J., concurring). But National Labor Relations Board Members' roles are distinct from the sole-headed structures overturned in *Seila Law* and *Collins*, and from Dellinger's Office of Special Counsel. *Cf. Dellinger v. Bessent*, No. 25-5052, slip op. at 3-5 (D.C. Cir. Mar. 10, 2025) (per curiam) (emphasizing OSC's single head). Judge Howell was correct that the Court's narrow holdings against novel agency designs left *Humphrey's Executor* intact and controlling here.

The wave of new historical evidence since 2019—and the responses that abandoned originalist methods and historical accuracy—should caution against speculation about how the Supreme Court might assess executive removal authorities going forward. The unitary theorists' multiplying errors are red flags on top of yellow flags—the signal in both car racing and in legal research to slow down and proceed with caution. This Court should not extend the law unless and until the Supreme Court has had an opportunity to evaluate the full historical record.

13

## CONCLUSION

The original public meaning of Article II defeats Appellants' motion. Thus, the Court should reject their anti-originalist arguments to expand presidential removal power via emergency motion.

Dated: March 12, 2025

Respectfully submitted,

/s/ Richard F. Griffin
Richard F. Griffin
Faaris Akremi
**BREDHOFF & KAISER P.L.L.C.**
805 Fifteenth Street NW, Suite 1000
Washington, DC 20005
Phone: (202) 842-2600
Fax: (202) 842-1888
rgriffin@bredhoff.com
fakremi@bredhoff.com

*Counsel for Amicus Curiae Professor*
*Jed H. Shugerman*

14

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

I hereby certify that the foregoing brief contains 2,599 words, excluding the items listed in Fed. R. App. P. 32(f), and was composed in Times New Roman font, 14-point. The brief complies with applicable type-volume and typeface requirements. Fed. R. App. P. 32(a)(5)–(6).

Dated: March 12, 2025

/s/ Richard F. Griffin
Richard F. Griffin
**BREDHOFF & KAISER, P.L.L.C.**
805 Fifteenth Street NW, Suite 1000
Washington, DC 20005
Phone: (202) 842-2600
Fax: (202) 842-1888
rgriffin@bredhoff.com

## CERTIFICATE OF SERVICE

I certify that on this March 12, 2025, the foregoing brief was filed with the electronic case filing (ECF) system of the U.S. Court of Appeals for the D.C. Circuit, which will provide electronic notice to all counsel of record.


Dated: March 12, 2025                    /s/ Richard F. Griffin
                                         Richard F. Griffin
                                         **BREDHOFF & KAISER P.L.L.C.**
                                         805 Fifteenth Street NW, Suite 1000
                                         Washington, DC 20005
                                         Phone: (202) 842-2600
                                         Fax: (202) 842-1888
                                         rgriffin@bredhoff.com