ORAL ARGUMENT SCHEDULED MAY 16, 2025
**No. 25–5057**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

GWYNNE A. WILCOX,

*Plaintiff-Appellee,*

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE
UNITED STATES; MARVIN E. KAPLAN, IN HIS OFFICIAL CAPACITY AS
CHAIRMAN OF THE NATIONAL LABOR RELATIONS BOARD,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court for the District of Columbia
(No. 1:25-cv-00334, Hon. Beryl A. Howell)

_____

**BRIEF OF AMICUS CURIAE
AMERICANS FOR PROSPERITY FOUNDATION
IN SUPPORT OF APPELLANTS**

_____

Michael Pepson
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
571.329.4529
mpepson@afphq.org

Dated:  March 28, 2025        *Counsel for Amicus Curiae*

CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

Under Circuit Rule 28(a)(1), the undersigned counsel certifies:

**A.    Parties and *Amici***

All parties and *amici* that have entered an appearance in this Court and the district court are listed in the Brief for Appellants, except for *amicus curiae* Americans for Prosperity Foundation.  No intervenors participated before the district court or this Court.

*Amicus curiae* Americans for Prosperity Foundation is a nonprofit corporation.  It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

**B.    Rulings Under Review**

The rulings under review are the district court's grant of summary judgment (Dkt. 34) and accompanying memorandum opinion (Dkt. 35), issued on March 6, 2025. The court's opinion will be published in F. Supp. 3d and is available at 2025 WL 720914.

**C.    Related Cases**

References to related cases appear in the Brief for Appellants.

    /s/ Michael Pepson

i

## CERTIFICATE UNDER CIRCUIT RULE 29(D)

Under Circuit Rule 29(d), undersigned counsel for Americans for Prosperity Foundation ("AFPF") states that a separate amicus brief is necessary because AFPF's brief uniquely focuses on the broader constitutional context and practical implications of this case, as well as surveys the direction of the Supreme Court's jurisprudence addressing the President's at-will removal power under Article II.


    /s/ Michael Pepson

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a nonprofit corporation. It has no parent companies, subsidiaries, or affiliates that have issued shares or debt securities to the public.

Under D.C. Circuit Rule 26.1(b), AFPF further states that it is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Some of those key ideas are the separation of powers and constitutionally limited government. As part of this mission, it appears as *amicus curiae* before federal and state courts.

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES ...........i

CERTIFICATE UNDER CIRCUIT RULE 29(D) ................................................ii

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ....................................iii

TABLE OF AUTHORITIES ...............................................................v

GLOSSARY...............................................................................X

INTEREST OF *AMICUS CURIAE* ....................................................1

SUMMARY OF ARGUMENT ...........................................................2

ARGUMENT ..............................................................................5

   I.   The Constitution Does Not Authorize a Fourth Branch of Government ......5

   II.  At-Will Removal Power Is a Key Accountability Checkpoint ....................10

   III. For-Cause Removal Protections For Officers Wielding Substantial Executive Power Empower a Fourth Branch ................................................12

   IV. The District Court Misapprehended *Humphrey's Executor*'s Sweep ..........15

   A. The *Humphrey's Executor* Exception Is Narrow and Does Not Extend To Agencies That Possess Substantial Executive Power.....................................17

   B. The NLRB Exercises Substantial Executive Power and Thus Falls Outside of the *Humphrey's Executor* Exception............................................20

   V.  The Supreme Court Has Repudiated *Humphrey's Executor*........................22

CONCLUSION .........................................................................26

CERTIFICATE OF COMPLIANCE ..................................................27

CERTIFICATE OF SERVICE.........................................................28

## TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*Ameron, Inc. v. United States Army Corps of Engineers*,
   787 F.2d 875 (3d Cir. 1986) ................................................6

*Am. Hosp. Ass'n v. National Labor Relations Board*,
   499 U.S. 606 (1991) ...........................................................22

*Beth Israel Hosp. v. National Labor Relations Board*,
   437 U.S. 483 (1978) ...........................................................22

*Bowsher v. Synar*,
   478 U.S. 714 (1986) ...........................................................11

*City of Arlington v. Federal Communications Commission*,
   569 U.S. 290 (2013) ......................................................12, 19

*Collins v. Yellen*,
   594 U.S. 220 (2021).................... 3, 4, 5, 7, 10, 11, 12, 13, 20, 22, 24

*Consumers' Rsch. v. Consumer Prod. Safety Comm'n*,
   98 F.4th 646 (5th Cir. 2024) ..................... 3, 9, 15, 16, 19, 20, 24, 25

*Consumers' Rsch. v. Consumer Prod. Safety Comm'n*,
   91 F.4th 342 (5th Cir. 2024) ...........................................19, 24

*Dellinger v. Bessent*,
   No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025) ...........7, 8, 11

*Department of Transportation v. Ass'n of Am. R.R.*,
   575 U.S. 43 (2015).............................................................6

*Edmond v. United States*,
   520 U.S. 651 (1997)...........................................................17

*Federal Trade Commission v. Qualcomm Inc.*,
   935 F.3d 752 (9th Cir. 2019) ................................................14

*Federal Trade Commission v. Ruberoid Co.*,
   343 U.S. 470 (1952)........................................................3, 11

*Feds for Med. Freedom v. Biden*,
  63 F.4th 366 (5th Cir. 2023) ...................................................12, 13, 14

*Fleming v. United States Department of Agriculture*,
  987 F.3d 1093 (D.C. Cir. 2021) .......................................................9, 20

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
  561 U.S. 477 (2010).........................................................5, 10, 12, 23

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
  537 F.3d 667 (D.C. Cir. 2008) ...........................................................8, 26

*Garcia v. Garland*,
  64 F.4th 62 (2d Cir. 2023) ...................................................................19

*Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local Union No. 174*,
  598 U.S. 771 (2023)..............................................................................21

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935)..........................................................3, 17, 18, 19

*In re Aiken Cty.*,
  645 F.3d 428 (D.C. Cir. 2011)......................................................14, 23

*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024)..............................................................................25

*Morrison v. Olson*,
  487 U.S. 654 (1988)..........................................................................8, 23, 24

