Nos. 25-5055, 25-5057

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

CATHY A. HARRIS, in her personal capacity and in her official capacity
as Member of the Merit Systems Protection Board,
*Plaintiff-Appellee*,

v.

SCOTT BESSENT, in his official capacity as
Secretary of the Treasury, et al.,
*Defendants-Appellants.*

On Appeal from the U.S. District Court for the District of Columbia,
No. 1:25-cv-00412 (Hon. Rudolph Contreras, J.)

GWYNNE A. WILCOX,
*Plaintiff-Appellee*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, et al.,
*Defendants-Appellants.*

On Appeal from the U.S. District Court for the District of Columbia,
No. 1:25-cv-00334 (Hon. Beryl A. Howell, J.)

## BRIEF OF AMICUS CURIAE PUBLIC CITIZEN IN SUPPORT OF
## PLAINTIFFS-APPELLEES AND AFFIRMANCE

Nicolas A. Sansone
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

April 9, 2025                    *Attorneys for Amicus Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A. Parties and Amici.** All parties and intervenors appearing before the district court and in this Court to date are listed in the Brief for Appellants and Briefs for Appellees. Those briefs also list all amici curiae that participated in the district court and in this Court as of the time the briefs were filed. Amicus curiae Public Citizen, which submits this brief, is not listed in those briefs. The required corporate disclosure statement for Public Citizen is set forth below.

**B. Rulings Under Review.** References to the rulings at issue appear in the Brief for Appellants.

**C. Related Cases.** These cases have not previously been before this Court. Except for the cases identified in the Brief for Appellants and Briefs for Appellees, counsel are unaware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rules 26.1 and 29(b), amicus curiae Public Citizen states that it is a non-stock, nonprofit corporation. It has no parent corporation, and no publicly held corporation owns 10 percent or more of Public Citizen. Public Citizen is devoted, among other things, to promoting good governance and the separation of powers.

## STATEMENT REGARDING CONSENT TO FILE, AUTHORSHIP, FINANCIAL CONTRIBUTIONS, AND SEPARATE BRIEFING

Appellants and Appellees in both cases have consented to the filing of this brief. Amicus curiae Public Citizen filed its notice of intent to participate as amicus curiae in this Court on April 9, 2025. No counsel for a party authored this brief in whole or in part, and no person other than amicus curiae, its members, or its counsel contributed money that was intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

Pursuant to D.C. Circuit Rule 29(d), counsel for amicus curiae Public Citizen certifies that a separate brief is necessary to provide a perspective informed by Public Citizen's long history of involvement in significant separation of powers cases addressing Congress's authority to safeguard the independence of an agency that would be compromised in its ability to carry out its statutory mission if the agency's members could be removed by the President without cause.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..................................................................................i

CORPORATE DISCLOSURE STATEMENT ...........................ii

STATEMENT REGARDING CONSENT TO FILE, AUTHORSHIP, FINANCIAL CONTRIBUTIONS, AND SEPARATE BRIEFING ......... iii

TABLE OF AUTHORITIES ....................................................v

GLOSSARY ..........................................................................vii

STATUTES AND REGULATIONS ..........................................1

INTEREST OF AMICUS CURIAE ...........................................1

SUMMARY OF ARGUMENT ..................................................2

ARGUMENT .........................................................................3

    Congress's protections for NLRB and MSPB members against removal without cause by the President do not violate constitutional separation of powers principles................................3

CONCLUSION .....................................................................15

CERTIFICATE OF COMPLIANCE........................................16

CERTIFICATE OF SERVICE................................................17

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*
403 U.S. 388 (1971) .................................................................8

*Collins v. Yellen,*
594 U.S. 220 (2021) .................................................................7

*Free Enterprise Fund v. Public Co. Accounting Oversight Board,*
561 U.S. 477 (2010) .................................................................8

*Hein v. Freedom from Religion Foundation, Inc.,*
551 U.S. 587 (2007) .................................................................9

*Humphrey's Executor v. United States,*
295 U.S. 602 (1935) ....................................... 2, 4, 5, 6, 7, 10, 11, 12, 13

*Kalaris v. Donovan,*
697 F.2d 376 (D.C. Cir. 1983)....................................................14, 15

*Kaufmann v. Kijakazi,*
32 F.4th 843 (9th Cir. 2022)........................................................14

*Mallory v. Norfolk Southern Railway Co.,*
600 U.S. 122 (2023) .................................................................7

*Morrison v. Olson,*
487 U.S. 654 (1988) ..............................................................7, 8, 14

