**ORAL ARGUMENT SCHEDULED FOR MAY 16, 2025**
**NOS. 25-5037, 25-5055, 25-5057**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

CATHY A. HARRIS, IN HER PERSONAL CAPACITY AND IN HER
OFFICIAL CAPACITY AS MEMBER OF THE MERIT SYSTEMS
PROTECTION BOARD,

*Plaintiff-Appellee,*

v.

SCOTT BESSENT, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE
TREASURY, *et al.,*

*Defendants-Appellants.*

---

GWYNNE A. WILCOX,

*Plaintiff-Appellee,*

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE
UNITED STATES, *et al.,*

*Defendants-Appellants.*

---

On appeal from the United States District Court
for the District of Columbia

---

**BRIEF OF 253 MEMBERS OF CONGRESS AS *AMICI CURIAE* IN
SUPPORT OF APPELLEES AND AFFIRMANCE**

---

Anthony Schoenberg
Alexis Loeb
John Ugai
Raven Quesenberry*
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400
tschoenberg@fbm.com;
aloeb@fbm.com; jugai@fbm.com;
rquesenberry@fbm.com
*Counsel for Amici Curiae*

## STATEMENT REGARDING CONSENT TO FILE
## AND SEPARATE BRIEFING

Pursuant to D.C. Circuit Rule 29(b), undersigned counsel for *Amici Curiae* represents that counsel for all parties have consented to the filing of this brief.

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel for *Amici* certifies that a separate brief is necessary. *Amici* are 253 elected Members of Congress, who have a strong interest in defending Congress's authority to enact removal protections for the boards and commissions of independent agencies like the National Labor Relations Board and Merit Systems Protection Board. As Members of Congress, *Amici* provide distinct expertise regarding the history of Congress's reliance on this authority since the Constitution's adoption to empower independent agencies to fulfill their statutory charges.

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amici Curiae* state that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### I.     Parties and *Amici Curiae*

Except for *Amici Curiae* and any other *amici* who had not yet entered an appearance in this case to date, all parties, intervenors, and *amici* appearing in this Court are listed in Appellants' opening brief and Appellee Gwynne A. Wilcox's brief.

### II.    Rulings Under Review

References to the rulings under review appear in Appellants' opening brief.

### III.   Related Cases

References to any related cases pending before this Court appear in Appellants' opening brief, Appellee Cathy A. Harris's brief, and Appellee Gwynne A. Wilcox's brief.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF AUTHORITIES ........................................................................v

INTEREST OF AMICI CURIAE ...............................................................1

SUMMARY OF ARGUMENT .................................................................2

ARGUMENT .........................................................................................3

I.  All Three Branches Have Long Recognized that Congress Can Create Multimember Independent Agencies. ...............................................4

    A.  Throughout Its History, Congress Has Exercised Its Authority to Protect Members of Independent Agency Boards and Commissions from At-Will Removal. ...................................5

    B.  For the Last Ninety Years, the Supreme Court Has Continuously Held that Congress May Enact For-Cause Removal Protections for Members of Independent Agency Boards and Commissions. ..........................................................7

    C.  Congress Has Created Over Thirty Multimember Independent Agencies in Reliance on *Humphrey's Executor*. ................................11

    D.  Precedent and Practice Support the Tradition of Multimember Independent Agencies Affirmed by *Humphrey's Executor*...............17

II.  The Independence of the NLRB and MSPB Play a Critical Role in Each Agency's Ability to Fulfill Its Congressional Mandate. ......................18

    A.  The NLRB's Independence Furthers Its Mission of Impartial Resolution of Labor Disputes. ..............................................18

    B.  The MSPB's Independence Furthers Its Mission of Protecting Federal Employees. ...........................................................20

CONCLUSION .....................................................................................22

LIST OF AMICI CURIAE ......................................................................24

CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMIT .................34

CERTIFICATE OF SERVICE .................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*A.L.A. Schechter Poultry Corp. v. United States*,
    295 U.S. 495 (1935)......................................................................19, 20

*Buckley v. Valeo*,
    424 U.S. 1 (1976).................................................................................4

*Collins v. Yellen*,
    594 U.S. 220 (2021).........................................................................3, 10

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010).........................................................................7, 10

*Hubbard v. United States*,
    514 U.S. 695 (1995)...........................................................................17

*Humphrey's Executor v. United States*,
    295 U.S. 602 (1935)..............................................................2, 9, 11, 19

*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
    103 F.4th 748 (10th Cir. 2024) .............................................................10

*Marbury v. Madison*,
    5 U.S. 137 (1803)................................................................................8

*McCulloch v. Maryland*,
    17 U.S. 316 (1819).............................................................................4, 8

*Meta Platforms, Inc. v. Fed. Trade Comm'n*,
    723 F. Supp. 3d 64 (D.D.C. 2024)........................................................10

*Mistretta v. United States*,
    488 U.S. 361 (1989)..............................................................................3

*Morrison v. Olson*,
    487 U.S. 654 (1988)..............................................................................9

*Myers v. United States*,
    272 U.S. 52 (1926)..............................................................................19

*NLRB v. Noel Canning*,
  573 U.S. 513 (2014)................................................................3

*Okanogan v. United States*,
  279 U.S. 655 (1929)................................................................3

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
  591 U.S. 197 (2020).....................................................3, 6, 7, 10

*Wiener v. United States*,
  357 U.S. 349 (1958)............................................................9, 16

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952)................................................................3

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
  576 U.S. 1 (2015)................................................................3

## FEDERAL STATUTES

5 U.S.C.
  § 1201................................................................12
  § 1202(d)................................................................14
  § 1203................................................................12
  § 1204(k)-(l)................................................................12
  § 7104(b)................................................................14
  § 7521(a)................................................................22

10 U.S.C.
  § 183(b)(3)................................................................16
  § 1114(a)(2)(A)................................................................16

15 U.S.C.
  § 2053(a)................................................................13

16 U.S.C.
  § 1852(b)(6)................................................................16

22 U.S.C.
  § 2131(b)(2)(D)................................................................15

§ 2131(b)(3) ....................................................................................15
§ 4106(e) ........................................................................................14
§ 4135(d) ........................................................................................14
§ 4605(f) .........................................................................................13

25 U.S.C.
§ 2704(b)(6) ....................................................................................15

28 U.S.C.
§ 991 ..............................................................................................15

29 U.S.C.
§ 151 ..............................................................................................22
§ 153(a) ...................................................................................11, 14
§ 155 ..............................................................................................11
§160 ...............................................................................................11
§ 661(b) .........................................................................................13

30 U.S.C.
§ 823(b)(1)(B) ................................................................................13

39 U.S.C.
§ 202(e)(3) .....................................................................................15
§ 502(a) ..........................................................................................15

