**ORAL ARGUMENT SCHEDULED FOR MAY 16, 2025**
**No. 25-5057**

———————————

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

**GWYNNE A. WILCOX,**

*Plaintiff-Appellee*,

v.

**DONALD J. TRUMP, in his official capacity as President of the United States, et al.,**

*Defendants-Appellants.*

———————————

Appeal from the United States District Court for the
District of Columbia, No. 25-cv-334
The Honorable Beryl A. Howell

———————————

**BRIEF OF THE AMERICAN FEDERATION OF LABOR AND CONGRESS OF INDUSTRIAL ORGANIZATIONS (AFL-CIO) AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF-APPELLEE**

———————————

Matthew Ginsburg
Harold Craig Becker
Maneesh Sharma
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, DC 20006
(202) 637-5336
msharma@aflcio.org

*Counsel for Amicus Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A. Parties and *Amici***

All parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the Plaintiff-Appellee's merits brief.

**B. Rulings Under Review**

A reference to the rulings at issue appears in the Plaintiff-Appellee's merits brief.

**C. Related Cases**

All related cases are listed in the Plaintiff-Appellee's merits brief.

Date: April 9, 2025

<u>/s/ Maneesh Sharma</u>
Maneesh Sharma
AFL-CIO
815 Black Lives Matter
Plaza, N.W.
Washington, DC 20006
(202) 637-5336
msharma@aflcio.org

*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT AND
## RULE 29 STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 26.1, the American Federation of Labor-Congress of Industrial Organizations (AFL-CIO) states that it is not a publicly traded corporation, and is a federation of labor organizations.  No publicly held company has 10% or greater ownership of the organization.

Pursuant to Circuit Rule 29(b), all parties consent to the filing of this *amicus* brief.  Pursuant to Circuit Rule 29(d), the AFL-CIO submits that a separate brief is appropriate; as the nation's labor federation, the AFL-CIO has a unique perspective on the role of the National Labor Relations Board and the importance of its independent decision-making.

Pursuant to FRAP Rule 29(4)(E), the AFL-CIO states that no counsel for a party authored this brief in whole or in part, no party or counsel for a party contributed money that was intended to fund preparing or submitting this brief, and no person other than *amicus* or their counsel contributed money that was intended to fund the preparation or submission of this brief.

Date: April 9, 2025

/s/ Maneesh Sharma
Maneesh Sharma
AFL-CIO
815 Black Lives Matter
Plaza, N.W.
Washington, DC 20006
(202) 637-5336
msharma@aflcio.org

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ........................................................... 1

INTRODUCTION ................................................................................... 1

ARGUMENT ......................................................................................... 3

   I.  The NLRB is a Traditional Multimember Agency, and so *Humphrey's Executor* Governs ............................................... 3

   II.  If the NLRA's Removal Protections are Unconstitutional, then so are all Agency Tenure Protections, From the Federal Reserve to the Nuclear Regulatory Commission ........................... 14

CONCLUSION ..................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*AFL v. NLRB*, 308 U.S. 401 (1940) ........................................................ 12

*Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359 (1998) ... 12

*American Hosp. Ass'n v. NLRB*, 499 U.S. 606 (1989) ............................ 12

*Blinder, Robinson & Co., Inc. v. SEC*, 109 S.Ct. 1172 (1989) ................. 8

*Collins v. Yellen*, 594 U.S. 220 (2021) ............................................. 13, 14

*Consumers' Research v. CPSC*, 145 S.Ct. 414 (2024) .............................. 8

*Consumers' Research v. CPSC*, 91 F.4th 342 (5th Cir. 2024) ......... 5, 9, 17

*Exela Enterprise Sol'ns, Inc. v. NLRB*, 32 F.4th 436 (5th Cir. 2022) ..... 11

*Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010) .................. 8, 9, 16

*Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935) .............. 1, 5, 6, 10, 13

*Int'l Union of Operating Eng'rs, Local 39 v. NLRB*, 127 F.4th 58 (9th Cir. 2025) ............................................................................................ 13

*Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) ........................................ 9

*La. Publ. Serv. Comm'n v. FERC*, 522 F.3d 378 (D.C. Cir. 2008) .......... 17

*Leachco, Inc. v. CPSC*, 103 F.4th 748 (10th Cir. 2024) ........................ 17

