ORAL ARGUMENT SCHEDULED MAY 16, 2025

**Nos. 25-5037, 25-5055, 25-5057**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

CATHY A. HARRIS, in her personal capacity and in her official capacity as
Member of the Merit Systems Protection Board,

*Plaintiff-Appellee,*

v.

SCOTT BESSENT, in his official capacity as Secretary of the Treasury, et al.,

*Defendants-Appellants.*

GWYNNE A. WILCOX,

*Plaintiff-Appellee,*

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et
al.,

*Defendants-Appellants.*

On Appeals from the United States District Court
for the District of Columbia

### REPLY BRIEF FOR APPELLANTS

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
LAURA E. MYRON
DANIEL AGUILAR
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

In *Harris v. Bessent*, Nos. 25-5037 and 25-5055, plaintiff is Cathy A. Harris, in her personal capacity and in her official capacity as Member of the Merit Systems Protection Board. Defendants are Scott Bessent, in his official capacity as Secretary of the Treasury; Trent Morse, in his official capacity as Deputy Assistant to the President and Deputy Director of the White House Presidential Personnel Office; Sergio Gor, in his official capacity as Director of the White House Presidential Personnel Office; Henry J. Kerner, in his official capacity as Acting Chairman of the Merit Systems Protection Board; Donald J. Trump, in his official capacity as President of the United States of America; and Russell T. Vought, in his official capacity as Director of the Office of Management and Budget.

In *Wilcox v. Trump*, No. 25-5057, plaintiff is Gwynne A. Wilcox. Defendants are Donald J. Trump, in his official capacity as President of the United States, and Marvin E. Kaplan, in his official capacity as Chairman of the National Labor Relations Board.

Amici appearing before the district court and this Court are the states of Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaiʻi, Idaho, Illinois, Indiana, Iowa, Kansas,

Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, and Wisconsin.

Additional amici include Martin Akerman, the states of Alaska, Ohio, and South Dakota, America's Future, the American Federation of Labor and Congress of Industrial Organizations (AFL-CIO), Americans for Prosperity Foundation, the Arizona Legislature, Patrick Borchers, Joseph Carson, Coalition for a Democratic Workplace, John C. Coates, the Chamber of Commerce of the United States of America, Charles Cohen, Conservative Legal Defense and Education Fund, the Constitutional Accountability Center, Peter Conti-Brown, Ariana Cortes, Michael Dorf, the District of Columbia, James M. Eisenmann, Sarah Fox, Kellen Funk, Jeffrey N. Gordon, Government Accountability Project, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Inc., John E. Higgins, Jr., Aziz Huq, Kathryn Judge, Logan Karam, Riley Keenan, Wilma Liebman, Raymond Limon, Lauren McFerran, Lev Menand, Jessica Parks, Mark Gaston Pearce, James Pfander, Public Advocate Foundation, Public Advocate of the United States, Public Citizen, Nancy Schiffer, Separation of

Powers Clinic at the Catholic University of America's Columbus School of Law, Jonathan Shaub, Jed H. Shugerman, U.S. Constitutional Rights Legal Defense Fund, Dennis P. Walsh, and 253 Members of Congress.

No intervenors participated before the district court or this Court.

### B.    Rulings Under Review

Appeal Nos. 25-5037 and 25-5055 arise from the district court suit *Harris v. Bessent*, No. 1:25-cv-412 (D.D.C.), before Judge Rudolph Contreras. The rulings under review in No. 25-5037 are the district court's grant of a temporary restraining order (Dkt. 8) and accompanying memorandum opinion (Dkt. 9), issued on February 18, 2025. The court's opinion will be published in F. Supp. 3d, and is available at 2025 WL 521027. The rulings under review in No. 25-5055 are the district court's grant of summary judgment for declaratory and injunctive relief (Dkt. 39) and accompanying memorandum opinion (Dkt. 40), issued on March 4, 2025. The court's opinion will be published in F. Supp. 3d, and is available at 2025 WL 679303.

Appeal No. 25-5057 arises from the district court suit *Wilcox v. Trump*, No. 1:25-cv-334 (D.D.C.), before Judge Beryl A. Howell. The rulings under review are the district court's grant of summary judgment (Dkt. 34) and accompanying memorandum opinion (Dkt. 35), issued on

March 6, 2025. The court's opinion will be published in F. Supp. 3d, and is available at 2025 WL 720914.

### C.    Related Cases

These appeals have not previously been before this Court.

*Grundmann v. Trump*, No. 1:25-cv-425 (D.D.C. filed Feb. 13, 2025), involves a challenge to the President's removal of a principal officer from a multimember agency (the Federal Labor Relations Authority) with statutory removal restrictions, 5 U.S.C. § 7104(b).

*Slaughter v. Trump*, No. 1:25-cv-909 (D.D.C. filed Mar. 27, 2025), involves a challenge to the President's removal of a principal officer from a multimember agency (the Federal Trade Commission) with statutory removal restrictions, 15 U.S.C. § 41.