*Myers v. United States*,
  272 U.S. 52 (1926)........................................................6, 7, 8, 10, 25

*National Labor Relations Board v. Curtin Matheson Sci., Inc.*,
  494 U.S. 775 (1990)..............................................................................22

*National Labor Relations Board v. SW Gen., Inc.*,
  580 U.S. 288 (2017)..............................................................................17

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC*,
  584 U.S. 325 (2018)..............................................................................26

*Overstreet ex rel. NLRB v. El Paso Disposal, L.P.*,
    625 F.3d 844 (5th Cir. 2010) .................................................................21

*PHH Corp. v. Consumer Financial Protection Bureau*,
    881 F.3d 75 (D.C. Cir. 2018)....................................2, 6, 8, 14, 15, 26

*PHH Corp. v. Consumer Financial Protection  Bureau*,
    839 F.3d 1 (D.C. Cir. 2016) ..................................................................20

*Seila Law LLC v. Consumer Financial Protection Bureau*,
    591 U.S. 197 (2020).................. 2, 4, 5, 6, 7, 8, 15, 16, 17, 18, 19, 20, 22, 23, 24

*Severino v. Biden*,
    71 F.4th 1038 (D.C. Cir. 2023)...............................................4, 25, 26

*Space Expl. Techs. Corp. v. NLRB*,
    741 F. Supp. 3d 630 (W.D. Tex. 2024) ............................................21

*Starbucks Corp. v. McKinney*,
    602 U.S. 339 (2024).............................................................................21

*Stern v. Marshall*,
    564 U.S. 462 (2011).............................................................................20

*Trump v. Mazars USA, LLP*,
    591 U.S. 848 (2020)...............................................................................3

*Trump v. United States*,
    603 U.S. 593 (2024).............................................7, 8, 9, 10, 16, 25

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021)..............................................................5, 10, 17, 19

*United States Term Limits v. Thornton*,
    514 U.S. 779 (1995).............................................................................5

*Wayman v. Southard*,
    23 U.S. (10 Wheat.) 1 (1825) .............................................................5

*Whitman v. Am. Trucking Ass'ns*,
    531 U.S. 457 (2001)............................................................................20

## Constitution

U.S. Const. art. II, § 1 ........................................................................5

U.S. Const. art. II, § 1, cl. 1 ...................................................2, 3, 6, 19

U.S. Const. art. II, § 2, cl. 2 ...............................................................3, 5

U.S. Const. art. II, § 3 .........................................................................2, 3, 6

U.S. Const. art. III, § 1 ........................................................................5

## Statutes

29 U.S.C. § 156 ..................................................................................22

29 U.S.C. § 160 ..................................................................................22

29 U.S.C. § 160(a) ..............................................................................21

29 U.S.C. § 160(b) ..............................................................................21

29 U.S.C. § 160(c) ..............................................................................21

29 U.S.C. § 160(e) ..............................................................................21

29 U.S.C. § 160(j) ...............................................................................21

## Rules

FRAP 29(a)(4)(E) ..................................................................................1

## Federal Register

88 Fed. Reg. 73,946 (Oct. 27, 2023).....................................................22

## Other Authorities

Aditya Bamzai & Saikrishna Prakash,
    *How to Think About the Removal Power*,
    110 Va. L. Rev. Online 159 (2024) ..............................................7, 12

Aditya Bamzai & Saikrishna Prakash,
    *The Executive Power of Removal*,
    136 Harv. L. Rev. 1756 (2023)...........................................................9

Andrew M. Grossman & Sean Sandoloski,
    *The End of Independent Agencies? Restoring Presidential Control
    of the Executive Branch*,
    22 Federalist Soc'y Rev. 216 (2021) ....................................................24

1 Annals of Cong. (1789)....................................................................10

Br. for Samuel F. Rathbun, Executor,
    1935 WL 32964 (U.S., filed Mar. 19, 1935) ......................................18

Br. for the United States,
    1935 WL 32965 (U.S., filed April 6, 1935) .......................................18

Daniel Crane,
    *Debunking Humphrey's Executor*,
    83 Geo. Wash. L. Rev. 1835 (2015) ..................................................21

Jason Marisam,
    *The President's Agency Selection Powers*,
    65 Admin. L. Rev. 821 (2013)..........................................................13

John Yoo,
    *Unitary, Executive, or Both?*,
    76 U. Chi. L. Rev. 1935 (2009) .......................................................13

Neomi Rao,
    *Removal: Necessary and Sufficient for Presidential Control*,
    65 Ala. L. Rev. 1205 (2014) ........................................................6, 7

Powers and Duties of the Fed. Trade Comm'n in the Conduct of
    Investigations, 34 Op. Att'y Gen. 553 (1925) ..................................17

Saikrishna Prakash,
    *The Essential Meaning of Executive Power*,
    2003 U. Ill. L. Rev. 701 (2003) .........................................................9

## GLOSSARY

FTC ................................................................... Federal Trade Commission

JA. ...................................................................................... Joint Appendix

NLRB ...................................................... National Labor Relations Board

## INTEREST OF AMICUS CURIAE[1]

*Amicus curiae* Americans for Prosperity Foundation ("AFPF") is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Some of those key ideas are the separation of powers and constitutionally limited government. As part of this mission, it appears as *amicus curiae* before federal and state courts.

Here, AFPF writes to highlight the broader separation-of-powers and practical implications of this case. AFPF believes the scope of federal power has been expanded well beyond what the Constitution's grant of limited, and enumerated, powers allows. It likewise believes that Congress should not be allowed to unconstitutionally transfer Article I legislative power or Article III judicial power to the executive. AFPF consistently advocates against executive overreach and for restraining the scope of federal power. But AFPF's interest here is not in expanding executive power beyond constitutional bounds. To the contrary, it is instead ensuring that it is unified in a duly elected President, as the Constitution requires, and not

---

[1]  All parties have consented to the filing of this brief. Under FRAP 29(a)(4)(E), *amicus curiae* states that no counsel for a party other than AFPF authored this brief in whole or in part, and no counsel or party other than AFPF made a monetary contribution intended to fund the preparation or submission of this brief.  No person other than *amicus curiae* or its counsel made a monetary contribution to its preparation or submission.

diffused in an extraconstitutional Fourth Branch. As relevant here, the President's at-will removal power ensures that the Executive Branch is accountable to the source of its power—the American People—and thereby protects individual liberty.