*Seila Law LLC v. Consumer Financial Protection Bureau,*
591 U.S. 197 (2020) ..........................................5, 7, 8, 9, 12, 14

*Trump Plaza Associates v. National Labor Relations Board,*
679 F.3d 822 (D.C. Cir. 2012)........................................................5

*United States v. Johnson,*
   921 F.3d 991 (11th Cir. 2019) ............................. 10

*Wiener v. United States,*
   357 U.S. 349 (1958) .................................... 13, 14

*Ziglar v. Abbasi,*
   582 U.S. 120 (2017) ........................................ 9

**Statutes**

5 U.S.C. § 1201 ............................................... 5

5 U.S.C. § 1202 ............................................... 5

5 U.S.C. § 1202(d) ........................................... 4

5 U.S.C. § 1204 ............................................... 6

29 U.S.C. § 153(a) ........................................ 4, 5

29 U.S.C. § 160 ............................................... 6

29 U.S.C. § 161 ............................................... 6

Federal Trade Commission Act,
   Pub. L. No. 63-203, 38 Stat. 717 (1914) ............... 11

# GLOSSARY

| | |
|---|---|
| FTC | Federal Trade Commission |
| MSPB | Merit Systems Protection Board |
| NLRB | National Labor Relations Board |

## STATUTES AND REGULATIONS

Pertinent statutes and regulations appear in the Addendum to the Brief for Appellee in *Harris v. Bessent* and in the Brief for Appellee in *Wilcox v. Trump*.

## INTEREST OF AMICUS CURIAE

Amicus curiae Public Citizen is a nonprofit consumer advocacy organization with members in all fifty states. Public Citizen works before Congress, administrative agencies, and courts to advance the interests of consumers, workers, and the public. Public Citizen has a strong interest in robust enforcement of statutory and contractual protections for private- and public-sector workers and unions, and it recognizes the vital role that the National Labor Relations Board (NLRB) and Merit Systems Protection Board (MSPB) play in enforcing those protections.

Public Citizen also has a longstanding interest in issues relating to the constitutional separation of powers. Relevant here, Public Citizen has filed amicus briefs in the U.S. Supreme Court and federal courts of appeals explaining that Congress may constitutionally safeguard the independence of expert executive bodies by protecting their members against removal without cause by the President. *See, e.g.*, *SEC v. Jarkesy*,

603 U.S. 109 (2024); *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020); *Morrison v. Olson*, 487 U.S. 654 (1988); *Sun Valley Orchards, LLC v. U.S. Dep't of Labor*, No. 23-2608 (3d Cir.) (pending); *Magnetsafety.org v. Consumer Product Safety Comm'n*, 129 F.4th 1253 (10th Cir. 2025); *Illumina, Inc. v. FTC*, 88 F.4th 1036 (5th Cir. 2023).

Public Citizen submits this brief because it is concerned that the constitutional arguments that the government raises in this case, if accepted, would dramatically compromise the ability of independent agencies to conduct their work free of political influence.

## SUMMARY OF ARGUMENT

Contending that the statutory protections that members of the NLRB and MSPB enjoy against removal without cause by the President violate Article II of the U.S. Constitution, the government advances an argument that the Supreme Court definitively rejected in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). That case held that statutory for-cause removal protections for the principal members of a multimember independent agency that performs regulatory and adjudicatory roles are consistent with the Constitution's separation of powers. Although the government attempts to cast *Humphrey's Executor*

as a disfavored precedent with no application beyond its precise factual circumstances, the Supreme Court has recently—and repeatedly—declined to revisit that binding precedent. This Court's duty is thus to apply it faithfully.

Similarly unpersuasive is the government's effort to distinguish *Humphrey's Executor* by arguing that the NLRB and MSPB exercise greater executive power than the independent agency at issue in that case. *Humphrey's Executor* expressly contemplated that Congress could lawfully provide statutory removal protections for members of an executive agency that—like the NLRB and MSPB—executes legislative directives through administrative adjudications, independent litigation in court, and interstitial policymaking. The government has identified no feature of either agency that extends materially beyond those functions.

## ARGUMENT

### Congress's protections for NLRB and MSPB members against removal without cause by the President do not violate constitutional separation of powers principles.

In the National Labor Relations Act of 1935, Congress determined that NLRB members "may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other

cause." 29 U.S.C. § 153(a). And in the Civil Service Reform Act of 1978, Congress similarly determined that MSPB members "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). The government's arguments that these statutory protections unconstitutionally encroach on the President's Article II authority to oversee the executive branch are meritless.