41 U.S.C.
§ 7105(b)(3) ...................................................................................15

42 U.S.C.
§ 254j(b) ........................................................................................13
§ 1975(e) ........................................................................................14
§ 1975a ..........................................................................................14
§ 2996c(e) ......................................................................................14
§ 5841 ............................................................................................16
§ 7171(b)(1) ...................................................................................16
§ 7412(r)(6) ....................................................................................13
§ 10703(h) ......................................................................................15

45 U.S.C.
§ 154 ................................................................................................7

46 U.S.C.
  § 46101(b)(5) ...................................................................................15

49 U.S.C.
  § 106(p)(6)(E) ..................................................................................13
  § 1111(c) ..........................................................................................13
  § 1301..............................................................................................15

*An Act Making Provision for the Reduction of the Public Debt*,
  Chapter 47 § 2, 1 Stat. 186 (1790).........................................................5

*An Act to Incorporate the Subscribers to the Bank of the United
  States*, Chapter 10 § 4, 1 Stat. 191 (1791) .............................................5

*An Act to Incorporate the Subscribers to the Bank of the United
  States*, Chapter 44 § 8, 3 Stat. 266 (1816) .............................................5

*An Act to Provide for the Government of the Territory Northwest of
  the River Ohio*, Chapter 8 § 1, 1 Stat. 50 (1789) ....................................5

*Atomic Energy Act of 1946*,
  Pub. L. No. 585, 60 Stat. 755, 756-757 (1946) ..................................16

*Banking Act of 1933*,
  Pub. L. No. 73-66 § 8, 48 Stat. 168 (1933) ...........................................6

*Banking Act of 1935*,
  Pub. L. No. 74-305 § 203(b), 49 Stat. 704 (1935)..................................6

*Bipartisan Campaign Reform Act of 2002*,
  Pub. L. No. 107-155, 116 Stat. 81 (2002) .............................................4

*Civil Service Reform Act of 1978*,
  Pub. L. No. 95-454, 92 Stat. 1111 (1978) .............................................12, 21, 22

*Federal Reserve Act*,
  Chapter 6 § 10, 38 Stat. 260 (1913).......................................................6

*Federal Trade Commission Act*,
  Chapter 311 § 5, 38 Stat. 719 (1914)......................................................7

*Interstate Commerce Act*,
  Pub. L. No. 49-41, Chapter 104 § 11, 24 Stat. 379 (1887)....................6

*Merchant Marine Act of 1936*,
Pub. L. 74-835, 49 Stat. 1985 (1936) ...................................................15

*National Labor Relations Act*,
Chapter 372 § 3, 49 Stat. 449 (1935)...................................................11

*Reorganization Plan No. 2 of 1978*,
43 F.R. 36037, 92 Stat. 3783 (1978)...........................................20, 21

*War Claims Act of 1948*,
Pub. L. 80-896, 62 Stat. 1240 (1948) ...................................................16

## FEDERAL RULES AND REGULATIONS

D.C. Circuit Rule 29(a)(4)(E) ....................................................................1

## OTHER AUTHORITIES

51 Cong. Rec. 10376 (1914) .........................................................................7

79 Cong. Rec. 9678 (1935) .....................................................................19, 20

79 Cong. Rec. 9725 (1935) .........................................................................19

Adrian Vermeule, *Conventions of Agency Independence*,
113 Colum. L. Rev. 1163 (2013)........................................................19

H.R. Rep. No. 63 (1913) ..............................................................................6

Kirti Datla & Richard L. Revesz, *Deconstructing Independent
Agencies (and Executive Agencies)*,
98 Cornell L. Rev. 769 (2012-2013) ...........................................11, 12

President Jimmy Carter, *Federal Civil Service Reform Message to
Congress* (Mar. 2, 1978), https://perma.cc/2URA-FJRR ...................12

Richard E. Levy, *Restoring ALJ Independence*,
105 Minn. L. Rev. 39, 96 (2020-2021)........................................21, 22

U.S. Merit System Protection Board, *About MSPB*,
https://www.mspb.gov/about/about.htm............................................21

Walker J. Gray, *"Dependent" Independent Agencies: How Humphrey's Executor Envisioned Independent Agencies and the NLRB's Inconsistency with This Vision*, 53 Colum. L. Rev. 77 (2022-2023)....................................................................19

# GLOSSARY

| | |
|---|---|
| FTC | Federal Trade Commission |
| MSPB | Merit Systems Protection Board |
| NLRB | National Labor Relations Board |

## INTEREST OF AMICI CURIAE[1]

*Amici Curiae* are 253 Members of Congress, who share the Court's interest in preserving the separation of powers. They have a strong interest in defending Congress's authority to enact the removal protections for the boards of the National Labor Relations Board ("NLRB"), Merit Systems Protection Board ("MSPB"), and the over thirty other multimember independent agencies created by Congress. *Amici* include Members of Congress who serve or have served on committees with jurisdiction over the independent agencies that Congress created to address crises and issues impacting the American public and whose board members Appellants contend the President may remove without cause despite— and, in fact, directly contrary to—protections passed by Congress. *Amici* are familiar with the essential role that independent leadership plays in empowering these agencies to execute their missions. In particular, *Amici* have a critical interest in the continued existence and effective functioning of the NLRB and MSPB, whose independence Congress relies on to impartially resolve labor disputes; preserve the professional, non-partisan, merit-based federal workforce; and defend the rights of federal workers and whistleblowers.

---

[1] Pursuant to D.C. Circuit Rule 29(a)(4)(E), counsel for *Amici* state that no counsel for a party authored this brief in whole or in part, and that no person other than *Amici* or its counsel made a monetary contribution to this brief. The Parties have consented to the filing of this brief.

A full list of *Amici* appears at the end of this brief.

## SUMMARY OF ARGUMENT

Since the Constitution's adoption, Congress has exercised its constitutional authority to structure federal agencies and create multimember agencies whose board members are protected from removal without cause. This balance enables Congress to provide those agencies with a measure of independence while preserving the President's authority to remove board members who fail to faithfully execute the laws. Throughout the nation's history, Congress, the Executive, and the Supreme Court have all agreed that Congress possesses this authority—until President Donald Trump attempted to dismiss Appellee Gwynne Wilcox from the NLRB and Appellee Cathy Harris from the MSPB without cause.

The President's actions contradict longstanding historical practice and Supreme Court precedent, which have repeatedly affirmed Congress's authority to create multimember independent agencies. In 1935, the Supreme Court approved the multimember structure of the Federal Trade Commission ("FTC") in *Humphrey's Executor v. United States,* 295 U.S. 602 (1935) and upheld Congress's authority to enact removal protections for agency boards and commissions. During the ninety years that followed, the Court has repeatedly approved similar structures and removal protections, and Congress has relied upon that approval, creating over thirty multimember agencies, including the NLRB and the MSPB, based on that

model.  *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 218 (2020) (affirming the legitimacy of "multimember expert agencies that do not wield substantial executive power"); *Collins v. Yellen*, 594 U.S. 220, 250-51 (2021) (confirming the Court did not revisit *Humphrey's Executor* in *Seila*).