*Leachco, Inc. v. CPSC*, —S.Ct.—, No. 24-156, 2025 WL 76435 (Jan. 13, 2025) ....................................................................................................... 8

*Meyers v. U.S.*, 272 U.S. 52 (1926) ....................................................... 5

*Nash v. Florida Industrial Comm'n*, 389 U.S. 235 (1967) ..................... 12

*NLRB v. Noel Canning*, 573 U. S. 513 (2014) ......................................... 3

*NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112 (1987) ............................................................... 11

*Oglala Sioux Tribe v. NRC*, 896 F.3d 520 (D.C. Cir. 2018) ................... 16

*Pharaon v. Board of Governors of Fed. Reserve Sys.*, 135 F.3d 148 (D.C. Cir. 1998) ............................................................. 15

*PHH Corp. v. CFPB*, 881 F.3d 75 (D.C. Cir. 2018) ...................... 3, 4, 5, 7

*Securities and Exchange Comm'm v. Jarkesy*, 603 U.S. 109 (2024) ...... 16

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) .......... 3, 5, 6, 7, 8, 9, 13, 15

*Starbucks v. McKinley*, 602 U.S. 339 (2024) ................................ 13

*Union Pacific Railroad Co. v. STB*, 113 F.4th 823 (8th Cir. 2024) ........ 18

*Weiner v. U.S.*, 357 U.S. 349 (1958) ........................................... 7

*YAPP USA Auto. Sys. Inc. v. NLRB*, 748 F.Supp.3d 497 (E.D. Mich. 2024) ......................................................................... 9

*Zivotofsky v. Kerry*, 576 U.S. 1 (2015) ........................................ 3

**Statutes**

12 U.S.C. § 242 ................................................................. 14

12 U.S.C. § 248(i) .............................................................. 15

15 U.S.C. § 145 ................................................................. 11

15 U.S.C. § 146 ................................................................. 11

15 U.S.C. § 146(g) .............................................................. 12

15 U.S.C. § 149 ............................................................ 11, 12

15 U.S.C. § 2053(a) ............................................................ 17

iii

15 U.S.C. § 2056(a) ................................................................17

15 U.S.C. § 2064(f) ................................................................17

15 U.S.C. § 77h-1 ..................................................................16

15 U.S.C. § 78-1 ....................................................................16

15 U.S.C. § 78u-2 ..................................................................16

15 U.S.C. § 78u-3 ..................................................................16

15 U.S.C. § 80b-3 ..................................................................16

15 U.S.C. § 80b-6 ..................................................................17

29 U.S.C. § 153(a) .................................................................10

29 U.S.C. § 153(d) .................................................................11

29 U.S.C. § 156 .....................................................................12

29 U.S.C. § 159 .....................................................................12

29 U.S.C. § 160(c) .................................................................13

29 U.S.C. § 160(e) .................................................................13

29 U.S.C. § 160(j) ..................................................................13

29 U.S.C. § 161(1) .................................................................12

29 U.S.C. § 161(2) .................................................................12

29 U.S.C. § 651(b)(3) .............................................................18

29 U.S.C. § 661 .....................................................................18

29 U.S.C. § 661(b) .................................................................18

29 U.S.C. §§ 160(a)-(f) ...........................................................11

30 U.S.C. § 815 ................................................................18

30 U.S.C. § 823 ................................................................18

42 U.S.C. § 5841(e) ..........................................................16

42 U.S.C. § 7171(b)(1) ......................................................17

42 U.S.C. § 7173 ..............................................................17

42 U.S.C. § 7412(r)(6)(B) .................................................18

42 U.S.C. § 7412(r)(6)(C)(iii) ...........................................18

49 U.S.C. § 10704 ............................................................18

49 U.S.C. § 10709 ............................................................18

49 U.S.C. § 1111(c) ..........................................................18

49 U.S.C. § 1113(a) ..........................................................18

49 U.S.C. § 1113(f) ...........................................................18

49 U.S.C. § 1301(b)(3).......................................................18

## Other Authorities

Letter from Kristen Swearingen, Chair of the Coalition for a Democratic Workplace, to the Honorable Pam Bondi, Attorney General (Apr. 3, 2025) .................................................................................3