/s/ *Daniel Aguilar*
Daniel Aguilar
  *Attorney, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

iv

# TABLE OF CONTENTS

**Page**

GLOSSARY ..................................................................................... xii

INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

ARGUMENT ....................................................................................... 2

I.    The President Has Constitutional Authority To Remove Members Of The NLRB And MSPB At Will ........................................ 2

    A.    Plaintiffs' position rests on an overbroad and repudiated understanding of *Humphrey's Executor* ..................................... 2

    B.    The NLRB and MSPB do not fall into the *Humphrey's Executor* Exception ................................................................... 7

II.    The District Courts Erred In Ordering The Reinstatement Of Principal Officers The President Had Already Removed .................. 15

    A.    Reinstatement of principal officers by injunction exceeds the district court's equitable powers ......................................... 15

    B.    The district courts abused their discretion in issuing the relief here ............................................................................... 24

CONCLUSION ................................................................................... 28

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                    <u>**Page(s)**</u>

*13th Regional Corp. v. U.S. Department of Interior,*
  654 F.2d 758 (D.C. Cir. 1980) ................................................................... 24

*Baker v. Carr,*
  369 U.S. 186 (1962) .............................................................................. 17

*Barnes v. Kline,*
  759 F.2d 21 (D.C. Cir. 1984) ................................................................ 27

*Berry v. Reagan,*
  1983 WL 538 (D.D.C. Nov. 14, 1983),
  *vacated as moot,* 732 F.2d 949 (D.C. Cir. 1983) ................................. 26-27

*Buckley v. Valeo,*
  424 U.S. 1 (1976) ................................................................................ 11

*CFPB v. Community Financial Services Association of America,*
  601 U.S. 416 (2024) .............................................................................. 14

*City of Arlington v. FCC,*
  569 U.S. 290 (2013) .............................................................................. 10

*Collins v. Yellen,*
  594 U.S. 220 (2021) .......................................................................... 8, 25

*Consumers' Research v. CPSC,*
  98 F.4th 646 (5th Cir. 2024) .................................................................. 14

*Dellinger v. Bessent,*
  No. 25-5052, slip op. (D.C. Cir. Mar. 10, 2025) ....................................... 25

*DHS v. MacLean,*
  574 U.S. 383 (2015) .............................................................................. 19

*Ex Parte Hennen,*
  38 U.S. (13 Pet.) 230 (1839) .................................................................. 24

*Exela Enterprise Solutions, Inc. v. NLRB*,
  32 F.4th 436 (5th Cir. 2022) ....................................................... 2

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) .................................................................... 20

*Free Enterprise Fund v. Public Company Accounting Oversight Board*,
  561 U.S. 477 (2010) ...................................................................... 2

*Great Lakes Dredge & Dock Co. v. Huffman*,
  319 U.S. 293 (1943) .................................................................... 22

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
  527 U.S. 308 (1999) ............................................................... 16, 17

*Harkrader v. Wadley*,
  172 U.S. 148 (1898) .................................................................... 17

*Hecht Co. v. Bowles*,
  321 U.S. 321 (1944) .................................................................... 19

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ....................................................1, 3, 4, 13, 16

*In re Sawyer*,
  124 U.S. 200 (1888) .................................................................... 17

*INS v. Chadha*,
  462 U.S. 919 (1983) .................................................................... 12

*International Union of Operating Engineers, Stationary Engineers,
  Local 39 v. NLRB*,
  127 F.4th 58 (9th Cir. 2025) ......................................................... 8

*Kalaris v. Donovan*,
  697 F.2d 376 (D.C. Cir. 1983) .................................................... 13

*Kalbfus v. Siddons*,
  42 App. D.C. 310 (D.C. Cir. 1914) ............................................. 24

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803) ...................................................... 24

*Morrison v. Olson,*
  487 U.S. 654 (1988) ................................................................. 4

*Myers v. United States,*
  272 U.S. 52 (1926) ...............................................................2, 6, 16

*Nixon v. Fitzgerald,*
  457 U.S. 731 (1982) ................................................................. 20

*NLRB v. Bell Aerospace Co.,*
  416 U.S. 267 (1974) ................................................................. 10

*NLRB v. Wyman-Gordon Co.,*
  394 U.S. 759 (1969) ................................................................. 10

*Parsons v. United States,*
  167 U.S. 324 (1897) ................................................................. 16

*PHH Corp. v. CFPB,*
  881 F.3d 75 (D.C. Cir. 2018) .................................................. 14

*Raines v. Byrd,*
  521 U.S. 811 (1997) ................................................................. 27

*Sampson v. Murray,*
  415 U.S. 61 (1974) ..................................................... 17, 18, 19

*Samuels v. Mackell,*
  401 U.S. 66 (1971) ................................................................. 22

*Seila Law LLC v. CFPB,*
  591 U.S. 197 (2020) .........................2, 3, 4, 5, 6, 9, 12, 13, 25, 26

*Service v. Dulles,*
  354 U.S. 363 (1957) ................................................................. 18

*Severino v. Biden,*
  71 F.4th 1038 (D.C. Cir. 2023) ............................................... 20

*Shurtleff v. United States,*
  189 U.S. 311 (1903) ................................................................. 16

*Stainback v. Mo Hock Ke Lok Po*,
 336 U.S. 368 (1949) ................................................................17

*Starbucks Corp. v. McKinney*,
 602 U.S. 339 (2024) ...............................................................19

*Swan v. Clinton*,
 100 F.3d 973 (D.C. Cir. 1996).....................................20, 21, 23

*Trump v. United States*,
 603 U.S. 593 (2024) ..........................................................2, 6, 25

*United States v. Perkins*,
 116 U.S. 483 (1886) ...........................................................5, 16

*Vitarelli v. Seaton*,
 359 U.S. 535 (1959) ................................................................18

*Walton v. House of Representatives*,
 265 U.S. 487 (1924).................................................................17

*White v. Berry*,
 171 U.S. 366 (1898) ....................................................16, 18, 26

*Whole Woman's Health v. Jackson*,
 595 U.S. 30 (2021)..................................................................16

*Wiener v. United States*,
 357 U.S. 349 (1958)........................................................4, 10, 16

## Constitution and Statutes:

Art. II, § 1, cl. 1.......................................................................25

Art. II, § 3 ...............................................................................27