## SUMMARY OF ARGUMENT

"This is a case about executive power and individual liberty." *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 164 (D.C. Cir. 2018) (en banc) (Kavanaugh, J., dissenting), *abrogated sub nom.*, 591 U.S. 197 (2020). At its core it is about whether the Constitution authorizes a de facto Fourth Branch of government comprised of unelected bureaucrats insulated from accountability to the political branches—and thus to the American People—to make policy choices and enforcement decisions impacting the entire private economy. The answer is no.

In this country, all governmental power must flow from its proper source: We the People. Our system of government relies on the consent of the governed, memorialized in the Constitution. In that document, the People agreed that three branches of government—legislative, executive, and judicial—would exercise different forms of power that must be kept separate.

Under the Constitution, "[t]he entire 'executive Power' belongs to the President alone," *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020); U.S. Const. art. II, § 1, cl. 1, who "shall take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3. This means that "[t]he President is the only person

who alone composes a branch of government." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 868 (2020). Article II contemplates that the President will be assisted by subordinate officers in carrying out his broad constitutionally charged responsibilities, U.S. Const. art. II, § 2, cl. 2, including enforcing federal law. But to protect liberty and ensure accountability, the Constitution also grants the President plenary power to remove at will these officers. U.S. Const. art. II, § 1, cl. 1; *id.* art. II § 3. And "no statute can take that Presidential power away." *Collins v. Yellen*, 594 U.S. 220, 267 (2021) (Thomas, J., concurring).

The rise of "independent" agencies with vast law enforcement powers under the banner of *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), has undermined the Constitution's separation of powers, allowed parts of the Executive Branch to escape accountability, and threatened individual liberty. These extraconstitutional administrative bodies "have become a veritable fourth branch of the Government, which has deranged our three-branch legal theories much as the concept of a fourth dimension unsettles our three-dimensional thinking." *FTC v. Ruberoid Co.*, 343 U.S. 470, 487 (1952) (Jackson, J., dissenting).

But today, *Humphrey's Executor* is "nearly, *nearly*, zombified precedent." *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 98 F.4th 646, 648 n.10 (5th Cir. 2024) (Willett, J., concurring in denial of rehearing en banc). While still on life support, the Supreme "Court has repudiated almost every aspect of *Humphrey's*

3

*Executor*," *Seila Law*, 591 U.S. at 239 (Thomas, J., concurring in part, dissenting in part), and cabined it to its precise facts, as understood by the *Humphrey's* Court. And thus "only a very narrow reading of" that decision "is still good law[.]" *Severino v. Biden*, 71 F.4th 1038, 1050 (D.C. Cir. 2023) (Walker, J., concurring).

As the Supreme Court's recent decisions in *Seila Law*, 591 U.S. 197, and *Collins*, 594 U.S. 220, reaffirm, Article II grants the President plenary power to remove at will principal officers in federal agencies that wield substantial executive power. This includes those at multi-member agencies like the National Labor Relations Board ("NLRB"). Congress cannot restrict by statute that constitutionally illimitable presidential power. By that measure, this case is not close.

NRLB Members are indisputably principal officers who are, collectively, the head of the agency. The constitutionality of the statutory for-cause removal restrictions at issue here thus turns on whether the NLRB exercises substantial executive authority. It plainly does. The NLRB has vast investigative, enforcement, adjudicative, and rulemaking powers affecting a broad swath of the entire private economy. That well describes not just substantial but sweeping executive power under current precedent. As the Supreme Court has repeatedly explained, "[t]he activities of executive officers may take legislative and judicial forms, but they are exercises of—indeed, under our constitutional structure they *must be* exercises of—

4

the executive Power, for which the President is ultimately responsible." *United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021) (cleaned up).

Thus, the statutory removal restrictions violate Article II and are void. For "an unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment)[.]" *Collins*, 594 U.S. at 259.

For the foregoing reasons, this Court should reverse the district court.

ARGUMENT

## I. The Constitution Does Not Authorize a Fourth Branch of Government.

"Our system of government rests on one overriding principle: All power stems from the consent of the people." *United States Term Limits v. Thornton*, 514 U.S. 779, 846 (1995) (Thomas, J., dissenting). "Our Constitution was adopted to enable the people to govern themselves, through their elected leaders." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd*., 561 U.S. 477, 499 (2010). To protect liberty, the Constitution "sets out three branches and vests a different form of power in each—legislative, executive, and judicial." *Seila Law*, 591 U.S. at 239 (Thomas, J., concurring) (citing U.S. Const. art. I, § 1; U.S. Const. art. II, § 1, cl. 1; U.S. Const. art. III, § 1). "[T]he legislature makes, the executive executes, and the judiciary construes the law[.]" *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 46 (1825)

5

(Marshall, C.J.). "These grants are exclusive." *Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43, 67 (2015) (Thomas, J., concurring in the judgment).

"'If there is a principle in our Constitution, indeed in any free Constitution, more sacred than another, it is that which separates the Legislative, Executive and Judicial powers.'" *Myers v. United States*, 272 U.S. 52, 116 (1926) (quoting 1 Annals of Congress, 581). "The Constitution establishes three branches of government, not four[,]" and thus "there can be no fourth branch, headless or otherwise." *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 892 (3d Cir. 1986) (Becker, J., concurring in part). Nor may Congress create administrative bodies that "straddle multiple branches of Government. . . . Free-floating agencies simply do not comport with this constitutional structure." *Seila Law*, 591 U.S. at 247 (Thomas, J., concurring in part, dissenting in part).