**A.** The Supreme Court has already confronted and unanimously rejected the Article II argument that the government advances here. In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court found it "plain under the Constitution that illimitable power of removal is not possessed by the President in respect of" the principal officers of a multimember commission with regulatory and adjudicatory authority— in that case, the Federal Trade Commission (FTC). *Id.* at 629. Where Congress tasks an "administrative body" with "carry[ing] into effect legislative policies embodied in [a] statute in accordance with the legislative standard therein prescribed," *id.* at 628, and where that body is composed of "nonpartisan" members who are "called upon to exercise the trained judgment of a body of experts," *id.* at 624, the Court concluded that Congress may permissibly allow the body's members to "maintain,"

to some degree, "an attitude of independence against the [President's] will" by "forbid[ding] their removal except for cause," *id.* at 629.

The NLRB and MSPB are precisely the sort of administrative bodies that the Court considered in *Humphrey's Executor*. The NLRB consists of five members, who are appointed by the President with the advice and consent of the Senate to staggered five-year terms, 29 U.S.C. § 153(a), and the MSPB consists of three members, no more than two of whom may belong to the same political party, who are appointed by the President with the advice and consent of the Senate to staggered seven-year terms, 5 U.S.C. §§ 1201–1202; *see Humphrey's Executor*, 295 U.S. at 619–20 (describing the FTC's similar structure).[1] Like the FTC, the NLRB and MSPB are "bod[ies] of experts" within their fields. *Humphrey's Executor*, 295 U.S. at 624; *see Trump Plaza Assocs. v. NLRB*, 679 F.3d 822, 827 (D.C. Cir. 2012) (characterizing the NLRB as "a special and expert body" (quoting *C.J. Krehbiel Co. v. NLRB*, 844 F.2d 880, 885 (D.C. Cir. 1988) (per curiam))); 5 U.S.C. § 1201 (providing that MSPB members

---

[1] Although there is no statutory requirement for partisan balance on the NLRB, the members' staggered terms ensure that every President who serves a full four-year term will "have an[] opportunity to shape its leadership" and "help bring the agency in line with the President's preferred policies." *Seila Law LLC v. CFPB*, 591 U.S. 197, 225 (2020).

"shall be individuals who, by demonstrated ability, background, training, or experience are especially qualified to carry out [their] functions"). And the rulemaking and adjudicatory functions of the NLRB and MSPB closely resemble the "quasi legislative" and "quasi judicial powers" of the FTC. *Humphrey's Executor*, 295 U.S. at 628; *see id.* at 620–21 (describing the FTC's functions); 29 U.S.C. §§ 160–161 (describing similar functions of the NLRB); 5 U.S.C. § 1204 (describing similar functions of the MSPB).

The government attempts to cast doubt on the continued vitality of *Humphrey's Executor* by claiming that it rests on "repudiated reasoning" and so "can be understood as precedential only as to the specific question it resolved." Gov't Br. 21. The "specific question" that *Humphrey's Executor* resolved, however, is whether Article II prohibits Congress from conferring for-cause removal protections on the members of a multimember expert body like the NLRB or MSPB. *Humphrey's Executor* answered that question "no," and that conclusion binds this Court.

To the extent that the government suggests that this Court should refuse to apply the holding of *Humphrey's Executor* beyond the FTC, no matter how squarely the precedent applies, the government asks this Court to exceed its authority. As the Supreme Court has cautioned, "'[i]f

a precedent of th[e] [Supreme] Court has direct application in a case,' …
a lower court 'should follow the case which directly controls, leaving to
th[e] [Supreme] Court the prerogative of overruling its own decisions.'"
*Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) (quoting *Rodriguez
de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). And
in the case of *Humphrey's Executor*, the Supreme Court has declined to
exercise that prerogative. *See Seila Law LLC v. CFPB*, 591 U.S. 197, 228
(2020) (declining to "revisit" *Humphrey's Executor*); *see also Collins v.
Yellen*, 594 U.S. 220, 250–51 (2021) (noting that the case remains
precedential).