Appellants would have this Court ignore or invalidate this binding precedent in order to profoundly expand the President's authority and allow him to fire members of independent boards and commissions at will.  This radical position contradicts the express understanding of all three Branches over almost a century and would disrupt the foundation of almost three dozen federal agencies.  No sufficient justification exists for upsetting such deeply embedded precedent.

## ARGUMENT

The Supreme Court places "great weight" on "[l]ong settled and established practice" in separation-of-powers cases, *NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014) (quoting *Okanogan v. United States*, 279 U.S. 655, 689 (1929)), because "'traditional ways of conducting government . . . give meaning' to the Constitution."  *Mistretta v. United States*, 488 U.S. 361, 401 (1989) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610 (1952) (Frankfurter, J., concurring)).  And "practice" remains "an important interpretive factor."  *Noel Canning*, 573 U.S. at 525 (collecting cases); *see also Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 23 (2015).

3

The Constitution vests Congress with the authority to create and structure multimember independent agencies to address "the various *crises* of human affairs." *McCulloch v. Maryland*, 17 U.S. 316, 415 (1819) (emphasis in original). This includes Congress's "broad" authority to "create" governmental "office[s]" and "commission[s]." *Buckley v. Valeo*, 424 U.S. 1, 134 (1976), *superseded by statute on other grounds*, *Bipartisan Campaign Reform Act of 2002*, Pub. L. No. 107-155, 116 Stat. 81 (2002).

Since 1789, Congress has exercised this authority to create boards and commissions whose members are removable only for cause in order to give those members the independence required to perform their duties while respecting the President's authority to remove members who fail to faithfully execute the laws. More than two centuries of practice by Congress pursuant to the above-described framework affirm this authority. No legally relevant reason exists to discontinue it now.

## I.     All Three Branches Have Long Recognized that Congress Can Create Multimember Independent Agencies.

An unbroken line of historical practice and Supreme Court precedent evinces the recognition by Congress, the Supreme Court, and the Executive that the Constitution grants Congress the authority to create multimember independent agencies with for-cause removal protections.

4

A.    **Throughout Its History, Congress Has Exercised Its Authority to Protect Members of Independent Agency Boards and Commissions from At-Will Removal.**

Since the Constitution's adoption, Congress has exercised its power to condition the President's removal authority, including when creating and structuring independent agencies.  In 1789, Congress retained for-cause removal protections for territorial judges when it reenacted the Northwest Ordinance and transferred removal authority over territorial officials to the President.  *An Act to Provide for the Government of the Territory Northwest of the River Ohio*, ch. 8, § 1, 1 Stat. 50, 51, 53 (1789).  A year later, Congress ensured that the President had no authority to remove two of the five directors of the Federal Reserve's predecessor, the Sinking Fund Commission.  *An Act Making Provision for the Reduction of the Public Debt*, ch. 47, § 2, 1 Stat. 186 (1790).  And the following year, Congress protected all members of the First Bank of the United States from removal by the President for any cause.  *An Act to Incorporate the Subscribers to the Bank of the United States*, ch. 10, § 4, 1 Stat. 191, 192-193 (1791).  Congress affirmed that protection in 1816, when it created the Second Bank of the United States and granted the President authority to remove only five of the twenty-five members of the Second Bank.  *An Act to Incorporate the Subscribers to the Bank of the United States*, ch. 44, § 8, 3 Stat. 266, 269 (1816).

After the Civil War, Congress relied on the multimember independent agency model to address new crises and issues arising in a modernizing America.

In 1887, Congress created the Interstate Commerce Commission to check the "growing power of the railroads over the American economy." *Seila*, 591 U.S. at 275 (Kagan, J., dissenting in part and concurring in part); *Interstate Commerce Act*, Pub. L. No. 49-41, ch. 104, § 11, 24 Stat. 379, 383 (1887). Congress sought to preserve the Commission's independence by providing that only three of the five members could be "appointed from the same political party" and that the President could remove its commissioners only for "inefficiency, neglect of duty, or malfeasance." *Id.*

Wary of bestowing power to "unskilled or selfish hands," Congress again relied on the multimember independent agency model in 1913 when it granted for-cause removal protection to the Board of Governors of the Federal Reserve Board. H.R. Rep. No. 63-69, at 28 (1913); *see Federal Reserve Act*, ch. 6, § 10, 38 Stat. 260-61 (1913). Congress reaffirmed the Federal Reserve Board members' for-cause removal protection (*Banking Act of 1935*, Pub. L. No. 74-305, § 203(b), 49 Stat. 704-05 (1935)) when it granted the Board authority to set interest rates (*Banking Act of 1933*, Pub. L. No. 73-66, § 8, 48 Stat. 168 (1933)).

In 1914, Congress provided for-cause removal protection to the commissioners of the FTC, which Congress charged with preventing "unfair

methods of competition in commerce." *Federal Trade Commission Act*, ch. 311, § 5, 38 Stat. 719 (1914); *see id.* § 1, 38 Stat. 718. Congress provided the commissioners with for-cause removal protection to "ensur[e] 'a continuous policy' 'free from the effect' of 'changing [White House] incumbency.'" *Seila*, 591 U.S. at 276 (Kagan, J., dissenting in part and concurring in part) (quoting 51 Cong. Rec. 10376 (1914)).

In 1934, in the midst of the Great Depression, Congress established two more multimember independent agencies with for-cause removal protections: the Securities and Exchange Commission[2] and the National Mediation Board (45 U.S.C. § 154). The next year, the Supreme Court expressly approved for-cause removal protections in *Humphrey's Executor*.

### B. For the Last Ninety Years, the Supreme Court Has Continuously Held that Congress May Enact For-Cause Removal Protections for Members of Independent Agency Boards and Commissions.

The Supreme Court has long recognized that Congress can create independent agencies run by multimember boards or commissions appointed by the President, whose members the President may remove only for good cause.

---

[2] Although the statute creating the Securities and Exchange Commission does not include explicit for-cause removal protections, the Supreme Court has accepted that the members of the Commission enjoy such protection. *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 487 (2010) (noting that "[t]he parties agree that the Commissioners cannot themselves be removed by the President except under the *Humphrey's Executor* standard of 'inefficiency, neglect of duty, or malfeasance in office'" (citation omitted)).

Soon after the Founding, the Supreme Court confirmed that Congress could enact removal protections.  Writing for a unanimous Court in *Marbury v. Madison*, 5 U.S. 137, 162 (1803), Chief Justice John Marshall observed without objection that some officers were "not removable at the will of the executive."