## Bills

An Act Establishing a Mint and Regulating the Coins of the United States, § 18, ch. 56, 2 Stat. 5 (1792)........................................4

An Act Making Provision for the Reduction of Public Debt, ch. 47, 1 Stat. 186 (1790) .....................................................................4

## Law Review Articles

Christine Kexel Chabot, *Interring the Unitary Executive*, 98 Notre Dame L. Rev. 129 (2022) ........................................................................ 4

Emma Barudi, *An Assumed Tradition: How the 3-2 Balance of the NLRB Is More Than the Sum of Its Appointments and an Argument for Its Continuation*, 26 N.Y.U. J. Legis. & Pub. Pol'y 817 (2023) ...... 10

## Regulations

10 C.F.R. § 2.800-2.819 ................................................................... 16

10 CFR §§ 2.1-2.713 ........................................................................ 16

12 CFR § 263.1 ....................................................................... 14, 15

12 CFR § 263.39 .............................................................................. 15

12 CFR § 263.40 .............................................................................. 15

12 CFR § 263.5 ................................................................................ 15

## INTEREST OF AMICUS CURIAE

The National Labor Relations Board is exclusively charged with resolving the labor disputes that fall within its jurisdiction under the National Labor Relations Act. As such, the 63 labor unions—and the 15 million working people they represent—that compose the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO), the nation's labor federation, are wholly dependent on the NLRB to decide representation and unfair labor practice cases. The AFL-CIO then has an extremely strong interest in the NLRB's ability to complete its congressionally-delegated responsibilities.

## INTRODUCTION

The Government tells this Court it is time to abandon the Supreme Court's decision in *Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935), asserting that the case must be "confined to the precise considerations then before the Court." Govt. Br. 23. But that is not this Court's job. As the en banc Court just reiterated, "[t]he Supreme Court has repeatedly told the courts of appeals to follow extant Supreme Court precedent unless and until that Court itself changes it or overturns it." Order Vacating Stay, Doc. #2109527, p. 2. In

*Humphrey's Executor*, "the Supreme Court unanimously upheld removal restrictions for government officials on multimember adjudicatory boards[,]" and that Court "has repeatedly stated that it was not overturning th[at] precedent[.]" *Id.* *Humphrey's Executor* then "remain[s] precedential[,]" which not only defeats the Government's ability to show a likelihood of success to merit a stay of the district court's injunctions, it must also defeat the Government's appeal on the merits. *Id.* at 3.

To find otherwise would convert all traditional multimember independent agencies—from the Federal Reserve Board to the Nuclear Regulatory Commission—from expert, deliberative agencies to political entities beholden solely to the whims of the President. The consequences would be interested parties making direct appeals to the President to order members of independent agencies to decide particular cases in their favor, as is already happening in respect to the NLRB with an employer organization recently asking the Attorney General, "acting under the President's supervision and control, to direct

the National Labor Relations Board to not treat as binding precedent"
certain decisions "issued under the prior administration."[1]

## ARGUMENT

## I.    The NLRB is a Traditional Multimember Agency, and so *Humphrey's Executor* Governs

1.     "In separation-of-powers cases th[e Supreme] Court has often 'put
significant weight upon historical practice.'" *Zivotofsky v. Kerry*, 576
U.S. 1, 23 (2015) (quoting *NLRB v. Noel Canning*, 573 U. S. 513, 524
(2014).  Congress has a "settled historical practice" of creating expert
agencies that are led by a multimember board or commission insulated
from removal by the President.  *PHH Corp. v. CFPB*, 881 F.3d 75, 193
(D.C. Cir. 2018) (Kavanaugh, J., dissenting), *abrogated by Seila Law
LLC v. CFPB*, 591 U.S. 197 (2020).  This "deeply rooted tradition"
extends as far back to at least the Interstate Commerce Commission in
1887, the Federal Reserve Bank in 1913, and the Federal Trade

---

[1] Letter from Kristen Swearingen, Chair of the Coalition for a
Democratic Workplace, to the Honorable Pam Bondi, Attorney General
(Apr. 3, 2025), https://myprivateballot.com/wp-
content/uploads/2025/04/CDW-letter-to-AG-Bondi_EO-14215_Apr-
2025.pdf.