Act of Feb. 25, 1791, ch. 10, 1 Stat. 191.................................15

Act of Apr. 10, 1816, ch. 44, 3 Stat. 266.................................15

Federal Reserve Act,
   Pub. L. No. 63-43, 38 Stat. 251 (1913) ........................................15

Judiciary Act of 1789, ch. 20, 1 Stat. 73 ...................................... 16

5 U.S.C. § 701 ...................................................................................20

   § 1204(a)(2) ...............................................................................11

   § 1204(a)(4) ...............................................................................11

   § 1204(b)(2)(A) ..........................................................................11

   § 1204(e)(2)(A) ..........................................................................11

   § 1204(f)(1)-(4) ..........................................................................11

   § 1204(i) .....................................................................................11

   § 1214(b) ................................................................................... 12

   § 1215(a) .....................................................................................11

   § 7118(a)(7)(C) ......................................................................... 18

   § 7703(a)(2) ...............................................................................11

28 U.S.C. § 2202 ........................................................................... 19

29 U.S.C. § 154(a) ........................................................................ 10

   § 156.............................................................................................8

   § 159.............................................................................................8

   § 160(a)........................................................................................7

   § 160(b)-(c) .................................................................................7

   § 160(c) .................................................................................. 7, 18

   § 160(e)........................................................................................9

   § 160(j).........................................................................................9

**Rules and Regulations:**

Fed. R. Civ. P. 1...............................................................................17

20 Fed. Reg. 2175 (Apr. 6, 1955) ................................................ 9

**Other Authorities:**

3 *The Works of Alexander Hamilton* (Henry Cabot Lodge ed., 1885)........ 14

# GLOSSARY

| | |
|---|---|
| CFPB | Consumer Financial Protection Bureau |
| FTC | Federal Trade Commission |
| JA | Joint Appendix |
| MSPB | Merit Systems Protection Board |
| NLRB | National Labor Relations Board |

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs insist that precedent forecloses the President's constitutional authority to remove principal officers from the National Labor Relations Board (NLRB) and the Merit Systems Protection Board (MSPB). Yet it is plaintiffs who fail to grapple meaningfully with the Supreme Court's most authoritative and applicable pronouncements. They argue as if their cases were on all fours with the 1935 Federal Trade Commission (FTC) that was the subject of *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), but cannot escape the fact that both the NLRB and MSPB exercise authorities not considered in that decision. And they minimize the Supreme Court's most recent instruction that *Humphrey's Executor* is not to be overread or extended.

Plaintiffs likewise fail to rehabilitate the district courts' imposition of reinstatement remedies that require the President to share executive power with principal officers who do not enjoy his trust. Again, precedent is on the government's side, confirming the unavailability of equitable relief of this nature. The judgments below should be reversed.

## ARGUMENT

### I.     The President Has Constitutional Authority To Remove Members Of The NLRB And MSPB At Will

#### A.     Plaintiffs' position rests on an overbroad and repudiated understanding of *Humphrey's Executor*

As the Supreme Court's recent decisions make clear, any analysis of a restriction on the President's removal authority must proceed from the "general rule" that the President possesses "unrestricted" "'authority to remove those who assist him in carrying out his duties.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 215 (2020) (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 513-14 (2010)); *see also id.* at 228 (noting that "text, first principles, the First Congress's decision in 1789, *Myers* [*v. United States*, 272 U.S. 52, (1926)], and *Free Enterprise Fund* all establish that the President's removal power is the rule, not the exception"). The President's removal power "is essential to the performance of his Article II responsibilities," *Exela Enterprise Solutions, Inc. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022), and Congress cannot control the President's "conclusive and preclusive" removal authority "with respect to executive officers of the United States whom he has appointed," *Trump v. United States*, 603 U.S. 593, 608-09 (2024) (quotation marks omitted).

2

In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court recognized a limited "exceptio[n]" to the rule of at-will removal of principal officers. *Seila Law*, 591 U.S. at 204. Yet, plaintiffs proceed as if *Humphrey's Executor* were the rule, rather than the exception, and then attempt to generalize its holdings to reach beyond the narrow circumstances considered in *Humphrey's Executor* itself. As the Supreme Court recently confirmed, *Humphrey's Executor* is precedential only as "to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Id.* at 216; *see also id.* at 219 n.4 (confirming that "what matters" in defining the scope of *Humphrey's Executor* "is the set of powers the Court considered as the basis for its decision"). Its holding only encompasses a body that "cannot in any proper sense be characterized as an arm or an eye of the executive." *Id.* at 245 (Thomas, J., concurring in part and dissenting in part) (quoting *Humphrey's Executor*, 295 U.S. at 628).

Plaintiffs insist that the *Humphrey's Executor* exception described in *Seila Law* must be read more broadly than the plain terms suggest, and that the Supreme Court's characterization of the 1935 FTC as exercising "quasi-judicial" and "quasi-legislative" powers simply "'describe[s] the

3

circumstances'" of when Congress can restrict the President's removal power. Wilcox Br. 31 (quoting *Morrison v. Olson*, 487 U.S. 654, 691 & n.30 (1988)); *see also* Harris Br. 18 (similar). But *Seila Law* rejected that contention and declined to "ignore the reasoning of *Humphrey's Executor* and instead apply the decision only as part of a reimagined *Humphrey's*-through-*Morrison* framework." 591 U.S. at 219 n.4. *Humphrey's Executor* means what it said—and only what it said. Namely, removal protections are constitutionally tolerable only for a multimember board that "occupies no place in the executive department and * * * exercises no part of the executive power vested by the Constitution in the President." 295 U.S. at 628.