"To further safeguard liberty, the Framers insisted upon accountability for the exercise of executive power," "lodg[ing] full responsibility . . . in a President of the United States, who is elected by and accountable to the people." *PHH Corp.*, 881 F.3d at 164 (Kavanaugh, J., dissenting). The Constitution provides in no uncertain terms that "[t]he executive Power shall be vested in a President," U.S. Const. Art. II, § 1, cl. 1, who "shall take Care that the Laws be faithfully executed," U.S. Const. Art. II, § 3, thereby "creat[ing] a strongly unitary executive." Neomi Rao, *Removal: Necessary and Sufficient for Presidential Control*, 65 Ala. L. Rev. 1205, 1213

(2014). "As the Supreme Court has long recognized, these provisions confer upon the President the power to remove executive officers at will."[2] *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *15 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) (citing *Collins*, 594 U.S. at 250–51; *Seila Law*, 591 U.S. at 213–15; *Free Enter. Fund*, 561 U.S. at 492–93; *Myers*, 272 U.S. at 108–17).

Under our constitutional structure "[t]he entire 'executive Power' belongs to the President alone," *Seila Law*, 591 U.S. at 213, "including the power of appointment and removal of executive officers," *Myers*, 272 U.S. at 164. This ensures "[t]he buck stops with the President," *Free Enter. Fund*, 561 U.S. at 493, who "bears responsibility for the actions of the many departments and agencies within the Executive Branch," *Trump v. United States*, 603 U.S. 593, 607 (2024). And for good reason. The "unitary Executive"—including the President's Article II at-will removal power—was designed "not merely to assure effective government

---

[2] "Unlike several state constitutions of the founding era, Article II does not specify or suggest that appointment or removal are default allocations from which Congress can depart. By contrast, . . . several state constitutions conferred a removal authority on the executive, but made clear that such conferral was a default from which the legislature could depart." Aditya Bamzai & Saikrishna Prakash, *How to Think About the Removal Power*, 110 Va. L. Rev. Online 159, 174 (2024).

but to preserve individual freedom."[3] *Morrison v. Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting).

"[O]nly through the President can the Executive Branch and its millions of personnel be held democratically accountable." *Dellinger*, 2025 WL 559669, at *17 (Katsas, J., dissenting). "The President's management of the Executive Branch requires him to have unrestricted power to remove the most important of his subordinates . . . in their most important duties." *Trump*, 603 U.S. at 621 (cleaned up). The President's at-will removal power flows directly from the Constitution, not from Congress. *See Seila Law*, 591 U.S. at 204 ("The President's power to remove— and thus supervise—those who wield executive power on his behalf follows from the text of Article II[.]"); *Myers*, 272 U.S. at 163–64. "[T]he constitutional text and the original understanding, including the Decision of 1789, established that the President possesses the power under Article II to remove officers of the Executive Branch at will." *Free Enter. Fund v. PCAOB*, 537 F.3d 667, 692 (D.C. Cir. 2008) (Kavanaugh, J., dissenting), *overruled*, 561 U.S. 477 (2010).

"The President's removal power has long been confirmed by history and precedent. It was discussed extensively in Congress when the first executive departments were created in 1789." *Seila Law*, 591 U.S. at 214 (cleaned up). "Most

---

[3] "The President occupies a unique position in the constitutional scheme as the only person who alone composes a branch of government." *Trump*, 603 U.S. at 610 (cleaned up).

members of [the First] Congress recognized that forbidding removal effectively would preclude presidential control of law execution and destroy presidential accountability for that task." Saikrishna Prakash, *The Essential Meaning of Executive Power*, 2003 U. Ill. L. Rev. 701, 796 n.556 (2003). "Debates in the First Congress, the so-called Decision of 1789, made clear that the President is vested with plenary removal power." *Fleming v. U.S. Dep't of Agric.*, 987 F.3d 1093, 1114 (D.C. Cir. 2021) (Rao, J., concurring in part and dissenting in part). The First Congress thus "confirmed that Presidents may remove executive officers at will." *PHH Corp.*, 881 F.3d at 168 (Kavanaugh, J., dissenting).

Nor may Congress limit the core at-will removal power Article II exclusively vests in the President.[4] "[B]ecause the Constitution nowhere grants Congress the authority to strip that power from the President, the President's removal power was originally understood to be nondefeasible." *Consumers' Rsch.*, 98 F.4th at 651 (Oldham, J., dissenting from denial of rehearing en banc) (citing Aditya Bamzai & Saikrishna Prakash, *The Executive Power of Removal*, 136 Harv. L. Rev. 1756, 1789 (2023)). Indeed, this Court has "held that Congress lacks authority to control the President's 'unrestricted power of removal' with respect to 'executive officers of the

---

[4] Just last Term, the Supreme Court reiterated that the removal authority is one of the President's "core constitutional powers" "within his exclusive sphere of constitutional authority." *Trump*, 603 U.S. at 606–09. "The exclusive constitutional authority of the President disables the Congress from acting upon the subject." *Id.* at 607 (cleaned up).

United States whom he has appointed.'" *Trump*, 603 U.S. at 608–09 (quoting *Myers*, 272 U.S. at 106, 176).

## II. At-Will Removal Power Is a Key Accountability Checkpoint.

"As Madison stated on the floor of the First Congress, 'if any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws.'" *Free Enter. Fund*, 561 U.S. at 492 (quoting 1 Annals of Cong. 463 (1789)). Given that the President's "selection of administrative officers is essential to the execution of the laws by him, so must be his power of removing those for whom he can not continue to be responsible." *Myers*, 272 U.S. at 117. "[B]ecause the President, unlike agency officials, is elected," the removal power "is essential to subject Executive Branch actions to a degree of electoral accountability." *Collins*, 594 U.S. at 252. For "[w]ithout presidential responsibility there can be no democratic accountability for executive action." *Arthrex*, 594 U.S. at 28 (Gorsuch, J., concurring in part, dissenting in part).

At-will removal allows the President to ensure unelected administrative officials "serve the people effectively and in accordance with the policies that the people presumably elected the President to promote." *Collins*, 594 U.S. at 252. "It is the power to supervise—and, if need be, remove—subordinate officials that allows a new President to shape his administration and respond to the electoral will that propelled him to office." *Id.* at 278 (Gorsuch, J., concurring in part). "At-will

10

removal ensures that the lowest officers, the middle grade, and the highest, will depend, as they ought, on the President, and the President on the community." *Id*. at 252 (majority op.) (cleaned up). After all, "[o]nce an officer is appointed, it is only the authority that can remove him, and not the authority that appointed him, that he must fear and, in the performance of his functions, obey." *Bowsher v. Synar*, 478 U.S. 714, 726 (1986).