In any event, the government is incorrect that the reasoning in
*Humphrey's Executor* no longer holds up. To be sure, the Supreme Court
has recognized that the statement in *Humphrey's Executor* that the FTC
"exercises no part of the executive power," 295 U.S. at 628, has "not
withstood the test of time." *Seila Law*, 591 U.S. at 216 n.2. But despite
acknowledging that "the powers of the FTC at the time of *Humphrey's
Executor* would at the present time be considered 'executive,'" *Morrison
v. Olson*, 487 U.S. 654, 689 n.28 (1988), the Court has made clear that
the case's outcome turned on the substance of the FTC's powers and not

on the label applied to them. Indeed, the Court has since clarified that *Humphrey's Executor* recognized an "exception[]" to the President's "power to remove … those who wield *executive* power on his behalf." *Seila Law*, 591 U.S. at 204 (emphasis added); *see Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 495 (2010) (describing *Humphrey's Executor* as involving "protected tenure separat[ing] the President from an officer exercising executive power"). The government's claim that *Humphrey's Executor* applies only to executive agencies that "exercise no executive power"—*i.e.*, to no executive agencies at all—is thus plainly wrong. Gov't Br. 20.

At bottom, the "real question" for Article II purposes is not whether a tenure-protected officer holds an executive role, but whether the protections "are of such a nature that they impede the President's ability to perform his constitutional duty." *Morrison*, 487 U.S. at 691. As *Humphrey's Executor* held, and as the Supreme Court has continued to acknowledge in the ninety years since, tenure protections for members of multimember bodies like the NLRB and MSPB are not of such a nature.

**B.** Analogizing *Humphrey's Executor* to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971),

the government suggests that intervening Supreme Court case law has instructed lower courts to "extend th[e] case[] no further." Gov't Br. 24. In the case of *Bivens*, however, the Supreme Court has expressly directed that "expanding" the case's reach would be "a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)); *see Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 610 (2007) (plurality opinion) (stating, in the context of taxpayer standing, that the Court "[i]n effect" has "adopted the position" that the relevant precedent must be confined to its facts).

The Court has given no such direction as to the application of *Humphrey's Executor*. Although the Court found "compelling reasons not to extend th[at] precedent[] to the novel context of an independent agency led by a single Director," *Seila Law*, 591 U.S. at 204, the Court noted in the same case that a statutory provision that unconstitutionally insulated the head of a single-Director agency from removal without cause could be cured by "converting the [agency] into a multimember agency," *id.* at 237 (plurality opinion). Far from demonstrating that *Humphrey's Executor* cannot be applied to agencies beyond the FTC, then, subsequent Supreme Court precedent establishes the opposite.

Accordingly, unless and until the Supreme Court holds otherwise, this Court "must apply [*Humphrey's Executor*] neither narrowly nor liberally—only faithfully." *United States v. Johnson*, 921 F.3d 991, 1001 (11th Cir. 2019) (en banc).

**C.** The government also attempts to distinguish *Humphrey's Executor* on the facts. Specifically, the government contends that the NLRB and MSPB "exercise materially different and materially greater executive power than the 1935 FTC" and so must be subject to greater presidential control. Gov't Br. 22. The facts, however, do not support the government's contention.

As for the NLRB, the government emphasizes the agency's power to adjudicate administrative complaints and award remedies, litigate in court, formulate executive policy, and promulgate substantive rules. *Id.* at 27–30. But *Humphrey's Executor* recognized that the FTC holds comparable powers. As the Supreme Court acknowledged, Congress empowered the FTC to adjudicate complaints, award remedies, and litigate in court to enforce its orders. *See Humphrey's Executor*, 295 U.S. at 620–21 (citing 15 U.S.C. § 45). And since its inception, the FTC has enjoyed broad authority to make policy, including by issuing substantive

regulations. *See* Federal Trade Commission Act, Pub. L. No. 63-203, § 6(g), 38 Stat. 717, 722 (1914), *codified as amended at* 15 U.S.C. § 46(g); *cf. Humphrey's Executor*, 295 U.S. at 618–19 (citing President Franklin D. Roosevelt's disagreement with a sitting FTC Commissioner over trade "policies" as the basis for the Commissioner's termination).

Despite the similarities between the NLRB's and FTC's respective powers, the government suggests that the Supreme Court's decision in *Seila Law* somehow recharacterized these powers as incompatible with for-cause removal protections. The government, however, misreads that opinion.

First, although the government claims that *Seila Law* viewed an agency's independent litigating authority as "a quintessentially executive power not considered in *Humphrey's Executor*," Gov't Br. 28 (quoting *Seila Law*, 591 U.S. at 219), *Humphrey's Executor* expressly noted the FTC's power to "apply to the appropriate Circuit Court of Appeals" to enforce its orders. 295 U.S. at 620–21. The power that *Seila Law* characterized as going beyond the powers considered in *Humphrey's Executor* was, instead, an agency's power to initiate a freestanding civil action, unrelated to the enforcement of an administrative order, to "seek

daunting monetary penalties against private parties." 591 U.S. at 219. The government does not contend that the NLRB has such authority. *See* Gov't Br. 28 (citing the NLRB's authority to bring a civil suit for *injunctive* relief or, like the FTC, to petition for enforcement of its orders).