Chief Justice Marshall also explained the basis for Congress's authority to structure governmental entities in *McCulloch v. Maryland*, 17 U.S. 316 (1819), approving Congress's creation of the Second Bank of the United States and detailing the Framers' intent through the Necessary and Proper Clause to grant Congress "discretion, with respect to the means by which the powers it confers are to be carried into execution" so that the legislature can perform its duties "in the manner most beneficial to the people."  *McCulloch*, 17 U.S. at 421.  The Constitution thus embodies the recognition that prescribing how Congress should "execute its powers" would be "unwise" and deprive the legislature of the flexibility to respond to future "exigencies" that the Framers may have "seen dimly," if at all.  *Id.* at 415.  The Framers relied on the flexibility granted to Congress to ensure the Constitution would "endure for ages to come" and "adapt[] to the various *crises* of human affairs."  *Id.* (emphasis in original).

In the midst of the Great Depression, the Supreme Court affirmed Congress's then century-old practice of creating independent bodies whose members are not removable at will.  Rejecting a challenge to Congress's authority

8

to protect FTC commissioners from removal without cause, the Court held that Congress's broad power to create multimember independent agencies includes the "power to fix the period during which [commissioners] shall continue [in office], and to forbid their removal except for cause in the meantime." *Humphrey's Executor*, 295 U.S. at 629.

The Court recognized the fundamental role of removal protection in effecting Congress's intent "to create a body of experts" who (1) "gain experience by length of service," (2) "shall be independent of executive authority," and (3) remain "free to exercise [their] judgment without the leave or hindrance of any other official or any department of the government." *Id.* at 625-26.  Congress determined "that length and certainty of tenure would vitally contribute" to accomplishing these objectives. *Id.* at 626.  And the Court declined to "thwart" Congress's efforts to cement the FTC's independence. *Id.*

Following *Humphrey's Executor*, the Supreme Court repeatedly reaffirmed the constitutionality of removal protections for multimember independent agencies. *See, e.g.*, *Wiener v. United States*, 357 U.S. 349 (1958) (applying *Humphrey's Executor* to uphold the removal protections Congress gave to the War Claims Commission); *Morrison v. Olson*, 487 U.S. 654, 687-88 & n.28 (1988) (affirming that *Humphrey's Executor* remained good law, even though "the powers of the FTC . . . would at the present time be considered 'executive,' at least to some

9

degree"); *Free Enter.*, 561 U.S. at 483 (declining to "reexamine" the precedent set in *Humphrey's Executor* "that Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may not remove at will"); *Seila*, 591 U.S. at 218 (recognizing the exception to the President's removal power established by *Humphrey's Executor* "for multimember expert agencies that do not wield substantial executive power"); *Collins*, 594 U.S. at 250-51 (affirming that the Court did not revisit its prior decisions in *Seila*).

This precedent has rendered "uncontroversial" "the constitutionality of [multimember] independent agencies, whose officials possess some degree of removal protection that insulates them from unlimited and instantaneous political control." *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 760 (10th Cir. 2024), *cert. denied*, No. 24-156, 2025 WL 76435 (U.S. Jan. 13, 2025); *see also Meta Platforms, Inc. v. Fed. Trade Comm'n*, 723 F. Supp. 3d 64, 86-87 (D.D.C. 2024) (detailing the history of Supreme Court cases affirming *Humphrey's Executor* and stating that "this Court lacks authority (or reason) to disregard the Supreme Court's holding in *Humphrey's Executor* that the for-cause removal restriction contained in the FTC Act passes constitutional muster").

C.    **Congress Has Created Over Thirty Multimember Independent Agencies in Reliance on *Humphrey's Executor*.**

In the ninety years since *Humphrey's Executor*, Congress has enacted bills, signed by the President, that have created over thirty agencies with multimember independent leadership boards and commissions protected from at-will removal by the President.

Two months after *Humphrey's Executor*, Congress relied on the Supreme Court's endorsement of the FTC's structure to establish the NLRB (*see* Section II(A), *infra*).  *National Labor Relations Act*, ch. 372, § 3, 49 Stat. 449, 451 (1935).  Like the FTC, the NLRB has a five-member leadership board with staggered terms, minimizing instability and allowing for expertise to accrue.  *See* 29 U.S.C. § 153(a).  Congress intended the NLRB to exercise impartial judgment, as evidenced by its imbuing the agency with several traditional indicia of independence from presidential control.  Kirti Datla & Richard L. Revesz, *Deconstructing Independent Agencies (and Executive Agencies)*, 98 Cornell L. Rev. 769, 784 (2012-2013).  Such indicia include specified five-year terms and for-cause removal protection, preventing the President from removing members for any cause except for "neglect of duty or malfeasance in office."  *See* 29 U.S.C. §§ 153(a), 155, 160; *see also Humphrey's Executor*, 295 U.S. at 625-26 (describing the FTC's independence).  In this way, the NLRB, like the FTC,

"gain[ed] the ability to resist presidential influence from its enabling statute[.]" Datla, 98 Cornell L. Rev. at 826.

Congress created the MSPB forty-three years later, using the same established authority. *Civil Service Reform Act of 1978*, Pub. L. No. 95-454, § 201, 92 Stat. 1111, 1119 (1978). By its statutory design, the MSPB is a multimember agency of three members, including a Chair appointed by the President and confirmed by the Senate (*see* 5 U.S.C. §§ 1201, 1203), with for-cause removal protection, expertise and partisan balance requirements (*see id.* § 1201), and authority to bypass review by the Office of Management and Budget by submitting budget and legislative recommendations to Congress (*see id.* § 1204(k)-(l)).

The Executive at the time not only agreed that Congress possessed authority to protect members of the MSPB from at-will removal but also encouraged Congress to *use* that authority. President Carter proposed that Congress create the MSPB, and he urged Congress to enact such removal protections to "guarantee independent and impartial protection to employees." President Jimmy Carter, *Federal Civil Service Reform Message to Congress* (Mar. 2, 1978), https://perma.cc/2URA-FJRR.