Commission in 1914. *Id*. at 173, 179.[2]  During the hardship of the Great

Depression, Congress created a number of additional such agencies,

including the Securities and Exchange Commission, the Federal

Deposit Insurance Corporation, and the Federal Communications

Commission. *Id*. at 173.

Then-Judge Kavanaugh explained the wisdom of multimember

agencies, as "the original design, common understanding, and

consistent historical practice of independent agencies as multi-member

bodies reflect the larger values of the Constitution." *Id*. at 187.  This is

because "dividing power among multiple . . . persons helps protect

---

[2] Indeed, the tradition of relying on commissions or boards to execute the nation's laws goes back to the Founding.  As one scholar wrote, "Multimember boards or commissions were commonplace in [] domestic statutes passed by the First Congress."  Christine Kexel Chabot, *Interring the Unitary Executive*, 98 Notre Dame L. Rev. 129, 175 (2022).  For instance, in 1790, the First Congress created the Sinking Fund Commission, which had final authority—independent of the President—to conduct open market securities purchases to stabilize the debt market.  An Act Making Provision for the Reduction of Public Debt, ch. 47, 1 Stat. 186 (1790); Chabot, 98 Notre Dame L. Rev. 172.  The Commission was comprised of five members, two of whom—the Vice President and the Chief Justice—could not be removed by the President.  Act, *supra*, § 2.  Similarly, the Second Congress created the Mint Commission to inspect the coinage produced by the newly-created mint, and placed on it the unremovable Chief Justice.  An Act Establishing a Mint and Regulating the Coins of the United States, § 18, ch. 56, 2 Stat. 5 (1792).

individual liberty." *Id.* At the same time, the structure provides "the President[] power to exercise influence over traditional multi-member independent agencies[,]" which respects the "Presidential authority [under] Article II[.]" *Id.* at 188.

In *Humphrey's Executor*, the Supreme Court upheld the removal protections for these "traditional independent agenc[ies] headed by a multimember board[.]" *Consumers' Research v. CPSC*, 91 F.4th 342, 352 (5th Cir. 2024) (quoting *Seila Law*, 591 U.S. at 207), *cert. denied* 145 S.Ct. 414 (2024). In examining the removal protections afforded to FTC Commissioners, the Court held that the FTC Commissioners were not "purely executive officers" like the postmaster at issue in *Meyers v. U.S.*, 272 U.S. 52 (1926). Instead, the Court explained that, when adjudicating "unfair methods of competition," "the commission acts as in part quasi legislatively and in past quasi judicially" by "filling in and administering the details embodied by that general standard[.]" *Humphrey's Executor*, 295 U.S. at 628. It further acted as a "legislative or a judicial aid" when it engaged in "investigations and reports thereon for the information of Congress" and "act[ed] as a master of chancery" to a federal court by recommending appropriate relief following a finding

of an unfair method of competition by the district court. *Id.* As such, "to the extent that [the FTC] exercises any executive function, as distinguished from executive power in the constitutional sense, it does so in the discharge and effectuation of its quasi legislative and quasi judicial powers[.]'" *Id.*

Additionally, "the Court identified several organizational features that helped explain its characterization of the FTC as non-executive." *Seila Law*, 591 U.S. at 216. Because the FTC is composed of five members—balanced politically—the board was "designed to be 'non-partisan' and to 'act with entire impartiality.'" *Id.* (quoting *Humphrey's Executor*, 295 U.S. at 619-20). "The FTC's duties were 'neither political nor executive,' but instead called for 'the trained judgment of a body of experts' 'informed by experience.'" *Id.* (quoting *Humphrey's Executor*, 295 U.S. at 624). And the Commissioners staggered terms "enabled the agency to accumulate technical expertise and avoid a 'complete change' in leadership 'at any one time.'" *Id.* (quoting *Humphrey's Executor*, 295 U.S. at 624).