Plaintiffs are thus incorrect in suggesting that reversal here would require overruling *Humphrey's Executor* or *Wiener v. United States*, 357 U.S. 349 (1958). *See* Wilcox Br. 31-32; Harris Br. 22, 25, 35. The question is not whether those cases remain binding on this Court—they do—but "how broadly to read" them. Order at 18 (D.C. Cir. Apr. 7, 2025) (Walker, J., dissenting); *see also Seila Law*, 591 U.S. 238 (Thomas, J., concurring in part and dissenting in part) ("The Court's decision today takes a restrained approach on the merits by limiting *Humphrey's Executor*."). The relevant question is better described as whether those cases should be kept within

their existing boundaries or extended further. *Seila Law* supplies the ready answer.

Plaintiffs appeal to a tradition of multimember Executive Branch bodies with removal protections. *See* Wilcox Br. 19-20; Harris Br. 30. But no precedential decision of the Supreme Court or this Court holds that substantial executive power can be vested in an entity shielded from presidential oversight merely because the entity is headed by a multimember body. And, as noted above, history and tradition support the presumption of presidential control.

Harris suggests (Br. 27-28) that a broader reading of *Humphrey's Executor* is compelled by the logic of *United States v. Perkins*, 116 U.S. 483 (1886), which upheld removal protections for certain inferior officers. But *Seila Law* distinguished *Perkins*' exception for inferior officers from the *Humphrey's Executor* exception. 591 U.S. at 204. And the Court further distinguished *Morrison* on the ground that the its reasoning involving inferior officers does not necessarily extend to principal officers. *Id.* at 219. Thus, contrary to Harris's assertion, this Court need not decide that "the Vesting Clause means that any official within the executive branch must be removable at will" (Br. 18) to conclude that plaintiffs—who are principal officers that exercise substantial executive power and thus clearly fall

outside the exception in *Humphrey's Executor*—are removable at will. Moreover, *Perkins* concerned "removal of * * * inferior officers by *heads of departments*." *Myers*, 272 U.S. at 127 (emphasis added) (describing *Perkins*). *Perkins* did not address the President's power "with respect to 'executive officers of the United States whom *he has appointed*.'" *Trump*, 603 U.S. at 608-09 (emphasis added).

Finally, plaintiffs unsuccessfully attempt to cabin *Seila Law* based on its comment that the Court's "severability analysis does not foreclose Congress from pursuing alternative responses," such as attempting to "remed[y] the defect" by "converting the CFPB into a multimember agency." *Seila Law*, 591 U.S. at 237. As our opening brief explained (at 25-26), the Court cannot plausibly have meant to imply that multimember commissions are categorically exempted from the normal rule of presidential removability without regard to the nature and extent of the power being exercised. Indeed, Wilcox properly appears to concede (Br. 23 n.6) that Congress could not insulate the Departments of Defense, Justice, or State from presidential control by converting them into multimember commissions. Wilcox says that "the point isn't merely that the NLRB is a multimember agency; it is that this type of multimember body of experts exercising quasi-legislative and quasi-judicial functions has a long

6

historical pedigree." *Id.* This acknowledgment that multimember status is a necessary, but insufficient, criterion for satisfying *Humphrey's Executor* returns the focus to the proper inquiry, which centers on the nature of the power being exercised. As explained in the next section, both the NLRB and MSPB exercise powers beyond those approved in *Humphrey's Executor*.

### B.     The NLRB and MSPB do not fall into the *Humphrey's Executor* Exception

Plaintiffs cannot show that either the NLRB or the MSPB falls within the limited *Humphrey's Executor* exception.

**1.** Wilcox cannot refute the government's showing that the NLRB exercises substantial executive power. The NLRB is charged with "prevent[ing] any person from engaging in any unfair labor practice * * * affecting commerce." 29 U.S.C. § 160(a). Where the NLRB concludes that an unfair labor practice has occurred, it "shall issue * * * an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of [the National Labor Relations Act]." *Id.* § 160(c). The NLRB adjudicates complaints alleging unfair labor practices and, when it finds such a practice has occurred, issues a broad range of remedies that may include "reinstatement" and "back pay." *Id.* § 160(b)-(c). For example, recently, the NLRB has granted "make-

whole relief" and ordered employers to pay for "the direct or foreseeable pecuniary harms suffered by affected employees." *International Union of Operating Engineers, Stationary Engineers, Local 39 v. NLRB*, 127 F.4th 58, 80 (9th Cir. 2025) (quotation marks omitted). The NLRB, in addition, adjudicates proceedings relating to union representation. *See* 29 U.S.C. § 159.

The NLRB also has authority to make "such rules and regulations as may be necessary to carry out the provisions" of the National Labor Relations Act. 29 U.S.C. § 156. Wilcox does not seriously grapple with the NLRB's rulemaking authority, instead noting that the agency's authority is "rarely employed." Br. 25. But the President specifically cited a rule approved by Wilcox as a reason for her termination. JA128. In any case, choosing not to exercise this executive power does not render it nonexistent. Wilcox also downplays the breadth of the NLRB's rulemaking authority (Br. 25), but the Supreme Court has cautioned that courts should not "weigh the relative importance of the regulatory and enforcement authority of disparate agencies." *Collins v. Yellen*, 594 U.S. 220, 253 (2021).