The President's at-will removal power also protects liberty. "Few things could be more perilous to liberty than some 'fourth branch' that does not answer even to the one executive official who is accountable to the body politic." *Collins*, 594 U.S at 278–79 (Gorsuch, J., concurring in part) (citing *FTC v. Ruberoid Co.*, 343 U.S. at 487 (Jackson, J., dissenting)). The President's Article II at-will removal power guards against this threat. Limits on that core Executive power allow "wholly unaccountable government agent[s to] assert the power to make decisions affecting individual lives, liberty, and property. The chain of dependence between those who govern and those who endow them with power is broken." *Id.* at 278 (Gorsuch, J., concurring in part); *see Dellinger*, 2025 WL 559669, at *17 (Katsas, J., dissenting) ("Allowing another branch of government to insulate executive officers from presidential control—whether by congressional statute or judicial injunction— would sever a key constitutional link between the People and their government.").

Thus, "[i]f anything, removal restrictions may be a greater constitutional evil than appointment defects."[5] *Collins*, 594 U.S. at 277 (Gorsuch, J., concurring in part).

### III.    For-Cause Removal Protections For Officers Wielding Substantial Executive Power Empower a Fourth Branch.

The Executive Branch "now wields vast power and touches almost every aspect of daily life, [which] heightens the concern that it may slip from the Executive's control, and thus from that of the people." *Free Enter. Fund*, 561 U.S. at 499. "President Truman colorfully described his power over the administrative state by complaining, 'I thought I was the president, but when it comes to these bureaucrats, I can't do a damn thing.' President Kennedy once told a constituent, 'I agree with you, but I don't know if the government will.'" *City of Arlington v. FCC*, 569 U.S. 290, 313–14 (2013) (Roberts, C.J., dissenting) (citation omitted).

That holds true today. As it stands now, "the President actually controls surprisingly little of the Executive Branch. Only a tiny percentage of Executive Branch employees are subject to Presidential removal." *Feds for Med. Freedom v. Biden,* 63 F.4th 366, 390 (5th Cir. 2023) (en banc) (Ho, J., concurring). The bulk of the federal bureaucracy is shielded from presidential removal—and thus from

---

[5] "[W]ithout such a power, not only would the President be seriously hamstrung in translating electoral mandates into policy, but that, in addition, a temporary political trifecta (a party controlling the presidency and both houses of Congress) could pass a law that entrenches their policy views, notwithstanding future elections." Bamzai & Prakash, 110 Va. L. Rev. Online at 206.

accountability to the People through the elected President—by civil service laws. *See id.* (Ho, J., concurring). "New Presidents *always* inherit thousands of Executive Branch officials whom they did not select." *Collins*, 594 U.S. at 277–78 (Gorsuch, J., concurring in part). This means that "a modern president is more or less stuck with thousands of civil servants whom he did not appoint and have little loyalty toward him." Jason Marisam, *The President's Agency Selection Powers*, 65 Admin. L. Rev. 821, 863 (2013).

This "make[s] it virtually impossible for a President to implement his vision without the active consent and cooperation of an army of unaccountable federal employees."[6] *Feds for Med. Freedom*, 63 F.4th at 390 (Ho, J., concurring). "Even if a president has the perfect ally running an agency, that ally may still fail to produce the desired results if the ally runs into resistance from his civil servants." Marisam, 65 Admin. L. Rev. at 863. And those unelected bureaucrats are almost impossible to fire because "they enjoy a de facto form of life tenure, akin to that of Article III judges."[7] *Feds for Med. Freedom*, 63 F.4th at 391 (Ho, J., concurring). These tenure-like protections embolden some federal employees to view themselves "as a free-

---

[6] "[O]ver time the tenure-like protections for the civil service have sharply reduced the president's ability to change the direction of the permanent bureaucracy[.]" John Yoo, *Unitary, Executive, or Both?*, 76 U. Chi. L. Rev. 1935, 1956–57 (2009).

[7] These removal protections cause "a rather curious distortion of our constitutional structure." *Feds for Med. Freedom*, 63 F.4th at 390 (Ho, J., concurring).

standing interest group entitled to make demands on their superiors." *Id.* (Ho, J., concurring). And they do.

Now consider what *Humphrey's Executor*, when overread as happened here, layers on top of this. "To supervise and direct executive officers, the President must be able to remove those officers at will. Otherwise, a subordinate could ignore the President's supervision and direction without fear, and the President could do nothing about it." *PHH Corp.*, 881 F.3d at 168 (Kavanaugh, J., dissenting). An overreading of *Humphrey's Executor* upsets this scheme by blessing Congress's creation of free-floating administrative bodies that "are not supervised or directed by the President." *Id.* at 164 (Kavanaugh, J., dissenting). "[T]he President cannot remove an independent agency's officers when the agency pursues policies or makes decisions the President disagrees with." *In re Aiken Cty.*, 645 F.3d 428, 442 (D.C. Cir. 2011) (Kavanaugh, J., concurring). This effectively means that "the President does not have the final word in the Executive Branch about" policy decisions made by independent agencies.[8] *Id.* at 446 (Kavanaugh, J., concurring). And the President "lacks day-to-day control over large swaths of regulatory policy and enforcement in the Executive Branch[.]" *Id.* at 442 (Kavanaugh, J., concurring).

---

[8] The FTC's failed prosecution of Qualcomm is a perfect example, putting the FTC at odds with the DOJ, which shares authority to enforce federal antitrust laws. *See FTC v. Qualcomm Inc.*, 935 F.3d 752, 756 (9th Cir. 2019). Unlike the Executive-controlled DOJ, the President cannot rein in the FTC.