Second, the government states that, under *Seila Law*, "an agency's ability to 'unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications' places it outside the domain of *Humphrey's Executor*." *Id.* (quoting *Seila Law*, 591 U.S. at 219). Here too, though, *Humphrey's Executor* expressly noted the FTC's authority to conduct legally binding adjudications. *See* 295 U.S. at 620–21. The relevant passage in *Seila Law* expressed concern over conferring for-cause removal protection on an *individual* who could "unilaterally" order administrative relief. 591 U.S. at 219; *see id.* at 223 (explaining that the constitutional structure "scrupulously avoids concentrating power in the hands of any single individual"). But *Seila Law*'s observation that Congress cannot lawfully confer tenure protection on "principal officers who wield power alone rather than as members of a board or commission" has no bearing on the multimember NLRB. *Id.* at 220.

As for the MSPB, the government emphasizes that the MSPB has power to conduct administrative adjudications and order remedies, including monetary civil penalties. Gov't Br. 33–34. These functions, though, do not distinguish the MSPB from other agencies whose independence the Supreme Court has unanimously upheld. *See Humphrey's Executor*, 295 U.S. at 620–21 (describing the FTC's adjudicatory and remedial powers); *Wiener v. United States*, 357 U.S. 349, 354–55 (1958) (describing the powers of the independent War Claims Commission, including the power to make monetary awards). And although the government highlights the MSPB's authority to block the unlawful regulations and personnel actions of other executive agencies, Gov't Br. 34–35, this responsibility only underscores why a degree of independence is necessary.

The government's position that the need for adjudicatory independence is insufficient justification for MSPB members' removal protections, *id.* at 37, cannot be squared with *Humphrey's Executor*. There, the Court observed that the FTC Commissioners' need to "act with entire impartiality" due to their "quasi judicial" role was a critical factor supporting their independence. 295 U.S. at 624. Since then, the Supreme

Court has continued to recognize that Congress may attempt to establish "a body that [is] 'entirely free from the control or coercive influence, direct or indirect,'" of the President, where that body exercises powers of an "intrinsic judicial character." *Wiener*, 357 U.S. at 355 (quoting *Humphrey's Executor*, 295 U.S. at 629); *see Morrison*, 487 U.S. at 691 n.30 ("It is not difficult to imagine situations in which Congress might desire that an official performing 'quasi-judicial' functions … would be free of executive or political control.").

The government cites *Kalaris v. Donovan*, 697 F.2d 376 (D.C. Cir. 1983), for the proposition that "purely adjudicatory bodies are not intrinsically separate and independent from presidential control," Gov't Br. 36, but *Kalaris* has no relevance here.[2] That case involved an adjudicatory board created by a statute that was "silent concerning the members' tenure and the terms of their removal." 697 F.2d at 380. It was

---

[2] The government also cites two out-of-circuit decisions invalidating the statutory removal protections of the Commissioner for Social Security. *See* Gov't Br. 36 (citing *Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302 (11th Cir. 2024), and *Kaufmann v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022)). But as "the head of an agency with a single top officer," *Kaufmann*, 32 F.4th at 848 (quoting *Collins*, 594 U.S. at 256), the Commissioner falls outside *Humphrey's Executor's* rule that Congress may give for-cause removal protection to the members of "multimember bodies with 'quasi-judicial' … functions." *Seila Law*, 591 U.S. at 217.

in this context that this Court held that, "*in the absence of a congressional statement to the contrary*," members of the board, "serve[d] indefinite terms at the discretion of their appointing officers." *Id.* at 397 (emphasis added). Here, in contrast, Congress spoke clearly in establishing MSPB members' insulation from removal without cause—and it had good reason to do so. As *Humphrey's Executor* and its progeny have stated time and again, Congress's decision to safeguard the independence of a multimember adjudicatory body fully comports with the Constitution.

## CONCLUSION

This Court should affirm the decisions below.

Respectfully submitted,

/s/ Nicolas A. Sansone
Nicolas A. Sansone
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Amicus Curiae*

April 9, 2025

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and the Rules of this Court, it contains 2,901 words.

This brief also complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 29(a)(4), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Nicolas A. Sansone
Nicolas A. Sansone
*Attorney for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief of Amicus Curiae with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit on April 9, 2025, using the CM/ECF e-filing system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Nicolas A. Sansone
Nicolas A. Sansone
*Attorney for Amicus Curiae*