The NLRB and the MSPB are only two of the over thirty agencies that Congress created in reliance on *Humphrey's Executor* and its explicit authorization

12

of statutorily-created multimember agencies with removal protections to promote

independence and expertise.  As shown in the following table, listing multimember

independent agencies that Congress created post-*Humphrey's Executor*, Congress

has tasked independent agencies with addressing the spectrum of the nation's most

significant crises and challenges over the course of the last ninety years.

| Purpose | Independent Agencies |
|---|---|
| **Tackling Public Safety Issues**<br><br>(Eight Agencies) | • 1967 – National Transportation Safety Board, 49 U.S.C. § 1111(c);[3]<br><br>• 1970 – Occupational Safety and Health Review Commission, 29 U.S.C. § 661(b);<br><br>• 1972 – Consumer Product Safety Commission, 15 U.S.C. § 2053(a);<br><br>• 1976 – National Advisory Council on National Health Service Corps, 42 U.S.C. §254j(b);<br><br>• 1977 – Federal Mine Safety and Health Review Commission, 30 U.S.C. § 823(b)(1)(B);<br><br>• 1984 – United States Institute of Peace, 22 U.S.C. § 4605(f);<br><br>• 1990 – Chemical Safety Board, 42 U.S.C. § 7412(r)(6); and<br><br>• 1996 – Federal Aerospace Management Advisory Council (previously the Federal Aviation Management Advisory Council), 49 U.S.C. § 106(p)(6)(E). |

---

[3] The citations in the table reference the statutory for-cause removal protections enacted by Congress for each of these agencies.

| Purpose | Independent Agencies |
|---|---|
| **Addressing Civil Rights and Public Welfare Issues**<br><br>(Two Agencies) | • 1957 – Commission on Civil Rights, 42 U.S.C. § 1975(e) and 42 U.S.C. § 1975a; and<br><br>• 1974 – Legal Services Corporation, 42 U.S.C. § 2996c(e). |
| **Protecting Workers and Promoting Labor Rights**<br><br>(Five Agencies) | • 1935 – NLRB, 29 U.S.C. § 153(a);<br><br>• 1978 – MSPB, 5 U.S.C. § 1202(d);<br><br>• 1978 – Federal Labor Relations Authority, 5 U.S.C. § 7104(b);<br><br>• 1980 – Foreign Service Labor Relations Board, 22 U.S.C. § 4106(e); and<br><br>• 1980 – Foreign Service Grievance Board, 22 U.S.C. § 4135(d). |

| Purpose | Independent Agencies |
|---|---|
| **Supporting Commerce and Addressing Economic Issues**<br><br>(Seven Agencies) | • 1936 – United States Maritime Commission, *Merchant Marine Act of 1936*, Pub. L. 74-835, 49 Stat. 1985 (1936);[4]<br><br>• 1961 – Federal Maritime Commission, 46 U.S.C. § 46101(b)(5);<br><br>• 1970 – Postal Service Board of Governors, 39 U.S.C. § 202(e)(3);<br><br>• 1970 – Postal Regulatory Commission, 39 U.S.C. § 502(a);<br><br>• 1988 – National Indian Gaming Commission, 25 U.S.C. § 2704(b)(6);<br><br>• 1995 – Surface Transportation Board, 49 U.S.C. § 1301; and<br><br>• 2009 – Corporation for Travel Promotion, 22 U.S.C. § 2131(b)(2)(D); (b)(3). |
| **Promoting Justice and the Legal System**<br><br>(Three Agencies) | • 1984 – United States Sentencing Commission, 28 U.S.C. § 991;<br><br>• 1984 – State Justice Institute, 42 U.S.C. § 10703(h); and<br><br>• 2006 – General Services Administration: Civilian Board of Contract Appeals, 41 U.S.C. § 7105(b)(3). |

---

[4] The Federal Maritime Commission replaced the United States Maritime Commission in 1961.

| Purpose | Independent Agencies |
|---|---|
| **Tackling Energy and Environmental Issues**<br><br>(Four Agencies) | • 1946, Atomic Energy Commission, *Atomic Energy Act of 1946*, Pub. L. No. 585, 60 Stat. 755, 756-757 (1946);[5]<br><br>• 1974 – Nuclear Regulatory Commission, 42 U.S.C. § 5841;<br><br>• 1976 – Regional Fishery Management Councils, 16 U.S.C. § 1852(b)(6); and<br><br>• 1977 – Federal Energy Regulatory Commission, 42 U.S.C. § 7171(b)(1). |
| **Addressing Issues Facing Members of the Military and Victims of War**<br><br>(Three Agencies) | • 1948 – War Claims Commission, *War Claims Act of 1948*, Pub. L. 80-896, 62 Stat. 1240 (1948);[6]<br><br>• 2000 – Department of Defense: Medicare-Eligible Retiree Health Care Board of Actuaries, 10 U.S.C. § 1114(a)(2)(A); and<br><br>• 2008 – Department of Defense: Board of Actuaries, 10 U.S.C. § 183(b)(3). |

The above table illustrates Congress's wide-ranging and longstanding reliance on *Humphrey's Executor*. Congress has repeatedly exercised its legislative power, with the flexibility the Framers intended, to create multimember independent agencies to address the full range of problems facing the nation.

---

[5] The Energy Research and Development Administration and the Nuclear Regulatory Commission replaced the Atomic Energy Commission in 1974.

[6] The War Claims Commission was a temporary agency that dissolved in 1954. *See Wiener*, 357 U.S. at 351.

Furthermore, Congress structured these agencies with the intention that their boards or commissions would exercise the agency's powers with a measure of independence based on the authority to create for-cause removal exercised by the legislature since the Founding and the modern model approved by the Supreme Court in *Humphrey's Executor*.

> **D.     Precedent and Practice Support the Tradition of Multimember Independent Agencies Affirmed by *Humphrey's Executor*.**

There is no basis for disturbing the established precedent and longstanding practice undergirding Congress's authority to create multimember independent agencies with removal protections, which include not only the NLRB and MSPB, but also the Federal Reserve Board, the FTC, the Securities and Exchange Commission, and the National Mediation Board (all founded before *Humphrey's Executor*), and the other agencies outlined in Section I(C), *supra*.

Stare decisis has "special force when legislators or citizens 'have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations.'"  *Hubbard v. United States*, 514 U.S. 695, 714 (1995) (citation omitted).  Congress, the Executive, and the Judiciary have developed settled norms and understandings based on the multimember agency structure approved by *Humphrey's Executor*.  Overruling that practice and precedent would upend those understandings and disrupt a century and half of

legislation reflecting Congress's considered judgment on how to structure the nation's government.

Appellants urge the Court to repudiate precedent and hold that all boards and commissions of independent agencies must be removable by the President at will. Nothing in the Constitution supports this radical proposal. Nothing in continued congressional practice countenances it. And nothing in Supreme Court precedent requires it.

## II. The Independence of the NLRB and MSPB Play a Critical Role in Each Agency's Ability to Fulfill Its Congressional Mandate.

The NLRB and MSPB both require independence to deliver on their respective missions. The NLRB's independence ensures its ability to fairly and impartially resolve labor disputes and promotes public confidence in those decisions. And the MSPB's independence reduces potential conflicts of interest in the Executive Branch and enables the MSPB to avoid politicization while fulfilling its mission to impartially adjudicate federal employment matters and protect the rights of whistleblowers.

### A. The NLRB's Independence Furthers Its Mission of Impartial Resolution of Labor Disputes.

The text of the National Labor Relations Act and its legislative history make clear Congress's intent to safeguard the NLRB's independence by granting its

18

members removal protections to ensure public confidence in the fairness of the
NRLB's resolution of labor disputes.