Thus, in the words of *Seila Law*, *Humphrey's Executor* allowed removal protections for "multimember agencies that[, like the FTC in

6

1935,] do not wield substantial executive power[.]" *Id.* at 218; *see also id.* at 203 (summarizing *Humphrey's Executor*'s exception to President's broad removal authority as allowing "Congress [to] create expert agencies led by a group of principal officers removable by the President only for good cause" (cleaned up)), *id.* at 217 (describing *Humphrey's Executor* as establishing "an exception for multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions"). Congress understood *Humphrey's Executor* to allow removal protections for "expert agencies led by a group of principal officers removable by the President only for good cause[,]" as it created "some two-dozen" such agencies all told, most of which after the decision issued. *Seila Law*, 591 U.S. at 230; *also PHH Corp.*, 881 F.3d at 173 (providing partial list).

The Supreme Court affirmed and applied *Humphrey's Executor* in *Weiner v. U.S.*, 357 U.S. 349 (1958), finding that "no [] power is given to the President by the Constitution" to "remove a member of an adjudicatory body like the War Claims Commission." *Id.* at 356. In particular, the Court looked to structure and "nature of the function" of the agency under review to find that a multimember adjudicatory body could be insulated from Presidential removal. *Id.* at 353.

7

In the intervening years, the Supreme Court has refused to extend *Humphrey's Executor*'s protection for traditional multimember independent agencies to the "new situation" of dual layers of removal protections, *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 483 (2010), or the "new configuration" of "an independent agency that wields significant executive power and is run by a single individual who cannot be removed by the President unless certain statutory criteria are met," *Seila Law*, 591 U.S. at 204. Yet, it has pointedly refused to revisit *Humphrey's Executor*, *Seila Law*, 591 U.S. at 204, or review its application to other traditional multimember independent agencies, *see, e.g., Consumers' Research v. CPSC*, 145 S.Ct. 414 (2024) (denying cert), *Leachco, Inc. v. CPSC*, —S.Ct.—, No. 24-156, 2025 WL 76435 (Jan. 13, 2025) (denying cert), *Blinder, Robinson & Co., Inc. v. SEC*, 109 S.Ct. 1172 (1989) (denying cert). And the Court continues to endorse the traditional multimember independent agency model, as when it solved the constitutional problem posed by dual layers of removal protection by severing those applicable to members of Public Company Accounting Oversight Board while leaving in place the "single level of good-cause tenure" afforded Securities and Exchange Commission members, *Free*

8

*Enterprise Fund*, 561 U.S. at 509, or when it stated that Congress could address the constitutional issue of tenure protections for the single Director of the Consumer Financial Protection Board by means other than making the Director removable at will, "for example, [by] converting the CFPB into a multimember agency[,]" *Seila Law*, 591 U.S. at 237.

As such, the rule of *Humphrey's Executor*—that "[p]rincipal officers may retain for-cause protection when they act as part of an expert board"—endures, and remains binding for traditional multimember independent agencies. *Consumers' Research*, 91 F.4th at 356 (quoting *Jarkesy v. SEC*, 34 F.4th 446, 463 (5th Cir. 2022)).

2.    The NLRB "is a prototypical traditional independent agency, run by a multimember board." *Consumers' Research*, 91 F.4th at 354; *YAPP USA Auto. Sys. Inc. v. NLRB*, 748 F.Supp.3d 497, 506 (E.D. Mich. 2024) ("Like the FTC, the NLRB is a multi-member independent, expert agency."). Indeed, Congress, which passed the NLRA just one month after *Humphrey's Executor* was decided, modeled the NLRB after the FTC. *YAPP*, 748 F.Supp.3d at 506.

Like the FTC, the Board is comprised of five members, appointed to staggered terms—five years in the case of the NLRB member. 29 U.S.C. § 153(a).[3] And that is far from the only similarity between the NLRB and the FTC as it existed in 1935. Most strikingly, the FTC is empowered to prevent unfair methods of competition, and did so in 1935 by

> issu[ing] a complaint stating its charges and giving notice of hearing upon a day to be fixed. A person, partnership, or corporation proceeded against is given the right to appear at the time and place fixed and show cause why an order to cease and desist should not be issued. There is provision for intervention by others interested. If the commission finds the method of competition is one prohibited by the act, it is directed to make a report in writing stating its findings as to the facts, and to issue and cause to be served a cease and desist order. If the order is disobeyed, the commission may apply to the appropriate Circuit Court of Appeals for its enforcement. The party subject to the order may seek and obtain a review in the Circuit Court of Appeals in a manner provided by the act.

*Humphrey's Executor*, 295 U.S. at 620-21.