The NLRB also has robust "enforcement authority" that includes the power to seek monetary and other remedies "against private parties on behalf of the United States in federal court—a quintessentially executive

8

power not considered in *Humphrey's Executor.*" *Seila Law*, 591 U.S. at 219; *see* 29 U.S.C. § 160(j) (authority to seek preliminary injunctive relief in federal court); *id.* § 160(e) (authority to petition for enforcement of its orders in courts of appeals). Wilcox makes much of the fact that the NLRB's prosecutorial functions are assigned to the General Counsel, who is removable by the President. But when the General Counsel conducts litigation in federal courts, he does so "in full accordance with the directions of the Board." 20 Fed. Reg. 2175, 2175 (Apr. 6, 1955); *see also* Gov't Br. 28. Wilcox is thus incorrect in suggesting (Br. 29) that the NLRB is divorced from enforcement outside the limited context of actions for temporary relief pursuant to 29 U.S.C. § 160(j). While approving actions under § 160(j) is itself a meaningful exercise of executive power, the General Counsel "[o]n behalf of the Board" and "in full accordance with the directions of the Board," may "petition for enforcement and resist petitions for review of Board Orders as provided in section [160](e) and (f) of the act"—the provisions that provide for general judicial review of NLRB orders—and similarly act in accordance with the Board's direction in "tak[ing] appeals either by writ of error or on petition for certiorari to the Supreme Court." 20 Fed. Reg. at 2175. In these proceedings, the NLRB is

9

represented by its own attorneys, not those of the Department of Justice. *See* 29 U.S.C. § 154(a).

That the NLRB also performs adjudicative functions does not place its Members outside of the President's removal authority. "[S]ince the beginning of the Republic," Congress has assigned adjudicatory tasks to executive officers, but those adjudications "are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'" *City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013). As noted in the government's stay motion (at 15), the Supreme Court has recognized that the NLRB may elect to carry out executive functions by choosing between rulemaking or adjudication for the formulation of agency policies. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) (citing *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 765-66 (1969)). Choosing to use adjudication as the "vehicle" for the exercise of executive power does not fundamentally alter the regulatory power vested in NLRB Members. The Board's use of adjudication as a means of policymaking, along with its rulemaking and enforcement functions, readily distinguish it from the time-limited War Claims Commission considered in *Wiener*, 357 U.S. 349.

**2.** The MSPB similarly possesses substantial executive power. It may "order any Federal agency or employee to comply with" its decisions. 5

10

U.S.C. § 1204(a)(2). The MSPB also reviews proceedings brought by the Office of Special Counsel, including disciplinary proceedings seeking civil penalties or other sanctions against employees who have allegedly violated civil-service laws. *See id.* § 1215(a). In conducting adjudications, the MSPB may issue subpoenas directing witnesses to produce evidence or provide testimony. *See id.* § 1204(b)(2)(A). The MSPB may enforce its own orders. *See id.* § 1204(a)(2), (e)(2)(A). And the MSPB regularly exercises "executive functions" by "conducting civil litigation in the courts of the United States for vindicating public rights." *Buckley v. Valeo*, 424 U.S. 1, 139-40 (1976) (per curiam) (holding that such litigation must be conducted by executive officers under Article II); *see* 5 U.S.C. §§ 1204(i), 7703(a)(2). Those are all substantial executive powers.[1]

The MSPB may also invalidate rules already promulgated by the Office of Personnel Management and may require all other executive agencies "to cease compliance" with the rules it has invalidated. 5 U.S.C. § 1204(a)(4), (f)(1)-(4). The MSPB's authority to veto another executive

_____

[1] One particularly potent means for compelling compliance is the MSPB's power to withhold pay from federal employees. 5 U.S.C. § 1204(e)(2)(A). Before this Court, Harris argues that the statutory mechanism for withholding salary is unconstitutional, but Harris concedes that the Board has repeatedly threatened to invoke this power. Harris Br. 39-40, 40 n.13.

agency's exercise of executive power is itself a significant executive power. *Cf. INS v. Chadha*, 462 U.S. 919, 967-68 (1983) (White, J., dissenting) (discussing the importance of the power to veto agency action). The fact that such sweeping power might be sparingly used does not lessen the executive nature of that power.

Aggravating the constitutional problem, MSPB members may exercise some of the Board's powers unilaterally. For instance, a single member may, at the request of the Special Counsel, stay any personnel action for 45 days. *See* 5 U.S.C. § 1214(b). In fact, after being fired by the President and reinstated by the district court, Harris unilaterally reinstated thousands of employees who had been fired by the Department of Agriculture. That unilateral authority further distinguishes this case from *Humphrey's Executor*, which involved an agency member whose exercise of power could be "check[ed]" by "fellow members." *Seila Law*, 591 U.S. at 225.

As with the NLRB, the MSPB also performs a number of adjudicatory functions, but that alone does not place the MSPB outside of the President's removal authority. The MSPB possesses "substantial executive power," *Seila Law*, 591 U.S. at 218, because—in addition to its adjudicatory authority—it may countermand the rules and actions of other agencies and

12

demand immediate compliance, and it may enforce its decisions through civil litigation in federal court. Moreover, Harris errs in categorically treating adjudicatory power—a form of executive power—as irrelevant to the *Seila Law* inquiry. *See Kalaris v. Donovan*, 697 F.2d 376, 395-96 (D.C. Cir. 1983) (holding that members of the purely adjudicatory Benefits Review Board were removable at will, notwithstanding *Humphrey's Executor* and *Wiener*). That is particularly true in the context of an agency where a single MSPB Member has the authority to impede the President's management of the executive branch by blocking the termination of thousands of employees. *See* Gov't Br. 13.

**3.** Plaintiffs contend that if the removal protections for the NLRB and MSPB are struck down by this Court, it would endanger removal protections for a number of other entities, particularly the Board of Governors for the Federal Reserve. *See* Harris Br. 32-33; Wilcox Br. 33. But the Supreme Court has made clear that "Congress's ability to impose such removal restrictions 'will depend upon the character of the office.'" *Seila Law*, 591 U.S. at 215 (quoting *Humphrey's Executor*, 295 U.S. at 631). And the Federal Reserve Board and its predecessors, the First and Second Banks of the United States, may be able to "claim a special historical status," *Seila Law*, 591 U.S. at 222 n.8, as they represent "a unique institution with a

13

unique historical background," *CFPB v. Community Financial Services Association of America*, 601 U.S. 416, 467 n.16 (2024) (Alito, J., dissenting); *see also Consumers' Research v. CPSC*, 98 F.4th 646, 657 (5th Cir. 2024) (Oldham, J., dissenting from the denial of rehearing en banc); *PHH Corp. v. CFPB*, 881 F.3d 75, 192 n.17 (D.C. Cir. 2018) (en banc) (Kavanaugh, J., dissenting).