That is no small thing. "By one count, across all subject matter areas, 48 agencies have heads (and below them hundreds more inferior officials) removable only for cause." *Seila Law*, 591 U.S. at 276 (Breyer, J., dissenting) (citation omitted). These free-floating administrative bodies are, "in effect, a headless fourth branch of the U.S. Government." *PHH Corp.*, 881 F.3d at 165 (Kavanaugh, J., dissenting). They "possess extraordinary authority over vast swaths of American economic and social life—from securities to antitrust to telecommunications to labor to energy. The list goes on." *Id.* at 170 (Kavanaugh, J., dissenting). And their existence "poses a direct threat to our constitutional structure and, as a result, the liberty of the American people." *Seila Law*, 591 U.S. at 239; *see Consumers' Rsch.*, 98 F.4th at 650 (Ho, J., dissenting from denial of rehearing en banc) ("There is no accountability to the people when so much of our government is so deeply insulated from those we elect. Restoring our democracy requires regaining control of the bureaucracy."). This counsels strongly against any expansion of *Humphrey's Executor* beyond its facts and precise holding.

## IV.     The District Court Misapprehended *Humphrey's Executor*'s Sweep.

The district court's conclusion that Congress could statutorily restrict the President's Article II power to remove NLRB Board Members at will flowed from an overreading  of *Humphrey's Executor* to expand its holding and change the legal test for this narrow exception to the President's at-will removal power. *See* JA 153–

57 & nn.10–11. That was error. "[T]he *Humphrey's* exception simply does not sweep in all traditional independent agencies headed by multimember boards. *Consumers' Rsch.*, 98 F.4th at 654 (Oldham, J., dissenting from denial of rehearing en banc). And contrary to the district court, *see* JA 157–67, *Seila Law* and *Collins— not Humphrey's Executor*—control.[9]

As *Seila Law* reaffirmed, Article II's "text, first principles, the First Congress's decision in 1789, *Myers*, and *Free Enterprise Fund* all establish that the President's removal power is the rule, not the exception." 591 U.S. at 200. There are only "two exceptions—one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority[.]" *Id.* at 218; *see id.* at 239 (Thomas, J., concurring in part, dissenting in part) (joining parts of the opinion "[b]ecause the Court takes a step in the right direction by limiting *Humphrey's Executor* to 'multimember expert agencies *that do not wield substantial executive power*'"); *see also Trump*, 603 U.S. at 609 (referencing "only 'two exceptions to the President's unrestricted removal power'" (quoting *Seila Law*, 591 U.S. at 215)). *Seila Law* makes pellucid those exceptions are at the "outermost constitutional limits

---

[9] *Amicus* believes that *Humphrey's Executor* should be squarely overruled, even if doing so may not be absolutely required in this case.

of permissible congressional restrictions on the President's removal power" under the Supreme Court's precedent. 591 U.S. at 218 (cleaned up). Neither applies here.

To begin, "a principal officer is one who has no superior other than the President." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 315 (2017) (Thomas, J., concurring); *see Arthrex,* 594 U.S. at 13; *Edmond v. United States,* 520 U.S. 651, 662–63 (1997). That well describes NLRB Board Members. Thus, only the *Humphrey's Executor* exception can sustain the statutory restrictions purporting to shield these powerful executive officials from at-will removal. It cannot.

### A. The *Humphrey's Executor* Exception Is Narrow and Does Not Extend To Agencies That Possess Substantial Executive Power.

"Rightly or wrongly, the [*Humphrey*'s *Executor*] Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive power.'" *Seila Law*, 591 U.S. at 215. And "what matters is the set of powers the Court considered as the basis for its decision [in *Humphrey's Executor*], not any latent powers that the agency may have had not alluded to by the Court." *Id.* at 219 n.4. The *Humphrey's Executor* Court described the 1935 FTC as "an administrative body created by Congress to carry into effect legislative policies embodied in the statute in accordance with the legislative standard therein prescribed, and to perform other specified duties as a legislative or as a judicial aid." *Humphrey's Executor*, 295 U.S. at 628. *Cf.* Powers and Duties of the Fed. Trade Comm'n in the Conduct of Investigations, 34 Op. Att'y Gen. 553, 557 (1925) ("A main purpose of the Federal Trade Commission Act was

17

to enable Congress, through the Trade Commission, to obtain full information concerning conditions in industry to aid it in its duty of enacting legislation.").

"Such a body," the Court found, "cannot in any proper sense be characterized as an arm or an eye of the executive." *Humphrey's Executor*, 295 U.S. at 628. Based upon this understanding of the 1935 FTC, the Court concluded that this administrative body did not "exercise executive power in the constitutional sense." *Id.* And thus FTC Commissioners "occup[y] no place in the executive department and . . . exercise[] no part of the executive power vested by the Constitution in the President."[10] *Id.*

On its terms, "*Humphrey's Executor* permitted Congress to give for-cause removal protections to a multimember body, balanced along partisan lines, that performed legislative and judicial functions *and was said not to exercise any executive power*." *Seila Law*, 591 U.S. at 216 (emphasis added). Indeed,

---

[10] This understanding of the 1935 FTC's powers was informed by the parties' briefs. In a section titled "The Nature of the Federal Trade Commission," the brief for Humphrey's Executor described the FTC as "a legislative agent of Congress and an agent of the Courts." Br. for Samuel F. Rathbun, Executor, 1935 WL 32964, at *47 (U.S., filed Mar. 19, 1935). In discussing the FTC's powers, the brief asserted that the FTC's activities as a "direct agent of Congress is perhaps the most important single function performed by the Commission," "estimat[ing] that approximately one-half of the total amount expended by the Commission has been spent on account of investigations undertaken as such an agent of Congress in aid of legislation[.]" *Id.* at *44–*46. The government, for its part, effectively acknowledged that the FTC's primary duties were conducting investigations and submitting "Reports to Congress on special topics[.]" Br. for the United States, 1935 WL 32965, at *24–26 (U.S., filed April 6, 1935).

the *Humphrey's Executor* Court placed great weight on its view that the FTC's "duties are neither political nor executive, but predominantly quasi-judicial and quasi-legislative." 295 U.S. at 624.