As noted by supporters and critics alike, the legislative history of the
National Labor Relations Act is "overwhelmingly clear" that the Board's members
were expected to be "impartial" and "strictly nonpartisan."  Adrian Vermeule,
*Conventions of Agency Independence*, 113 Colum. L. Rev. 1163 (2013).[7]  For
instance, Members of Congress emphasized the importance of the NLRB's
independence from the Executive Branch during committee debates, arguing that
the NLRB's independence from the Department of Labor was necessary "if the
public is to have confidence in the impartiality of this Board" to ensure fairness in
the resolution of labor disputes.  79 Cong. Rec. 9725 (1935).

Further, House Members explicitly voiced their intent to structure the NLRB
and its removal protections consistent with the Supreme Court's recent decisions in
*Humphrey's Executor*, *Myers v. United States*, 272 U.S. 52 (1926), and *A.L.A.
Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935).  The Congressional
Record includes several pages of debate regarding the implications of these
precedents for Congress's creation of the NLRB.  79 Cong. Rec. 9678-82, 9722-

---

[7] *See also*, Walker J. Gray, *"Dependent" Independent Agencies: How
Humphrey's Executor Envisioned Independent Agencies and the NLRB's
Inconsistency with This Vision*, 53 Colum. L. Rev. 77 (2022-2023).

25, 10298 (1935).  For example, Representative Vito Marcantonio of New York

emphasizes the distinction the Court drew in *Myers* and *Humphrey's Executor*

between executive officers under the President's purview and agencies engaging in

quasi-judicial and quasi-legislative functions.  *Id*. 9724-25.  He sought to ensure

that the President would not have "unrestrained" removal power over members of

the Board, which would be "contrary to the intent of Congress."  *Id*. 9725.

Similarly, a House amendment clarified that "[t]he Board as contemplated by the

bill is in no sense to be an agency of the executive branch" but rather is "to have a

status similar to that of the [FTC], which as the Supreme Court pointed out in the

*Schechter* case, is a quasi-judicial and quasi-legislative body."  *Id*. 10298 (italics

added).

> **B.    The MSPB's Independence Furthers Its Mission of Protecting Federal Employees.**

Congress likewise intended the MSPB to be an independent agency that

preserves the professional, non-partisan, merit-based federal workforce and

defends the rights of federal workers and whistleblowers by providing an impartial

forum for adjudicating employment disputes.  Prior to creation of the MSPB, the

Civil Service Commission performed both the adjudication and prosecution of

federal employment-related disputes.  President Carter prepared the

*Reorganization Plan No. 2 of 1978* to urge Congress to create legislation

authorizing agencies to reform the civil service to more effectively protect federal

employees' rights, recognizing that "the Civil Service Commission" had acquired "inherently conflicting responsibilities: to help manage the Federal Government and to protect the rights of Federal employees."  43 F.R. 36037, 92 Stat. 3783 (1978).  In an attempt to mitigate this conflict, President Carter proposed the creation of the MSPB, the Office of Personnel Management, and the Federal Labor Relations Authority as three new independent agencies, as well as the Office of Special Counsel as an independent prosecutor of cases before the MSPB.[8]  *Id.* According to the Reorganization Plan, the MSPB "would be the first independent and institutionally impartial Federal agency solely for the protection of Federal employees." *Id.*

Congress codified the President's proposal in the Civil Service Reform Act of 1978 ("CSRA"), which passed and became effective less than five months later. The stated policy of Congress in formally creating the MSPB as part of the Civil Service Reform Act was to ensure that federal employees "receive appropriate protection through increasing the authority and powers of the [MSPB] in processing hearings and appeals affecting Federal employees[.]" *Civil Service Reform Act of 1978*, Pub. L. No. 95-454, 92 Stat. 1111, § 3(3) (1978).

---

[8] *See* U.S. Merit System Protection Board, *About MSPB* (lasted visited Apr. 3, 2025), https://www.mspb.gov/about/about.htm.

As noted by commentators, "the MSPB is intended to be an independent adjudicatory body, and politicizing it would create its own problems both for civil service in general and [administrative law judges] in particular." Richard E. Levy, *Restoring ALJ Independence*, 105 Minn. L. Rev. 39, 96 (2020-2021). Administrative law judges are among the federal personnel under the MSPB's jurisdiction, and when an agency seeks to remove a judge or impose other disciplinary sanctions, the MSPB is tasked with determining whether good cause exists to take such action by virtue of a neutral hearing before the Board. *See* 5 U.S.C. § 7521(a). Without safeguards to protect the impartiality of the MSPB, the independence of administrative law judges—a critical protection for the rule of law—would suffer. Levy, 105 Minn. L. Rev. at 45.

In sum, Congress structured both the NLRB and the MSPB as independent agencies to ensure they could effectively serve their respective missions of impartial dispute resolution. Without removal protections, neither agency can ensure that its Board has the freedom from executive overreach to protect employees' rights as their enabling statutes require. *See* 29 U.S.C. § 151; *Civil Service Reform Act of 1978*, 92 Stat. 1111, § 3(3).

## CONCLUSION

*Amici* now occupy the seats of the thousands of their predecessors who have crafted and approved the structure of independent agencies in this nation for the

past ninety years—in fact, since the Founding itself.  They are particularly well situated to opine on the disruption of settled expectations and the affront to the separation of powers that Appellants' arguments, if accepted, would entail.

For those reasons, and for the reasons stated above, *Amici* urge that this Court affirm the judgments of the District Courts.

Dated: April 9, 2025

Respectfully submitted,

By:     */s/ Anthony Schoenberg*

Anthony Schoenberg
Alexis Loeb
John Ugai
Raven Quesenberry*
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400
tschoenberg@fbm.com
aloeb@fbm.com
jugai@fbm.com
rquesenberry@fbm.com

*\*Practicing under the direct supervision of members of the bar of the U.S. Court of Appeals for the D.C. Circuit while admission is pending.*