Under the NLRA, the Board is empowered to prevent unfair labor practices, and does so through an essentially identical complaint,

---

[3] While the statute does not require partisan balancing, the Board by tradition has been balanced, and was at the time of Member Wilcox's removal. Emma Barudi, *An Assumed Tradition: How the 3-2 Balance of the NLRB Is More Than the Sum of Its Appointments and an Argument for Its Continuation*, 26 N.Y.U. J. Legis. & Pub. Pol'y 817, 819 (2023).

hearing, and circuit court enforcement process as the 1935 FTC. *See* 29 U.S.C. §§ 160(a)-(f). The only difference is that the Board's role is even more limited than that of the 1935 FTC. *First*, the NLRB's General Counsel, who is separate from the Board and serves at the will of the President, *Exela Enterprise Sol'ns, Inc. v. NLRB*, 32 F.4th 436, 441-42 (5th Cir. 2022), is responsible for investigating unfair labor practice charges, issuing a complaint, prosecuting the case before the Board, and for supervising the agency's attorneys who enforce or defend the Board's actions in federal court. 29 U.S.C. § 153(d); *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 124 (1987) (explaining that NLRA assigns final authority over the "prosecution" of unfair labor practices to the General Counsel, while assigning the final authority over "adjudication" of unfair labor practices to the Board). *Second*, the 1935 FTC had broad investigatory and independent enforcement authority, *see* 15 U.S.C. §§ 145, 146, 149, while the NLRB as an agency has no independent enforcement authority, and instead

11

may only act on charges filed with it by the public. *Nash v. Florida Industrial Comm'n*, 389 U.S. 235, 238 (1967).[4]

Other similarities exist. The 1935 FTC had rulemaking authority, 15 U.S.C. § 146(g), just as the NLRB does, 29 U.S.C. § 156.[5] And the 1935 FTC had the authority to issue subpoenas to compel witness testimony and document production, and could seek court enforcement of those subpoenas, 15 U.S.C. § 149, same as the NLRB, 29 U.S.C. §§ 161(1), (2).

At bottom then, the NLRB—like the 1935 FTC—performs quasi-legislative, quasi-judicial duties, by "filling in and administering the details embodied" by its statutory duty to prevent unfair labor

---

[4] The NLRB also resolves questions of representation by conducting elections pursuant to petitions filed with its regional offices. 29 U.S.C. § 159. While this is a significant and unique responsibility, it is not a meaningful difference from the 1935 FTC. The Board's certification of a union as exclusive representative of an appropriate unit of employees triggers a duty to bargain for an employer, but that duty can only be enforced through an unfair labor practice adjudication. *AFL v. NLRB*, 308 U.S. 401, 409 (1940).

[5] Though the Board rarely engages in substantive rulemaking, *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359, 374 (1998), and when it does, it merely issues rules that guide its own adjudicatory decision-making. *See, e.g., American Hosp. Ass'n v. NLRB*, 499 U.S. 606 (1989).

practices. *Humphrey's Executor*, 295 U.S. at 628. As such, it engages in "executive function[s]," *id.*, but does not wield "substantial executive power," *Seila Law*, 591 U.S. at 218. As a traditional multimember independent agency—demonstrated by its similarity to the 1935 FTC—the NLRB falls squarely within the *Humphrey's Executor* exception, and so its removal protections are constitutional.[6]

------

[6] To be sure, there are minor differences between the NLRB and the 1935 FTC. For instance, the FTC's equitable remedial authority appeared limited to cease-and-desist orders, while the Board's equitable remedial authority extends to ordering affirmative action to restore the status quo, including the payment of backpay. 29 U.S.C. § 160(c); *Int'l Union of Operating Eng'rs, Local 39 v. NLRB*, 127 F.4th 58, 83 n.12 (9th Cir. 2025) ("relief [ordered by the Board] must be equitable in nature"). But, as mentioned, both forms of remedial authority are dependent on federal court enforcement. As another example, the Board has the right to seek temporary injunctive relief pending its adjudication, 29 U.S.C. § 160(j), or court review, 29 U.S.C. § 160(e). But this authority is seldom used, *Starbucks v. McKinley*, 602 U.S. 339, 363 (2024) (Jackson, J., concurring in part and dissenting in part) (explaining that out of 20,000 charges filed with the agency the previous year, the Board authorized the General Counsel to seek injunctions only 14 times), and depends on the General Counsel to both issue a complaint and to request authorization to seek such injunctive relief, *id.* at 360-61. The Government attempts to make much of these distinctions in order to distinguish the Board from the 1935 FTC. Govt. Br. 27-28. However, the Supreme Court has cautioned that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies, and we do not think that the constitutionality of removal restrictions hinges on such an inquiry." *Collins v. Yellen*, 594 U.S. 220, 253 (2021). Instead, courts should focus on the structure of the agency, and whether that structure falls within