The Federal Reserve's predecessors, the First and Second Banks of the United States, were not subject to plenary presidential control, and those historical pedigrees may illuminate the constitutional analysis. *Community Financial*, 601 U.S. at 432-34 (looking to legislative enactments at the Founding to inform constitutional principles). The Federal Reserve, like the First and Second Banks of the United States, provides for an elastic currency in paper notes backed by the United States. As Alexander Hamilton explained in his report to Congress, the Bank would be able to supply widely accepted paper notes and thereby "serve[] to counteract that rigorous necessity for" gold and silver. 3 *The Works of Alexander Hamilton* 142 (Henry Cabot Lodge ed., 1885). Congress similarly created the Federal Reserve to "furnish an elastic currency" in paper notes, that would be backed by specie and honored by the Federal Government for

debts. Federal Reserve Act, Pub. L. No. 63-43, § 16, 38 Stat. 251, 265, 265-68 (1913).

The early Congresses further provided that the Banks of the United States—like the Federal Reserve—would have a degree of insulation from the President's control. Congress provided that *all* of the First Bank's directors and 80% of the Second Bank's directors would not be subject to presidential removal *at all*, Act of Feb. 25, 1791, ch. 10, § 4, 1 Stat. 191, 192-93; Act of Apr. 10, 1816, ch. 44, § 8, 3 Stat. 266, 269-70, while the Federal Reserve Governors may be removed by the President only "for cause," Federal Reserve Act, § 10, 38 Stat. at 260. The Banks of the United States and their successor in the Federal Reserve represent a unique institution with a unique history and background. Its historical pedigree cannot be generally extrapolated to other federal entities.

## II.    The District Courts Erred In Ordering The Reinstatement Of Principal Officers The President Had Already Removed

### A.    Reinstatement of principal officers by injunction exceeds the district court's equitable powers

Plaintiffs also fail to overcome the body of precedent establishing that a reinstatement remedy was unavailable here. District courts lack authority to countermand the President's determination of who should be entrusted with the powers of a principal executive officer. That is why traditionally,

removed executive officers (or their executors) have challenged their removal by seeking back pay—not injunctions or declaratory judgments restoring them to office. *See, e.g.*, *Wiener*, 357 U.S. at 349; *Humphrey's Executor*, 295 U.S. at 612; *Myers*, 272 U.S. at 106; *Shurtleff v. United States*, 189 U.S. 311, 311-12 (1903); *Parsons v. United States*, 167 U.S. 324, 326 (1897); *Perkins*, 116 U.S. at 483.

As outlined in the government's opening brief (Br. 37-46), the district courts' injunctions are beyond the equitable powers of the court. Federal courts derive their equitable powers from the Judiciary Act of 1789, ch. 20, 1 Stat. 73, and must exercise those powers in accordance with "traditional principles of equity jurisdiction," as understood at the Founding, *see Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318, 319 (1999) (quotation marks omitted). Thus, they may award only those equitable remedies that were "traditionally accorded by courts of equity." *Id.* at 319, 332; *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021).

One of the most well-established principles of equity jurisprudence is that a court may not enjoin the removal of an executive officer, even if the removal is ultimately adjudged to have been wrong. *See White v. Berry*, 171 U.S. 366, 377 (1898) (explaining that "a court of equity will not, by

16

injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another" (quotation marks omitted)). Similarly, in *In re Sawyer*, 124 U.S. 200 (1888), the Court held that a federal court lacked the power to enjoin the removal of a municipal officer. The Court has reaffirmed those principles in many other cases. *See Baker v. Carr*, 369 U.S. 186, 231 (1962); *Walton v. House of Representatives*, 265 U.S. 487, 490 (1924); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898).

Wilcox contends (Br. 37) that these principles are "no longer the law" after the merger of law and equity. But the merger of law and equity means only that, instead of using different forms of action and procedural rules for "actions at law" and "cases in equity," courts now use "one form of civil action and procedure for both." Fed. R. Civ. P. 1 advisory committee's note. The merger "did not alter" the "'substantive principles'" governing the availability of relief. *Grupo Mexicano*, 527 U.S. at 322; *see Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 382 n.26 (1949) ("Notwithstanding the fusion of law and equity by the Rules of Civil Procedure, the substantive principles of Courts of Chancery remain unaffected.").

The Supreme Court's decision in *Sampson v. Murray*, 415 U.S. 61 (1974), does not further plaintiffs' cause. *Sampson* noted that the law

governing federal employment has evolved since 1898, *see* Wilcox Br. 37, and recognized at most that courts may, in some cases, grant "injunctive relief to discharged federal *employees*." 415 U.S. at 78 (emphasis added). The Court did not overrule its precedents precluding injunctive relief for discharged "*officers*." *White*, 171 U.S. at 376 (emphasis added). *Service v. Dulles*, 354 U.S. 363, 370, 389 (1957), and *Vitarelli v. Seaton*, 359 U.S. 535, 537, 546 (1959), on which Harris relies (Br. 46), also concern discharged federal employees and are likewise no help. In contrast to federal employees, there is no comprehensive statutory scheme governing principal officers that could displace the historical limitations on a court's equitable powers. In fact, *Sampson* noted that "[t]he fact that Government personnel decisions are now ultimately subject to the type of judicial review sought in *Service v. Dulles*, *supra*, does not, without more, create the authority to issue interim injunctive relief which was held lacking in cases such as *White v. Berry*." 415 U.S. at 72.