"In 1935, the FTC satisfied the Court's test for insulation from at-will removal because it did not exercise any executive power." *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 357 (5th Cir. 2024) (Jones, J., concurring in part, dissenting in part). "*Humphrey's Executor* made no generalizations about independent agencies." *Consumers' Rsch.*, 98 F.4th at 654 (Oldham, J., dissenting from denial of rehearing en banc).

Further still, the *Humphrey's Executor* "Court's conclusion that the FTC did not exercise executive power has not withstood the test of time." *Seila Law*, 591 U.S. at 216 n.2  The Supreme Court has since made clear that however one chooses to describe the vast and varied powers wielded by independent agencies, "under our constitutional structure" *all* of those powers "must be exercises of" Article II power. *City of Arlington*, 569 U.S. at 304 n.4 (citing U.S. Const. art. II, § 1, cl. 1). "The activities of executive officers may take legislative and judicial forms, but they are exercises of—indeed, under our constitutional structure they *must be* exercises of— the executive Power[.]" *Arthrex*, 594 U.S. at 17 (cleaned up); *see Garcia v. Garland*, 64 F.4th 62, 70 n.7 (2d Cir. 2023) ("Even when an executive agency acts like a legislative or judicial actor, it still exercises executive power.").

19

This means that "regardless of their particular functions—adjudication, rulemaking, prosecution, etc.—officers within the Executive Branch exercise the executive power." *Fleming*, 987 F.3d at 1120 (Rao, J., concurring in part, dissenting in part). And "Congress lacks the power to delegate to Executive Branch officers either the legislative power or the judicial power." *Id.* at 1116 (Rao, J., concurring in part, dissenting in part) (citing *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001); *Stern v. Marshall*, 564 U.S. 462, 484 (2011)); *see Collins*, 594 U.S. at 265 n.29 (Thomas, J., concurring) (collecting cases).

### B. The NLRB Exercises Substantial Executive Power and Thus Falls Outside of the *Humphrey's Executor* Exception.

"The Supreme Court has explained" that under *Humphrey's Executor* "Congress may restrict" the President's plenary power to remove principal Officers "only for 'multimember expert agencies that *do not wield substantial executive power*.' *Consumers' Rsch.*, 98 F.4th at 650 (Oldham, J., dissenting from denial of rehearing en banc) (quoting *Seila Law*, 591 U.S. at 218); *see id.* at 657. Today's NLRB is fundamentally different from the 1935 FTC. And by any measure it exercises substantial executive power and thus falls outside the scope of the *Humphrey's Executor* exception. *See PHH Corp. v. Consumer Fin. Prot. Bureau*, 839 F.3d 1, 17 (D.C. Cir. 2016) (NLRB "exercis[es] substantial executive authority"), *rev'd,* 881 F.3d 75 (D.C. Cir. 2018) (en banc), *abrogated* in relevant part *sub nom.*, 591 U.S. 197 (2020).

"Congress created the" NLRB "[t]o enforce" the National Labor Relations Act. *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Local Union No. 174*, 598 U.S. 771, 775 (2023). It statutorily tasked the NLRB with stopping "any person from engaging in any unfair labor practice" "affecting commerce." 29 U.S.C. § 160(a). The NLRB is empowered to "bring in-house enforcement proceedings" and "seek a preliminary injunction from a federal district court while these administrative enforcement proceedings take place."[11] *Starbucks Corp. v. McKinney*, 602 U.S. 339, 342 (2024). "[T]he NLRB Members have executive prosecutorial power as 'to petition [a] United States district court . . . for appropriate temporary relief or restraining order' in response to an alleged unfair labor practice." *Space Expl. Techs. Corp. v. NLRB*, 741 F. Supp. 3d 630, 637 (W.D. Tex. 2024), *appeal filed*, No. 24-50627 (5th Cir.) (quoting 29 U.S.C. § 160(j)); *see also Overstreet ex rel. NLRB v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010) (NLRB's "[p]etition power under § 10(j) is prosecutorial in nature"). And at the end of NLRB inhouse proceedings, "the Board makes the final call." *Glacier Nw.,* 598 U.S. at 775 (citing 29 U.S.C. §§160(b),(c)).

---

[11] The NLRB's independent litigating authority and ability to bring enforcement actions directly in federal court, *see Glacier Nw*., 598 U.S. at 775 (citing 29 U.S.C. 160(e)), is a form of executive power not at issue in *Humphrey's Executor*. The FTC did not have *any* independent litigating authority until 1938—three years *after Humphrey's Executor* was decided. *See* Daniel Crane, *Debunking Humphrey's Executor*, 83 Geo. Wash. L. Rev. 1835, 1864 (2015).

The Board may also issue binding regulations. 29 U.S.C. § 156; *see, e.g.*, 88 Fed. Reg. 73,946 (Oct. 27, 2023) (changing definition of "joint employer"); *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 608 (1991) (upholding "rule defining the employee units appropriate for collective bargaining in a particular line of commerce"). That, too, is a form of executive power.[12] *See Collins*, 594 U.S. at 254.

In sum, "Congress conferred" on the Board "the authority to develop and apply fundamental national labor policy." *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 500 (1978); *see NLRB v. Curtin Matheson Sci., Inc.*, 494 U.S. 775, 786 (1990) (same). And "NLRB members clearly wield substantial executive power through their administrative, policymaking, and prosecutorial authority." *Space Expl. Techs. Corp.*, 741 F. Supp. 3d at 637; *see* 29 U.S.C. §§ 156, 160.

Therefore, the *Humphrey's Executor* exception does not apply.

## V.    The Supreme Court Has Repudiated *Humphrey's Executor*.

The district court's unjustified expansion of *Humphrey's Executor* is also in irreconcilable tension with the direction of Supreme Court precedent. Over a series of cases the Supreme "Court has repudiated almost every aspect of *Humphrey's Executor*." *Seila Law,* 591 U.S. at 239 (Thomas, J., concurring in part and dissenting in part).

---

[12] This type of power was not meaningfully considered in *Humphrey's Executor*. *See Seila Law*, 591 U.S. at 219 n.4.