*Counsel for Amici Curiae*

23

## LIST OF *AMICI CURIAE*

1. **Jamie Raskin**
Representative of Maryland

2. **Gerald E. Connolly**
Representative of Virginia

3. **Robert C. "Bobby" Scott**
Representative of Virginia

4. **Hakeem Jeffries**
Representative of New York

5. **Katherine Clark**
Representative of Massachusetts

6. **Pete Aguilar**
Representative of California

7. **Joe Neguse**
Representative of Colorado

8. **Rosa L. DeLauro**
Representative of Connecticut

9. **Alma S. Adams, Ph.D.**
Representative of North Carolina

10. **Gabe Amo**
Representative of Rhode Island

11. **Yassamin Ansari**
Representative of Arizona

12. **Jake Auchincloss**
Representative of Massachusetts

13. **Becca Balint**
Representative of Vermont

14. **Nanette Barragán**
Representative of California

15. **Joyce Beatty**
Representative of Ohio

16. **Wesley Bell**
Representative of Missouri

17. **Ami Bera, M.D.**
Representative of California

18. **Donald S. Beyer Jr.**
Representative of Virginia

19. **Sanford D. Bishop, Jr.**
Representative of Georgia

20. **Suzanne Bonamici**
Representative of Oregon

21. **Brendan F. Boyle**
Representative of Pennsylvania

22. **Shontel Brown**
Representative of Ohio

23. **Julia Brownley**
Representative of California

24. **Nikki Budzinski**
Representative of Illinois

25. **Janelle Bynum**
Representative of Oregon

26. **Salud O. Carbajal**
Representative of California

27. **André Carson**
Representative of Indiana

28. **Troy A. Carter, Sr.**
Representative of Louisiana

29. **Greg Casar**
Representative of Texas

30. **Ed Case**
Representative of Hawaii

31. **Sean Casten**
Representative of Illinois

32. **Kathy Castor**
Representative of Florida

33. **Joaquin Castro**
Representative of Texas

34. **Sheila Cherfilus-McCormick**
Representative of Florida

35. **Judy Chu**
Representative of California

36. **Gilbert R. Cisneros, Jr.**
Representative of California

37. **Yvette Clarke**
Representative of New York

38. **Emanuel Cleaver, II**
Representative of Missouri

39. **James E. Clyburn**
Representative of South Carolina

40. **Steve Cohen**
Representative of Tennessee

41. **Herbert C. Conaway, Jr.**
Representative of New Jersey

42. **J. Luis Correa**
Representative of California

43. **Jim Costa**
Representative of California

44. **Joe Courtney**
Representative of Connecticut

45. **Angie Craig**
Representative of Minnesota

46. **Jasmine Crockett**
Representative of Texas

47. **Jason Crow**
Representative of Colorado

48. **Sharice Davids**
Representative of Kansas

49. **Danny K. Davis**
Representative of Illinois

50. **Donald G. Davis**
Representative of North Carolina

51. **Madeleine Dean**
Representative of Pennsylvania

52. **Diana DeGette**
Representative of Colorado

**53.** **Suzan K. DelBene**
Representative of Washington

**54.** **Chris Deluzio**
Representative of Pennsylvania

**55.** **Mark DeSaulnier**
Representative of California

**56.** **Maxine Dexter**
Representative of Oregon

**57.** **Debbie Dingell**
Representative of Michigan

**58.** **Lloyd Doggett**
Representative of Texas

**59.** **Sarah Elfreth**
Representative of Maryland

**60.** **Veronica Escobar**
Representative of Texas

**61.** **Adriano Espaillat**
Representative of New York

**62.** **Dwight Evans**
Representative of Pennsylvania

**63.** **Cleo Fields**
Representative of Louisiana

**64.** **Shomari C. Figures**
Representative of Alabama

**65.** **Lizzie Fletcher**
Representative of Texas

**66.** **Bill Foster**
Representative of Illinois

**67.** **Valerie P. Foushee**
Representative of North Carolina

**68.** **Lois Frankel**
Representative of Florida

**69.** **Laura Friedman**
Representative of California

**70.** **Maxwell Alejandro Frost**
Representative of Florida

**71.** **John Garamendi**
Representative of California

**72.** **Jesús G. "Chuy" García**
Representative of Illinois

**73.** **Robert Garcia**
Representative of California

**74.** **Sylvia Garcia**
Representative of Texas

**75.** **Laura Gillen**
Representative of New York

**76.** **Dan Goldman**
Representative of New York

**77.** **Jimmy Gomez**
Representative of California

**78.** **Vicente Gonzalez**
Representative of Texas

79. **Maggie Goodlander**
Representative of New Hampshire

80. **Josh Gottheimer**
Representative of New Jersey

81. **Adam Gray**
Representative of California

82. **Al Green**
Representative of Texas

83. **Josh Harder**
Representative of California

84. **Jahana Hayes**
Representative of Connecticut

85. **Pablo José Hernández**
Representative of Puerto Rico

86. **Jim Himes**
Representative of Connecticut

87. **Steven Horsford**
Representative of Nevada

88. **Chrissy Houlahan**
Representative of Pennsylvania

89. **Steny H. Hoyer**
Representative of Maryland

90. **Val Hoyle**
Representative of Oregon

91. **Jared Huffman**
Representative of California

92. **Glenn F. Ivey**
Representative of Maryland

93. **Jonathan L. Jackson**
Representative of Illinois

94. **Sara Jacobs**
Representative of California

95. **Pramila Jayapal**
Representative of Washington

96. **Henry C. "Hank" Johnson, Jr.**
Representative of Georgia

97. **Julie Johnson**
Representative of Texas

98. **Sydney Kamlager-Dove**
Representative of California

99. **Marcy Kaptur**
Representative of Ohio

100. **William Keating**
Representative of Massachusetts

101. **Robin L. Kelly**
Representative of Illinois

102. **Timothy M. Kennedy**
Representative of New York

103. **Ro Khanna**
Representative of California

104. **Raja Krishnamoorthi**
Representative of Illinois

105. **Greg Landsman**
Representative of Ohio

106. **John B. Larson**
Representative of Connecticut

107. **George Latimer**
Representative of New York

108. **Summer L. Lee**
Representative of Pennsylvania

109. **Susie Lee**
Representative of Nevada

110. **Teresa Leger Fernández**
Representative of New Mexico

111. **Mike Levin**
Representative of California

112. **Sam T. Liccardo**
Representative of California

113. **Ted W. Lieu**
Representative of California

114. **Zoe Lofgren**
Representative of California

115. **Stephen F. Lynch**
Representative of Massachusetts

116. **Seth Magaziner**
Representative of Rhode Island

117. **John W. Mannion**
Representative of New York

118. **Doris Matsui**
Representative of California

119. **Lucy McBath**
Representative of Georgia

120. **Sarah McBride**
Representative of Delaware

121. **April McClain Delaney**
Representative of Maryland

122. **Jennifer L. McClellan**
Representative of Virginia

123. **Betty McCollum**
Representative of Minnesota

124. **Kristen McDonald Rivet**
Representative of Michigan

125. **Morgan McGarvey**
Representative of Kentucky

126. **James P. McGovern**
Representative of Massachusetts

127. **LaMonica McIver**
Representative of New Jersey

128. **Gregory W. Meeks**
Representative of New York

129. **Robert J. Menendez**
Representative of New Jersey

130. **Grace Meng**
Representative of New York