## II.   If the NLRA's Removal Protections are Unconstitutional, then so are all Agency Tenure Protections, From the Federal Reserve to the Nuclear Regulatory Commission

The Government's position is that the NLRB falls outside of the *Humphrey's Executor* exception because it "wields substantial executive authority[.]"  Govt. Br. 27.  To support this statement, it primarily points to the Board's adjudicatory functions and rulemaking authority. *Id.* at 27-30.  But aside from the fact that the 1935 FTC exercised both of these authorities, nearly every traditional multimember independent agency engages in agency adjudication and/or has rulemaking authority.  As such, if the NLRA's tenure protections are unconstitutional, so are those of all these other agencies.

Start with the Federal Reserve.  The Board of Governors of the Federal Reserve are insulated from at-will removal.  12 U.S.C. § 242. The Federal Reserve is authorized to conduct agency adjudications under a wide range of federal statutes.  12 CFR § 263.1.  Pursuant to these adjudications, the Federal Reserve's Board of Governors may

---

the historical practice.  *Id.* at 250-51 (finding the removal protections applied to the single Director of the Fair Housing Finance Agency unconstitutional because "[t]he FHFA (like the CFPB) is an agency led by a single Director").

order injunctive relief as well as civil money penalties.  *Id.*  And the
adjudications proceed similarly to those conducted by the NLRB—first
before an administrative law judge, who issues a recommended order,
followed by an appeal to the Board of Governors, who issue a final
order.  12 CFR §§ 263.5, 263.39, 263.40; *see, e.g., Pharaon v. Board of
Governors of Fed. Reserve Sys.*, 135 F.3d 148, 152 (D.C. Cir. 1998)
(describing agency adjudication process).  Moreover, the Federal
Reserve has broad rulemaking authority.  12 U.S.C. § 248(i).
Accordingly, under the Government's theory, all members of the
Federal Reserve's Board of Governors exercise substantial executive
authority, and must be removable at will by the President.  Under such
a regime, the nation's monetary policy would be subject to the politics of
the time, or even the whim of a capricious President.  *See Seila Law*,
591 U.S. at 283 (Kagan, J., concurring in part and dissenting in part)
("Consider, for example, how the Federal Reserve's independence stops
a President trying to win a second term from manipulating interest
rates.").[7]

---

[7] The Chamber of Commerce argues as *amicus* that the history of the
Sinking Fund, and First and Second Banks of the United States, show
that removal protections for Federal Reserve officials are constitutional.

15

Next consider the Nuclear Regulatory Commission.  Its members are similarly protected from removal.  42 U.S.C. § 5841(e).  The NRC engages in various forms of agency adjudication.  10 CFR §§ 2.1-2.713; *e.g., Oglala Sioux Tribe v. NRC*, 896 F.3d 520, 523-24 (D.C. Cir. 2018) (describing licensing hearing procedure).  The Commission also has robust rulemaking authority.  10 C.F.R. § 2.800-2.819.  Thus, like Federal Reserve Governors, NRC commissioners must be subject to at will removal by the President, in the Government's view.