This is particularly true given that neither the National Labor Relations Act nor the Civil Service Reform Act, each of which provides for reinstatement of employees whose firings violate substantive provisions of the Acts, expressly authorizes the reinstatement of an NLRB or MSPB Member. *See* 5 U.S.C. § 7118(a)(7)(C); 29 U.S.C. § 160(c). "That is

significant because Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *DHS v. MacLean*, 574 U.S. 383, 391 (2015). And even under *Sampson*, courts must apply a heightened standard before awarding injunctive relief to discharged government employees—a standard that must account for the Executive Branch's "latitude in the 'dispatch of its own internal affairs.'" 415 U.S. at 83. Plaintiffs have not satisfied the ordinary test for injunctive relief, never mind *Sampson*'s heightened standard.

Wilcox (Br. 38) and Harris (Br. 46 n.16) both point to the Declaratory Judgment Act's further relief provision, 28 U.S.C. § 2202, as a possible source of statutory authority for the injunctions issued here reinstating plaintiffs to their positions as Board Members. But that provision requires relief to be "necessary or proper," *id.*, and the Supreme Court has interpreted similar language to require courts to adhere to "traditional principles of equity," *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345 (2024). More generally, the Supreme Court has required a "plain" statement before concluding that Congress meant to effect "an abrupt departure from traditional equity practice." *Hecht Co. v. Bowles*, 321 U.S. 321, 330 (1944). The Supreme Court has also required "an express statement by Congress" to authorize judicial remedies that could burden

the President's exercise of Article II powers. *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992); *see id.* at 800-01 (lack of clear statement subjecting presidential action to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*); *Nixon v. Fitzgerald*, 457 U.S. 731, 748 n.27 (1982) (lack of clear statement subjecting the President to a damages remedy). The Declaratory Judgment Act cannot provide the clear statement necessary to authorize courts to issue an injunction that compels the President to retain the services of a principal officer whom he has removed from office.

Nor are *Swan v. Clinton*, 100 F.3d 973, 979 (D.C. Cir. 1996), or *Severino v. Biden*, 71 F.4th 1038, 1050 (D.C. Cir. 2023), sufficient to sustain the injunctions issued by the district courts here. As explained in the government's opening brief (Br. 42-44), plaintiffs mistakenly rely on those cases' threshold jurisdictional analysis to support their remedial claims, but this Court acknowledged that "jurisdiction does not depend on deciding whether an injunction ordering a presidential appointment would be available or appropriate." *Severino*, 71 F.4th at 1042. Moreover, they do not support the issuance of the complete *de jure* reinstatement ordered by the district courts here.

Wilcox notes that the government had not contested the authority to enter a declaratory judgment that the removal was unlawful and seeks to bootstrap the rest of the district court's order onto that authority. There is no difference, she argues (Br. 34 n.9), between a declaration that the removal was unlawful and the one entered by the district court that Wilcox "remains a member of the NLRB." *See* JA138. Harris similarly argues that she was never removed so the court could exercise its equitable authority to order her back into office.[2] Both assertions are plainly incorrect. As a factual matter, both plaintiffs were removed by the President; they have maintained in this litigation that the legal question before this Court is whether it was lawful for him to do so under Article II of the Constitution. There has been no question that the removal, if lawful, was effective. And there is an evident factual and legal distinction between declaring an action that was undertaken unlawful and declaring it void *ab initio*.

---

[2] Harris's argument (Br. 51) that she was never removed and thus officials can be ordered to treat her as though she were in office is inconsistent with *Swan*, 100 F.3d 973. In *Swan*, this Court recognized that at most it could issue an injunction requiring a subordinate officer to allow a plaintiff to exercise some of the privileges of the office without actually reinstating him, such as by "including [him] in Board meetings," or "giving him access to his former office." *Id.* at 980. The Court clearly acknowledged that the President could "undercut [the] relief" were he "to insist that" his preferred replacement "occupy the position." *Id.* at 980-81. If the officer were never removed, there would not be a vacant position for a replacement to occupy.

A declaratory-judgment suit is "essentially an equitable cause of action." *Samuels v. Mackell*, 401 U.S. 66, 70 (1971) (quotation marks omitted). "[E]ven if the declaratory judgment is not used as a basis for actually issuing an injunction, the declaratory relief alone has virtually the same practical impact as a formal injunction would." *Id.* at 72. As a result, "the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment." *Id.* at 73. Because "an injunction" to reinstate an executive officer removed by the President "would be impermissible," relief that has the effect of reinstatement by declaring the officer remains in office "should * * * be denied as well." *Id.*; *see also Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300 (1943) (The Declaratory Judgment Act "only provided a new form of procedure for the adjudication of rights in conformity" with "established equitable principles.").

Harris is also wrong to suggest that the relief issued by the district courts is lawful because it is "directed only against the President's subordinates." Br. 50. In *Harris*, the court "ordered that Plaintiff Cathy A. Harris shall continue to serve as a member of the Merit Systems Protection Board until her term expires pursuant to 5 U.S.C. § 1202, unless she is

earlier removed for inefficiency, neglect of duty, or malfeasance in office under that statute." JA70 (formatting altered). Similarly, in *Wilcox*, the court "ordered that plaintiff shall continue to serve as a member of the NLRB until her term expires pursuant to 29 U.S.C. § 153(a), unless she is earlier removed 'upon notice and hearing, for neglect of duty or malfeasance in office.'" JA138 (formatting altered). It is true that the President's subordinates are subject to additional injunctive relief precluding them from removing Wilcox or Harris from office or impeding their ability to fulfill the duties of the office, but an order requiring plaintiffs to continue serving in their roles as Members of the NLRB and MSPB, respectively, is beyond the relief contemplated in *Swan* and *Severino*. Appointment and removal of principal executive officers is specifically entrusted to the President, not his subordinates, *see Swan*, 100 F.3d at 979 (recognizing that "principal officers of the United States * * * must be appointed, and removed, by the President"), and however styled, an order that has the effect of reinstating a principal executive officer removed by the President violates both Article II and the limits on a court's equitable powers. For that reason, Harris is wrong to suggest (Br. 52) that if this Court were to determine such relief is not available, it would mean courts could never enjoin the President's subordinates.