That process began over twenty-five years ago in *Morrison*, which jettisoned *Humphrey's Executor*'s fiction of free-floating "quasi-judicial" and "quasi-judicial" power unmoored from any single branch of government. *See* 487 U.S. at 689–91 & nn. 28, 30. "*Morrison* expressly repudiated the substantive reasoning of *Humphrey's Executor*." *Seila Law*, 591 U.S. at 250 n.4 (Thomas, J., concurring in part and dissenting in part). Indeed, "all Members of the Court who heard *Morrison* rejected the core rationale of *Humphrey's*[.]" *Id.* at 249 (Thomas, J., concurring in part and dissenting in part); *see Morrison*, 487 U.S. at 725 (Scalia, J., dissenting) ("*Humphrey's Executor* [has been] swept into the dustbin of repudiated constitutional principles.").

Then came *Free Enterprise Fund*, which held that "multilevel protection from removal" for Officers "is contrary to Article II's vesting of the executive power in the President." 561 U.S. at 484. "[T]here can be little doubt that the *Free Enterprise* Court's wording and reasoning are in tension with *Humphrey's Executor* and are more in line with Chief Justice Taft's majority opinion in *Myers*." *In re Aiken Cty.*, 645 F.3d at 446 (Kavanaugh, J., concurring); *see id.* at 444–45 (listing examples). *Free Enterprise Fund* "created further tension (if not outright conflict) with *Humphrey's Executor*." *Seila Law*, 591 U.S. at 249 (Thomas, J., concurring in part, dissenting in part).

23

Next, in *Seila Law* this Court expressly cabined *Humphrey's Executor* to "multimember expert agencies that do not wield substantial executive power[.]" *Id.* at 218. Thus, after *Seila Law* "*Humphrey's Executor* does not even satisfy its own exception."[13] *Id.* at 250 (Thomas, J., concurring in part and dissenting in part). With *Seila Law*, this Court "repudiated almost every aspect of *Humphrey's Executor*." *Id.* at 239 (Thomas, J., concurring in part, dissenting in part).

*Collins* continued to chip away at whatever remained of *Humphrey's Executor*'s friable foundation, extending *Seila Law* and observing that "the nature and breadth of an agency's authority is not dispositive in determining whether Congress may limit the President's power to remove its head." 594 U.S. at 251–52; *see id.* at 273 (noting "majority's extension of *Seila Law*'s holding") (Kagan, J., concurring in part, dissenting in part). "After *Collins*, the only question left on the table appears to be whether an officer protected by a removal restriction exercises executive power." Andrew M. Grossman & Sean Sandoloski, *The End of Independent Agencies? Restoring Presidential Control of the Executive Branch*, 22 Federalist Soc'y Rev. 216, 222 (2021).

---

[13] "[I]t is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree.'" *Morrison*, 487 U.S. at 689 n.28. "[T]he FTC has evolved significantly over time." *Consumers' Rsch.*, 91 F.4th at 357. "[T]he FTC of today wields vastly more *executive* power than it did when the Supreme Court first considered its constitutionality during FDR's first term." *Consumers' Rsch.*, 98 F.4th at 648 (Willett, J., concurring in denial of rehearing en banc).

Just last year the Supreme Court noted that it has "held that Congress lacks authority to control the President's 'unrestricted power of removal' with respect to 'executive officers of the United States whom he has appointed.'" *Trump*, 603 U.S. at 608–09 (quoting *Myers*, 272 U.S. at 106, 176). It then observed that "[t]he President's management of the Executive Branch requires him to have unrestricted power to remove the most important of his subordinates . . . in their most important duties." *Id.* at 621 (cleaned up). And it reiterated that the removal authority is one of the President's "core constitutional powers" "within his exclusive sphere of constitutional authority." *Id.* at 606–09. Assuming one was even needed, that decision may well put the nail in *Humphrey's Executor*'s coffin.

In sum, put charitably, *Humphrey's Executor* is "nearly, *nearly*, zombified precedent." *Consumers' Rsch.*, 98 F.4th at 648 n.10 (Willett, J., concurring in denial of rehearing en banc).  And it is time for the Supreme Court to "place[] a tombstone on [*Humphrey's Executor*] no one can miss." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 417 (2024) (Gorsuch, J. concurring). But after *Seila Law*, "only a very narrow reading of . . . [*Humphrey's*] is still good law" and there is "little to nothing is left of the *Humphrey*'s exception to the general rule that the President may freely remove his subordinates." *Severino*, 71 F.4th at 1050 (Walker, J., concurring). This Court "should resolve questions about the scope of" *Humphrey's Executor* "in light of and in the direction of the constitutional text and constitutional history." *Free*

*Enter. Fund*, 537 F.3d at 698 (Kavanaugh, J., dissenting). This means that "[f]irst principles, not *Humphrey's Executor*, control here. This unaccountable agency violates them." *PHH Corp.*, 881 F.3d at 139 (Henderson, J., dissenting).

Indeed, the Supreme Court "has doubted Congress's ability to vest *any* judicial power (whether 'quasi' or not) in an executive agency," which suggests "it might be that little to nothing is left of the *Humphrey's* exception to the general rule that the President may freely remove his subordinates." *Severino*, 71 F.4th at 1050 (Walker, J., concurring) (citing *Oil States Energy Services, LLC v. Greene's Energy Group, LLC*, 584 U.S. 325, 333–34 (2018)).

## CONCLUSION

For the above reasons, this Court should reverse the district court.

Respectfully submitted,

/s/ Michael Pepson
Michael Pepson
AMERICANS FOR PROSPERITY FOUNDATION
4201 Wilson Blvd., Ste. 1000
Arlington, VA 22203
571.329.4529
mpepson@afphq.org

26

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of FRAP 29(a)(5) and FRAP 32(a)(7)(B) because it contains 6,325 words. This brief also complies with the typeface and type-style requirements of FRAP 32(a)(5)-(6) because it was prepared using Microsoft Word in Times New Roman 14-point font.

Dated: March 28, 2025

   /s/ Michael Pepson
_____

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2025, I electronically filed the above Brief of Amicus Curiae Americans for Prosperity Foundation in Support of Appellants with the Clerk of the Court by using the appellate CM/ECF system. I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

_/s/ Michael Pepson_____