131. **Kweisi Mfume**
Representative of Maryland

132. **Dave Min**
Representative of California

133. **Gwen S. Moore**
Representative of Wisconsin

134. **Joseph D. Morelle**
Representative of New York

135. **Kelly Morrison**
Representative of Minnesota

136. **Jared Moskowitz**
Representative of Florida

137. **Seth Moulton**
Representative of Massachusetts

138. **Frank J. Mrvan**
Representative of Indiana

139. **Kevin Mullin**
Representative of California

140. **Jerrold Nadler**
Representative of New York

141. **Richard E. Neal**
Representative of Massachusetts

142. **Donald Norcross**
Representative of New Jersey

143. **Eleanor Holmes Norton**
Representative of the District of
Columbia

144. **Alexandria Ocasio-Cortez**
Representative of New York

145. **Johnny Olszewski**
Representative of Maryland

146. **Ilhan Omar**
Representative of Minnesota

147. **Frank Pallone, Jr.**
Representative of New Jersey

148. **Jimmy Panetta**
Representative of California

149. **Chris Pappas**
Representative of New
Hampshire

150. **Nancy Pelosi**
Representative of California

151. **Scott H. Peters**
Representative of California

152. **Brittany Pettersen**
Representative of Colorado

153. **Chellie Pingree**
Representative of Maine

154. **Stacey E. Plaskett**
Representative of the Virgin
Islands

155. **Mark Pocan**
Representative of Wisconsin

156. **Nellie Pou**
Representative of New Jersey

157. **Ayanna Pressley**
Representative of Massachusetts

158. **Mike Quigley**
Representative of Illinois

159. **Delia C. Ramirez**
Representative of Illinois

160. **Emily Randall**
Representative of Washington

161. **Josh Riley**
Representative of New York

162. **Luz M. Rivas**
Representative of California

163. **Deborah K. Ross**
Representative of North Carolina

164. **Raul Ruiz**
Representative of California

165. **Patrick K. Ryan**
Representative of New York

166. **Andrea Salinas**
Representative of Oregon

167. **Linda T. Sánchez**
Representative of California

168. **Mary Gay Scanlon**
Representative of Pennsylvania

169. **Jan Schakowsky**
Representative of Illinois

170. **Bradley Scott Schneider**
Representative of Illinois

171. **Hillary J. Scholten**
Representative of Michigan

172. **Kim Schrier, M.D.**
Representative of Washington

173. **David Scott**
Representative of Virginia

174. **Terri A. Sewell**
Representative of Alabama

175. **Brad Sherman**
Representative of California

176. **Mikie Sherrill**
Representative of New Jersey

177. **Lateefah Simon**
Representative of California

178. **Adam Smith**
Representative of Washington

179. **Eric Sorensen**
Representative of Illinois

180. **Darren Soto**
Representative of Florida

181. **Melanie A. Stansbury**
Representative of New Mexico

182. **Greg Stanton**
Representative of Arizona

183. **Haley Stevens**
Representative of Michigan

184. **Marilyn Strickland**
Representative of Washington

185. **Suhas Subramanyam**
Representative of Virginia

186. **Thomas R. Suozzi**
Representative of New York

187. **Eric Swalwell**
Representative of California

188. **Emilia Strong Sykes**
Representative of Ohio

189. **Mark Takano**
Representative of California

190. **Shri Thanedar**
Representative of Michigan

191. **Bennie G. Thompson**
Representative of Mississippi

192. **Mike Thompson**
Representative of California

193. **Dina Titus**
Representative of Nevada

194. **Rashida Tlaib**
Representative of Michigan

195. **Jill Tokuda**
Representative of Hawaii

196. **Paul D. Tonko**
Representative of New York

197. **Norma J. Torres**
Representative of California

198. **Ritchie Torres**
Representative of New York

199. **Lori Trahan**
Representative of Massachusetts

200. **Derek T. Tran**
Representative of California

201. **Lauren Underwood**
Representative of Illinois

202. **Juan Vargas**
Representative of California

203. **Gabe Vasquez**
Representative of New Mexico

204. **Marc Veasey**
Representative of Texas

205. **Nydia M. Velázquez**
Representative of New York

206. **Eugene Vindman**
Representative of Virginia

**207. Debbie Wasserman Schultz**
Representative of Florida

**208. Maxine Waters**
Representative of California

**209. Bonnie Watson Coleman**
Representative of New Jersey

**210. George T. Whitesides**
Representative of California

**211. Nikema Williams**
Representative of Georgia

**212. Frederica S. Wilson**
Representative of Florida

**213. Charles E. Schumer**
Senator from New York

**214. Elizabeth Warren**
Senator from Massachusetts

**215. Cory A. Booker**
Senator from New Jersey

**216. Richard J. Durbin**
Senator from Illinois

**217. Amy Klobuchar**
Senator from Minnesota

**218. Mark R. Warner**
Senator from Virginia

**219. Bernard Sanders**
Senator from Vermont

**220. Tammy Baldwin**
Senator from Wisconsin

**221. Brian Schatz**
Senator from Hawaii

**222. Gary C. Peters**
Senator from Michigan

**223. Angela Alsobrooks**
Senator from Maryland

**224. Michael F. Bennet**
Senator from Colorado

**225. Richard Blumenthal**
Senator from Connecticut

**226. Lisa Blunt Rochester**
Senator from Delaware

**227. Maria Cantwell**
Senator from Washington

**228. Christopher A. Coons**
Senator from Delaware

**229. Tammy Duckworth**
Senator from Illinois

**230. John Fetterman**
Senator from Pennsylvania

**231. Ruben Gallego**
Senator from Arizona

**232. Kirsten E. Gillibrand**
Senator from New York

**233. Margaret Wood Hassan**
Senator from New Hampshire

**234. Martin Heinrich**
Senator from New Mexico

**235. John W. Hickenlooper**
Senator from Colorado

**236. Mazie K. Hirono**
Senator from Hawaii

**237. Tim Kaine**
Senator from Virginia

**238. Andy Kim**
Senator from New Jersey

**239. Ben Ray Luján**
Senator from New Mexico

**240. Edward J. Markey**
Senator from Massachusetts

**241. Jeff Merkley**
Senator from Oregon

**242. Patty Murray**
Senator from Washington

**243. Alex Padilla**
Senator from California

**244. Jack Reed**
Senator from Rhode Island

**245. Jacky Rosen**
Senator from Nevada

**246. Adam B. Schiff**
Senator from California

**247. Jeanne Shaheen**
Senator from New Hampshire

**248. Elissa Slotkin**
Senator from Michigan

**249. Chris Van Hollen**
Senator from Maryland

**250. Raphael G. Warnock**
Senator from Georgia

**251. Peter Welch**
Senator from Vermont

**252. Sheldon Whitehouse**
Senator from Rhode Island

**253. Ron Wyden**
Senator from Oregon

**CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMIT**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 6,216 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

Executed this 9th day of April, 2025.

By:     */s/ Anthony Schoenberg*

Anthony Schoenberg

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the D.C. Circuit by using the

appellate CM/ECF system on April 9, 2025.

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

Executed this 9th day of April, 2025.


By:     */s/ Anthony Schoenberg*

Anthony Schoenberg

*Counsel for Amici Curiae*