Or take the Securities and Exchange Commission.  Its commissioners are understood to enjoy removal protections.  *Free Enterprise Fund*, 561 U.S. at 487.  The SEC conducts traditional agency adjudications, relying on an ALJ as the fact-finder, with discretionary appellate review of the ALJ's recommended order.  *See* 15 U.S.C. §§ 77h-1, 78-1, 78u-2, 78u-3, 80b-3; *Securities and Exchange Comm'm v. Jarkesy*, 603 U.S. 109, 117 (2024) (describing agency adjudication

---

Chamber Br. 19-26.  But the Chamber offers no reason why these early commissions and agencies are evidence of a historical practice limited to an independent agency like the Federal Reserve, as opposed to all traditional multimember independent agencies.  Especially considering that early Congresses created other such multimember commissions that were not related to monetary policy.  *Supra* note 2.

procedure).  And the agency has broad rulemaking authority spread throughout the statutes it enforces.  *See, e.g.,* 15 U.S.C. § 80b-6.  Under the Government's reading of *Seila Law*, these commissioners must be removal at will by the President, even though the Supreme Court left in place the commissioners' removal protections in *Free Enterprise Fund*.

Or how about the Consumer Product Safety Commission.  Also insulated, 15 U.S.C. § 2053(a); also engages in agency adjudications, 15 U.S.C. § 2064(f); *Leachco, Inc. v. CPSC*, 103 F.4th 748, 750 (10th Cir. 2024) (describing agency adjudication procedure); and also has rulemaking authority, 15 U.S.C. § 2056(a).  So its Commissioners must be removal at will too, even though two courts of appeals have held otherwise.  *Leachco*, 103 F.4th at 763; *Consumers' Research*, 91 F.4th at 352.

The Federal Energy Regulatory Commission?  Its members too are afforded removal protections.  42 U.S.C. § 7171(b)(1).  And it also engages in agency adjudication.  *See, e.g., La. Publ. Serv. Comm'n v. FERC*, 522 F.3d 378, 385-87 (D.C. Cir. 2008) (providing procedural history of agency adjudication).  And rulemaking.  42 U.S.C. § 7173.  So,

17

according to the Government, its members must be removal at will by

the President.

The list of examples goes on:

- National Transportation Safety Board

    o Removal protections: 49 U.S.C. § 1111(c)
    o Adjudicatory authority: 49 U.S.C. § 1113(a)
    o Rulemaking authority: 49 U.S.C. § 1113(f)

- Surface Transportation Board

    o Removal protections: 49 U.S.C. § 1301(b)(3)
    o Adjudicatory authority: 49 U.S.C. §§ 10704, 10709
    o Rulemaking authority: 49 U.S.C. § 10704; *e.g. Union Pacific Railroad Co. v. STB*, 113 F.4th 823 (8th Cir. 2024)

- Occupational Safety and Health Review Commission:

    o Removal protections: 29 U.S.C. § 661(b)
    o Adjudicatory authority: 29 U.S.C. §§ 651(b)(3), 661

- Mine Safety and Heath Review Commission

    o Removal protections: 30 U.S.C. § 823(b)(1)
    o Adjudicatory authority: 30 U.S.C. §§ 815, 823

- Chemical Safety and Hazard Investigation Board

    o Removal protections: 42 U.S.C. § 7412(r)(6)(B)
    o Rulemaking authority: 42 U.S.C. § 7412(r)(6)(C)(iii)

Ultimately, the Government's position is not just that the NLRB's

removal protections are unconstitutional, but that all traditional

multimember independent agencies are unconstitutional, and must be under the direct supervision of the President.  In other words, the President must have direct control over the expert and impartial agencies that are responsible for everything from monetary policy to securities regulation to nuclear and consumer product safety.  Nothing about this nation's historical practice requires such a dire consequence, and nothing about Supreme Court precedent requires such a sea change.

## CONCLUSION

This Court—bound by *Humphrey's Executor* in practice and not just in word—must affirm the district court, and the AFL-CIO urges it to do so.

Respectfully submitted,

Dated: April 9, 2025

/s/ Maneesh Sharma
Matthew Ginsburg
Harold Craig Becker
Maneesh Sharma
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, DC 20006
(202) 637-5336
msharma@aflcio.org

*Counsel for Amicus Curiae*

19

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 3826 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

<u>/s/ Maneesh Sharma</u>

*Counsel for Amicus Curiae*

Date: April 9, 2025

# CERTIFICATE OF SERVICE

I hereby certify that on this date, April 9, 2025, I electronically filed the foregoing *Amicus Curiae* Brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system.

I further certify that the foregoing document was served on all parties or their counsel of record through the appellate CM/ECF system, as they are registered users.

/s/ Maneesh Sharma

*Counsel for Amicus Curiae*