Wilcox and Harris both point to mandamus as an available alternative to injunction, but as explained in the government's opening brief (Br. 46-48), the district courts were wrong to conclude that mandamus would be appropriate. A writ of mandamus "will issue 'only where the duty to be performed is ministerial'" and the right "clear and indisputable." *13th Regional Corp. v. U.S. Department of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) (quotation marks omitted). For the reasons discussed above, plaintiffs' right to relief is, at a minimum, unclear. *See supra* pp. 2-15. In addition, while the Supreme Court has approved the use of mandamus to try the title to judicial or local offices, plaintiffs have identified no precedent for using mandamus to reinstate a principal executive officer removed by the President. *See Ex parte Hennen*, 38 U.S. (13 Pet.) 230, 256 (1839) (court clerk); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 167 (1803) (justice of the peace in the District of Columbia); *see also Kalbfus v. Siddons*, 42 App. D.C. 310, 319 (D.C. Cir. 1914) (assistant assessor for the District of Columbia).

## B.    The district courts abused their discretion in issuing the relief here

Finally, plaintiffs are wrong to suggest that the district courts did not abuse their discretion in reinstating plaintiffs by injunction. The district courts' judgments cause extraordinary and irreparable harm to the

President, in whom the Constitution vests "all of" "the 'executive Power.'" *Seila Law*, 591 U.S. at 203 (quoting U.S. Const. art. II, § 1, cl. 1). The district court is forcing the President to continue allowing plaintiffs to exercise executive power as principal officers, even though the President has removed them. That level of interference is unprecedented, and it "impinges on the conclusive and preclusive power through which the President controls the Executive Branch that he is responsible for supervising." *Dellinger v. Bessent*, No. 25-5052, slip op. at 6 (D.C. Cir. Mar. 10, 2025) (quoting *Trump*, 603 U.S. at 608-09). That is not merely "an abstract constitutional injury"; "it is a serious, concrete harm." Order at 46 (D.C. Cir. Mar. 28, 2025) (Walker, J., concurring).

The district courts' judgments also threaten irreparable harm to the NLRB and MSPB. In *Collins*, this Court recognized that private persons may be entitled to judicial relief when an unconstitutional removal restriction "inflict[s] compensable harm." 594 U.S. at 259. For instance, if "the President had attempted to remove [an agency head] but was prevented from doing so by a lower court decision," the removal restriction "would clearly cause harm" to affected persons. *Id.* at 259-60. By thwarting the President's removal of NLRB and MSPB Members, the district court has

arguably exposed every action taken by those agencies with plaintiffs as continued members to legal challenge.

Court orders reinstating fired executive officers create serious practical problems as well. To start, reinstatement orders can "lead to the utmost confusion in the management of executive affairs." *White*, 171 U.S. at 378. Here, for example, plaintiffs were removed by the President, reinstated by the district court, removed again by virtue of the panel's decision, reinstated again by the en banc court, and are currently removed by the Supreme Court's grant of an administrative stay. Harris's trajectory is even more confusing; the district court at first reinstated her as MSPB Chairman but later reinstated her only as a member. Judicial intervention has thus thrown the NLRB's and MSPB's operations into chaos, cast a cloud on the lawfulness of the agencies' actions, left the President and Senate uncertain about whether and when they may install new officers to succeed plaintiffs, and undermined "the steady administration of the laws" that Article II seeks to secure. *Seila Law*, 591 U.S. at 223 (quotation marks omitted).

Wilcox and Harris contend that they are irreparably harmed because they are deprived of the ability to carry out the "statutory right to function." Wilcox Br. 42 (quoting *Berry v. Reagan*, 1983 WL 538, at *5 (D.D.C. Nov.

14, 1983), *vacated as moot*, 732 F.2d 949 (D.C. Cir. 1983)); Harris Br. 56-57. That reasoning is unsound. Although a public official's "loss of salary" amounts to a judicially cognizable harm, his "loss of political power" does not. *Raines v. Byrd*, 521 U.S. 811, 820-21 (1997). The notion that public officials "have a separate private right, akin to a property interest, in the powers of their offices" is "alien to the concept of a republican form of government." *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork, J., dissenting). Executive power belongs to the President, not to plaintiffs.

Wilcox also notes that absent the injunction, the NLRB—and MSPB—cannot continue to operate. Br. 43. But that harm is not irreparable; for example, the President and Senate can address it by nominating and confirming new members. The President also could properly conclude that it is better to leave the NLRB or MSPB temporarily without a quorum than to entrust executive power to officers in whom he lacks confidence. In sum, plaintiffs' claimed equities cannot outweigh the grave and unprecedented harm the injunctions cause to the separation of powers and the President's authority to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

27

## CONCLUSION

This Court should reverse the district courts' orders.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
MICHAEL S. RAAB
JOSHUA M. SALZMAN
LAURA E. MYRON
 */s/ Daniel Aguilar*
DANIEL AGUILAR
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,902 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ Daniel Aguilar*
Daniel Aguilar